**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIFFANY WILLIAMS, DOREEN WALKER, APRIL MCKEEL, MICHAELA CAPERNA, LOIS WILLIAMS, INEZ RATCLIFF, SAMANTHA HUTTON, NICOLE LEO, JOANNE PEABODY, CHRISTINA TURNER, BRITTANY WILLIS, REGINA JENSEN, VICKIE RASH, REBECCA BAILEY, JAMES WOODWORTH on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOB EVANS FARMS, INC.; BOB EVANS FARMS, LLC; BOB EVANS RESTAURANTS, LLC.; and DOE DEFENDANTS 1-10,<br><br>Defendants. | Civil Action No.: 2:18-cv-01353<br><br>**SECOND AMENDED CONSOLIDATED MASTER COMPLAINT - CLASS AND COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Tiffany Williams ("Williams"), Doreen Walker ("Walker"), April McKeel ("McKeel"), Michaela Caperna ("Caperna"), Lois Williams ("L. Williams"), Inez Ratcliff ("Ratcliff"), Samantha Hutton ("Hutton"), Nicole Leo ("Leo"), Joanne Peabody ("Peabody"), Christina Turner ("Turner"), Brittany Willis ("Willis"), Regina Jensen ("Jensen"), Vickie Rash ("Rash"), Rebecca Bailey ("Bailey"), and James Woodworth  (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows in this Second Amended Consolidated Master Complaint ("Complaint")[1]:

**INTRODUCTION**

1.      This is a class and collective action brought on behalf of "Tipped Employees" who work or have worked at restaurants operating under the trade name Bob Evans that are/were

---

[1] Plaintiffs file this Second Amended Consolidated Master Complaint pursuant to stipulation with Defendants (ECF#128).

owned and operated and/or managed by Defendants Bob Evans Farms, Inc., Bob Evans Farms, LLC, and Bob Evans Restaurants LLC, (collectively, "Defendants" or "Bob Evans"), and have been subject to the unlawful practices detailed herein.

2.     Upon information and belief, the employment practices complained of herein occurred at all of Bob Evans locations at issue, as Defendants utilized common labor policies and practices at each of their locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

3.     Bob Evans is a nationwide chain of family style restaurants founded and headquartered in Columbus, Ohio, which owns and operates all of its restaurants.

4.     According to the Company's website, Bob Evans "owns and operates over 500 locations in 18 states, primarily in the Midwest, mid-Atlantic and Southeast regions of the United States." *See* https://www.bobevans.com/about-us/our-company (last visited November 20, 2018).

5.     Notably, Bob Evans has at least 50 restaurant locations in Ohio, 34 restaurant locations in Pennsylvania, 20 restaurant locations in both West Virginia and Maryland, 13 locations in Michigan, 10 restaurant locations in Illinois, and at least five restaurant locations in New York.

6.     Bob Evans employs individuals in a tipped capacity, namely "servers" ("waiters and "waitresses") or "bussers" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.

7.     As set forth below, Defendants have a policy or practice of paying these employees a sub-minimum hourly wage under the tip-credit provisions of the FLSA and related state wage and hour laws, despite not complying with all the necessary requirements in order to properly claim a tip-credit and pay less than the full minimum wage.

8.     As Tipped Employees, these individuals worked as "front of house" employees – e.g., interacting with Defendants' customers/patrons. Tipped Employees accomplished their job duties by, among other things, taking customers' orders, serving customers their food, and/or cleaning the customers' tables so that new customers can be seated and served.

9.     As explained in detail below, despite Bob Evans' purported success, it systematically and willfully deprived Plaintiffs and Tipped Employees all wages due and owing in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA").

10.     Defendants violated the FLSA by, among other things, failing to satisfy the notice requirements of the tip credit provisions of these laws. In addition, Defendants also violated the FLSA by failing to pay Plaintiffs and its Tipped Employees the full minimum wage when performing non-tip generating work unrelated to their principal job as a Tipped Employee and/or spent more than twenty percent (20%) of their time performing non-tipped work that was related to tip-generating work.

11.     Moreover, Defendants also violated the FLSA by failing to calculate and pay Tipped Employees the proper overtime rate due and owing for weeks when Tipped Employees worked in in excess of forty (40) hours that work week.

12.     In addition, Defendants' actions/inactions also violated certain state wage and hour laws, including the Article II, § 34A of the Ohio Constitution and the Ohio Minimum Fair Wage Standard Act ("MFWSA"), Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Wage Payment and Collection Law, 43 Pa. S. § 260.1, *et seq.,* ("WPCL"), the West Virginia Wage Payment and Collection Act ("WVWPCA"), W. Va. Code § 21-5 *et seq.*, the West Virginia Minimum Wage and Maximum Hours Standards Act ("WVMWMHS"), W. Va. Code § 21-5C *et seq.*, the Maryland Wage and Hour Law,

("MWHL"), Md. Code Ann., Labor & Employment, §3-401 *et seq.*, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Labor & Employment, §3-501 *et seq.*, the Michigan Workforce Opportunity Act ("MWOWA"), MCL § 408.411 *et seq,* the New York Minimum Wage Act, Article 19, § 650 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105 *et seq*, New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §137-2.2 and §146.2-2, New York Labor Law ("NYLL") § 195(3) as amended by the New York Wage Theft Prevention Act.

13.     Defendants violated Article II, § 34A of the Ohio Constitution and the Ohio MFWSA (collectively, "OH State Laws") when they: (i) failed to provide proper tip credit notification; (ii) required Plaintiff Bailey and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work); and (iii) failed to pay the proper overtime rate. This is in contravention of applicable Ohio state law.  Defendants violated the minimum wage provisions of the Ohio MFWSA, § 4111.01 (A), as Plaintiff Bailey and members of the Ohio Class were consistently and uniformly not paid the applicable minimum wage or overtime pay for all the work they performed during the course of their employment with Defendants.   Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but widespread, repeated and part of a pattern and practice of conduct affecting Plaintiff Bailey and all members of the Ohio Class.

14.     Defendants violated the PMWA and WPCL (collectively, "PA State Laws") when they: (i) failed to provide proper tip credit notification; (ii) required Plaintiffs Williams, Walker, McKeel and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had

closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work); and (iii) failed to pay the proper overtime rate. This is in contravention of applicable Pennsylvania state law.

15.     Defendants violated the WVWPCA by failing to pay Plaintiffs Jensen and Rash and other Tipped Employees all wages due and owing within the time periods mandated at the conclusion of their employment with Defendants.  Defendants also violated the WVMWMHS by failing to pay Plaintiff Jensen and Rash and other Tipped Employees the proper wages due and owing.[2]

16.     Defendants violated the MWHL and MWPCL (collectively, "MD State Laws") when they: (i) failed to provide proper tip credit notification; and (ii) required Plaintiff Hutton, Leo and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work).

17.     Defendants violated the MWOWA ("MI State Law") when they: (i) failed to provide proper tip credit notification to Plaintiff Peabody and other Tipped Employees; and (ii) required Plaintiff Peabody and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work).

---

[2] The WVWPCA and the WVMWMHS are collectively referred to herein as "West Virginia State Laws"

18.     Defendants violated the IMWL when they: (i) failed to provide proper tip credit notification; (ii) required Plaintiff James Woodworth and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work); and (iii) failed to pay the proper overtime rate. This is in contravention of applicable Illinois state law. Defendants violated the minimum wage and overtime provisions of the IMWL as Plaintiff Woodworth and members of the Illinois Class were consistently and uniformly not paid the applicable minimum wage for all the work they performed during the course of their employment with Defendants.  Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but widespread, repeated and part of a pattern and practice of conduct affecting Plaintiff Woodworth and all members of the Illinois Class. Defendants violated the IWPCA when they deducted expenses from the Plaintiff's and the Illinois IWPCA Class's wages without authorization in violation of 820 ILCS 115/9.

19.     Defendants violated the New York Minimum Wage Act, Article 19, § 650 *et seq.*, New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §137-2.2 and §146.2-2, New York Labor Law ("NYLL") § 195(3) as amended by the New York Wage Theft Prevention Act (collectively, "NY State Laws") when they: (i) failed to provide proper tip credit notification; and (ii) required Plaintiff Willis and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work).

20.     As a result of the aforementioned pay practices, Plaintiffs and the members of the

Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

21.     Plaintiffs bring this action as a collective action to recover unpaid wages, pursuant

to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA" or the

"Act").

22.     In particular, Plaintiffs bring this suit on behalf of the following similarly situated

persons:

> All current and former Tipped Employees who have worked for
> Defendants in the United States within the statutory period covered by this
> Complaint, and elect to opt-in to this action pursuant to the FLSA, 29
> U.S.C. § 216(b) (the "Collective Class").

23.     In addition, Plaintiffs McKeel and Caperna also bring this suit on behalf of the

following similarly situated persons for unpaid overtime wages pursuant to the FLSA:

> All current and former Tipped Employees who have worked in excess of
> forty hours in one or more work weeks for Defendants in the United States
> and were not compensated at one and a half time the applicable hourly
> wage rate within the statutory period covered by this Complaint, and elect
> to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the
> "Collective OT Class").

24.     Plaintiff Bailey brings this suit on behalf of a class of similarly situated persons

composed of:

> All current and former Tipped Employees who have worked for
> Defendants in the State of Ohio during the statutory period covered by this
> Complaint and who do not opt-out of this action (the "OH Class").

25.     Plaintiff Bailey brings this suit on behalf of a class of similarly situated persons

composed of:

> All current and former Tipped Employees who have worked in excess of
> forty hours in one or more work weeks for Defendants in the State of Ohio

and were not compensated at one and a half times the applicable hourly wage rate during the statutory period covered by this Complaint and who do not opt-out of this action (the "OH OT Class").

26.     Plaintiffs Williams, Walker, and McKeel also bring this action as a state-wide class action to recover unpaid wages pursuant to the PA State Laws.

27.     Specifically, Plaintiffs Williams, Walker, and McKeel bring this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint and who do not opt-out of this action (the "PA Class").

28.     In addition, Plaintiff McKeel also brings this suit on behalf of a class of similarly situated persons for unpaid overtime wages pursuant to the PA State Laws:

> All current and former Tipped Employees who have worked in excess of forty hours in one or more work weeks for Defendants in the Commonwealth of Pennsylvania and were not compensated at one and a half times the applicable hourly wage rate during the statutory period covered by this Complaint and who do not opt-out of this action (the "PA OT Class").

29.     Plaintiffs Jensen and Rash also bring this suit on behalf of a class of similarly situated persons for unpaid wages pursuant to the WV State Law:

> All Tipped Employees who were employed by Defendants in West Virginia who left Defendants' employment and were not paid all wages on the last date of employment or by the next regular payday during the statutory period covered by this Complaint and who do not opt-out of this action (the "WV Class").

30.     Plaintiffs Jensen and Rash also bring this suit on behalf of a class of similarly situated persons for unpaid minimum wages pursuant to the WV State Laws:

> All current and former Tipped Employees who have worked for Defendants in the State of West Virginia during the statutory period covered by this Complaint and who do not opt-out of this action (the "WV MW Class").

31.     Plaintiff Hutton and Leo also brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the State of Maryland during the statutory period covered by this Complaint and who do not opt-out of this action (the "MD Class").

32.     Plaintiff James Woodworth brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the State of Illinois during the statutory period covered by this Complaint and who do not opt-out of this action (the "IL Class").

33.     In addition, Plaintiff Woodworth also brings this suit on behalf of a class of similarly situated persons for unpaid overtime wages pursuant to the IL State Laws:

> All current and former Tipped Employees who have worked in excess of forty hours in one or more work weeks for Defendants in the State of Illinois and were not compensated at one and a half times the applicable hourly wage rate during the statutory period covered by this Complaint and who do not opt-out of this action (the "IL OT Class").

34.     In addition, Plaintiff Woodworth also brings this suit on behalf of a class of similarly situated persons for deductions from wages in violation 820 ILCS 115/9 consisting of:

> All current and former Tipped Employees who have had the cost of uniforms deducted from their wages and who did not provide written express written consent, freely given at the time the deduction was made.

35.     Plaintiff Peabody also brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the State of Michigan during the statutory period covered by this Complaint and who do not opt-out of this action (the "MI Class").

36.     Plaintiff Willis also brings this suit on behalf of a class of similarly situated persons composed of:

9

All current and former Tipped Employees who have worked for
Defendants in the State of New York during the statutory period covered
by this Complaint and who do not opt-out of this action (the "NY Class").

37.     The Collective Class, the Collective OT Class, the OH class, the OH OT Class,

the PA Class, the PA OT Class, the WV Class, the WV MW Class, the MD Class, the MI Class,

the IL Class, the IL OT Class and the NY Class are hereafter collectively referred to as the

"Classes."

38.     Plaintiffs allege on behalf of the Collective Class that they are: (i) entitled to

unpaid minimum wages from Defendants for hours worked for which Defendants failed to

comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as

required by law; (ii) entitled to unpaid minimum wages from Defendants for hours worked

performing duties *unrelated* to their direct customer service duties; (iii) entitled to unpaid

minimum wages from Defendants for hours worked where they spent in excess of 20% of their

time performing non-tipped work that was *related* to their tipped occupation; and (iv) entitled to

liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

39.     Plaintiffs McKeel and Caperna allege on behalf of the Collective OT Class that

they are: (i) entitled to unpaid overtime wages from Defendants for hours worked for which

Defendants failed to calculate the proper overtime rate and (ii) entitled to liquidated damages

pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

40.     Plaintiff Bailey alleges on behalf of the OH Class that Defendants violated the

OH State Law by failing to pay all timely wages due and owing at the end of Plaintiff and

members of the OH Class's employment with Defendants.

41.     Plaintiff Bailey alleges on behalf of the OH MW Class that Defendants violated the OH State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failed to pay them the appropriate minimum wages for all hours worked.

42.     Plaintiffs Williams, Walker, and McKeel allege on behalf of the PA Class that Defendants violated PA State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked. In addition, Defendants also violated PA State Laws by failing to pay PA Class members the full minimum wage for time spent performing non-tip generating work.

43.     Plaintiff McKeel alleges on behalf of the PA OT Class that Bob Evans violated PA State Laws by failing to calculate and pay the proper overtime rate for weeks where Tipped Employees worked in excess of forty (40) hours working in a single workweek.

44.     Plaintiffs Jensen and Rash allege on behalf of the WV Class that Defendants violated the WV State Law by failing to pay all timely wages due and owing at the end of Plaintiff and members of the WV Class's employment with Defendants.

45.     Plaintiffs Jensen and Rash allege on behalf of the WV MW Class that Defendants violated the WV State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failed to pay them the appropriate minimum wages for all hours worked.

46.     Plaintiff Hutton alleges on behalf of the MD Class that Defendants violated the MD State Laws by, inter alia,: (i) failing to comply with the tip credit provisions, as required by law, and consequently failed to pay them the appropriate minimum wages for all hours worked; (ii) failing to pay all timely wages due and owing; and (iii) failing to pay the full minimum wage for time spent performing non-tip generating work.

47.     Plaintiff Peabody alleges on behalf of the MI Class that Defendants violated the MI State Law by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.

48.     Plaintiff Woodworth alleges on behalf of the IL Class that Defendants violated the IL State Law by failing to pay all timely wages due and owing at the end of Plaintiff Woodworth's and members of the IL Class's employment with Defendants.

49.     Plaintiff Woodworth alleges on behalf of the IL MW Class that Defendants violated the IL State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failed to pay them the appropriate minimum wages for all hours worked.

50.     Plaintiff Woodworth alleges on behalf of the IL IWPCA Class that Defendants violated IL State Laws by failing to comply with the wage deduction provisions, as required by law, and consequently failed to pay them the appropriate wages.

51.     Plaintiff Willis alleges on behalf of the NY Class that Defendants violated the NY State Laws by, inter alia,: (i) failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked and (ii) failing to pay the full minimum wage for time spent performing non-tip generating work.

## PARTIES

*Plaintiff Tiffany Williams*

52.     Plaintiff Tiffany Williams ("Williams") is a resident of the Commonwealth of Pennsylvania, residing in Allegheny County, who was employed by Bob Evans as a "server" at its Monroeville restaurant (located at 3737 William Penn Highway, Monroeville, Pennsylvania 15146 – "Monroeville Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff properly for all hours worked.

53.     Plaintiff Williams worked at the Monroeville Restaurant from approximately October 1, 2017 through approximately February 28, 2018 and was paid an hourly wage rate of $2.83 per hour irrespective of the amount of tips she earned or the type of work she performed.

54.     Defendants employed Plaintiff Williams to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

55.     Pursuant to Section 216(b) of the FLSA, Plaintiff Williams has previously consented in writing to be a plaintiff in this action.

***Plaintiff Doreen Walker***

56.     Plaintiff Doreen Walker ("Walker") is a resident of the Commonwealth of Pennsylvania, residing in Allegheny County, who was employed by Bob Evans as a "server" at its West Mifflin restaurant (located at 2210 Lebanon Church Road, West Mifflin, Pennsylvania 15122 – "West Mifflin Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff properly for all hours worked.

57.     Plaintiff Walker worked at the West Mifflin Restaurant from approximately 2002 through 2017. Since 2105, Plaintiff Walker recalls being paid an hourly wage rate of $2.83 per hour by Defendants irrespective of the amount of tips she earned or the type of work she performed

58.     Defendants employed Plaintiff Walker to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

59.     Pursuant to Section 216(b) of the FLSA, Plaintiff Walker has previously consented in writing to be a plaintiff in this action.

*Plaintiff April McKeel*

60.     Plaintiff April McKeel is a resident of the Commonwealth of Pennsylvania who was employed by Bob Evans as a "server" at its New Stanton restaurant (located at 104 Bair Blvd. New Stanton, PA 15672 -- "New Stanton Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff McKeel properly for all hours worked.

61.     Plaintiff McKeel worked at the New Stanton Restaurant from approximately July 2017 to February 2018 and was paid an hourly wage rate of $2.83 per hour irrespective of the amount of tips she earned or the type of work she performed.

62.     Defendants employed Plaintiff McKeel to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

63.     Plaintiff McKeel recalls several instances when she worked a shift at Bob Evans and earned less than the minimum wage per hour when she combined her tips with her hourly wage.

64.     Pursuant to Section 216(b) of the FLSA, Plaintiff McKeel has previously consented in writing to be a plaintiff in this action.

*Plaintiff Michaela Caperna*

65.     Plaintiff Michaela Caperna ("Caperna") is a resident of the State of Tennessee who was employed by Bob Evans as a "server" at its Centerville restaurant (located at 5525 Wilmington Pike, Centerville, Ohio 45459 – "Centerville Restaurant") and its Nashville restaurant (located at 200 Rudy Circle, Nashville, Tennessee 37215 -- "Nashville Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff Caperna properly for all hours worked.

66.     Plaintiff Caperna worked at the Centerville Restaurant from approximately 2013 to approximately September 30, 2016 and was paid an hourly wage of $4.08 per hour in 2016 irrespective of the amount of tips she earned or the type of work she performed until she transferred to the Nashville Restaurant on approximately October 1, 2016.

67.     Plaintiff Caperna worked at the Nashville Restaurant from approximately October 1, 2016 to approximately June 9, 2018 and was paid an hourly wage rate of $2.13 per hour irrespective of the amount of tips she earned or the type of work she performed.

68.     Defendants employed Plaintiff Caperna to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

69.     Pursuant to Section 216(b) of the FLSA, Plaintiff Caperna has previously consented in writing to be a plaintiff in this action.

***Plaintiff Lois Williams***

70.     Plaintiff Lois Williams ("L. Williams") is a resident of the State of West Virginia who was employed by Bob Evans as a "server" at its Unit 258 Beckley, West Virginia restaurant (located at 102 Harper Park Dr, Beckley, WV 25801 -- "Beckley Restaurant") While employed as a server, Defendants failed to compensate Plaintiff L. Williams properly for all hours worked.

71.     Plaintiff L. Williams worked at the Beckley Restaurant from approximately 1998 to February 2017 and, since 2016, was paid an hourly wage rate of $2.62 per hour irrespective of the amount of tips she earned or the type of work she performed.[3]

72.     Defendants employed Plaintiff L. Williams to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

---

[3] In 2015, Plaintiff L. Williams was paid a cash wage of $2.40 per hour.

73.     Pursuant to Section 216(b) of the FLSA, Plaintiff L. Williams has previously consented in writing to be a plaintiff in this action.

***Plaintiff Inez Ratcliff***

74.     Plaintiff Inez Ratcliff ("Ratcliff") is a resident of the State of West Virginia who was employed by Bob Evans as a "server" at its Unit Number 24 restaurant (located at 4001 MacCorkle Ave SW, South Charleston, WV 25309 -- "South Charleston Restaurant"). While working as a server, Defendants failed to compensate Plaintiff Ratcliff properly for all hours worked.

75.     Plaintiff Ratcliff worked at the South Charleston Restaurant from approximately March 1995 until July of 2006 and then again from May of 2007 through February 2018. Since 2016, Plaintiff Ratcliff believes she was paid an hourly wage rate of $2.13 per hour irrespective of the amount of tips she earned or the type of work she performed while she was clocked in as a server.[4]

76.     Defendants employed Plaintiff Ratcliff to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

77.     Pursuant to Section 216(b) of the FLSA, Plaintiff Ratcliff has previously consented in writing to be a plaintiff in this action.

***Plaintiff Samantha Hutton***

78.     Plaintiff Samantha Hutton ("Hutton") is a resident of the State of Maryland who was employed by Bob Evans as a "server" at its Waldorf, Maryland restaurants (located at 2355 Crain Highway, Waldorf, Maryland 20601 and 3345 Crain Highway, Waldorf, Maryland 20603 -

---

[4] According to the best of her recollection, in 2015, Plaintiff Ratcliff was paid a cash wage of $2.40 per hour, while in 2014 she was paid a cash wage of $5.80.

- "Waldorf Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff Hutton properly for all hours worked.

79.     Plaintiff Hutton began working for Bob Evans as a server in approximately November 2016 at the Bob Evans restaurant located on 2355 Crain Highway, Waldorf, Maryland 20601 until it closed in 2017.  She worked at the Bob Evans on 2601 N. Salisbury Boulevard, Salisbury, MD 21801 for approximately two months.  In 2018, she started working at the Bob Evans on 3345 Crain Highway, Waldorf, Maryland 20603.  As a server, she believes she was paid an hourly wage rate of $3.63 per hour irrespective of how little tips she earned or the type of work she performed.

80.     Defendants employed Plaintiff Hutton to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

81.     Pursuant to Section 216(b) of the FLSA, Plaintiff Hutton has previously consented in writing to be a plaintiff in this action.

***Plaintiff Nicole Leo***

82.     Plaintiff Nicole Leo ("Leo") is a resident of the State of Maryland who was employed by Bob Evans as a "server" at its Germantown, Maryland restaurant (located at 21044 Frederick Rd, Germantown, MD 20876 -- "Germantown Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff Leo properly for all hours worked.

83.     Plaintiff Leo worked at the Germantown Restaurant from approximately 2013 to November 2016 and was paid an hourly wage rate of $3.63 per hour irrespective of how little tips she earned or the type of work she performed.

84.     Defendants employed Plaintiff Leo to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

85.     Pursuant to Section 216(b) of the FLSA, Plaintiff Leo has previously consented in writing to be a plaintiff in this action.

**Plaintiff Joanne Peabody**

86.     Plaintiff Joanne Peabody ("Peabody") is a resident of the State of Michigan who was employed by Bob Evans as a "server" at its Madison Heights restaurant (located at 32701 Concord Drive, Madison Heights, Michigan 48071 -- "Madison Heights Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff Peabody properly for all hours worked.

87.     Plaintiff Peabody worked at the Madison Heights Restaurant from approximately August 2016 to October 2018 and was paid an hourly wage rate of $3.52 per hour irrespective of the amount of tips she earned or the type of work she performed.

88.     Defendants employed Plaintiff Peabody to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

89.     Pursuant to Section 216(b) of the FLSA, Plaintiff Peabody has previously consented in writing to be a plaintiff in this action.

**Plaintiff Brittany Willis**

90.     Plaintiff Brittany Willis ("Willis") is a resident of the State of Ohio who was employed by Bob Evans as a "server" at both its New Philadelphia, Ohio restaurant (located at 311 Graff Rd SE, New Philadelphia, OH 44663, "New Philadelphia Restaurant") and its

Amherst restaurant (located at 1925 Niagara Fall Blvd., Amherst, New York 14228 "Amherst Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff Willis properly for all hours worked.

91.     Plaintiff Willis worked at the New Philadelphia Restaurant from approximately October 2016 to approximately May 2017 and then again from approximately November 2017 to the present.

92.     In 2017, 2018 and presently, Plaintiff Willis believes she was paid an hour wage of $4.15, $4.30 and $4.45 respectively, irrespective of how little tips she earned or the type of work she perform.

93.     Plaintiff Willis worked at the Amherst Restaurant from approximately May 2017 to November 2017 and was paid an hourly wage rate of $7.50 per hour irrespective of how little tips she earned or the type of work she performed.

94.     Defendants employed Plaintiff Willis to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

95.     Pursuant to Section 216(b) of the FLSA, Plaintiff Willis has previously consented in writing to be a plaintiff in this action.

***Plaintiff Christina Turner***

96.     Plaintiff Christina Turner ("Turner") is a resident of the State of Maryland who was employed by Bob Evans as a "server" at its Unit 359 restaurant (located at 8670 Veterans Memorial Parkway, O'Fallon, Missouri 63366 -- "O'Fallon Restaurant"). While employed as a server, Defendants failed to compensate Plaintiff Turner properly for all hours worked.

97.     Plaintiff Turner worked at the O'Fallon Restaurant from approximately October 1999 to October 2017 and was paid an hourly wage rate of $3.68 per hour during her last year, irrespective of how little tips she earned or the type of work she performed.

98.     Defendants employed Plaintiff Turner to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

99.     Pursuant to Section 216(b) of the FLSA, Plaintiff Turner has previously consented in writing to be a plaintiff in this action.

***Plaintiff Regina Jensen***

100.    Plaintiff Jensen worked as a server for Defendants for over 20 years including at Bob Evans' "Traffic Circle" location in Parkersburg, West Virginia through approximately March, 2018.

101.    Plaintiff Jensen was paid an hourly wage rate of approximately $2.62 an hour during her last year, irrespective of the tips earned or the nature of the work performed.

102.    Defendants employed Plaintiff Jensen to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

103.    Pursuant to Section 216(b) of the FLSA, Plaintiff Jensen has previously consented in writing to be a plaintiff in this action.

***Plaintiff Vickie Rash***

104.    Plaintiff Rash worked as a server for Defendants for approximately 28 years on and-off including at Bob Evans' "Traffic Circle" location in Parkersburg, West Virginia through approximately February, 2018.

105.    Plaintiff Rash was paid an hourly wage rate of approximately $2.62 an hour during her last year, irrespective of the tips earned or the nature of the work performed.

106.    Defendants employed Plaintiff Rash to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

107.    Pursuant to Section 216(b) of the FLSA, Plaintiff Rash has previously consented in writing to be a plaintiff in this action.

**Plaintiff Rebecca Bailey**

108.    Plaintiff Bailey worked as a server at the Bob Evans restaurant in Athens, Ohio on-and-off for approximately 28 years until mid-July, 2016.

109.    Plaintiff Bailey was paid an hourly wage rate of approximately $4.18 an hour during her last year, irrespective of the tips earned or the nature of the work performed.

110.    Defendants employed Plaintiff Bailey to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

111.    Pursuant to Section 216(b) of the FLSA, Plaintiff Bailey has previously consented in writing to be a plaintiff in this action.

**Plaintiff James Woodworth**

112.    Plaintiff Woodworth has worked as a server for Defendants at the Bob Evans restaurant in Champaign, Illinois for approximately 10 years.

113.    Plaintiff Woodworth was paid an hourly wage rate of approximately $4.95 an hour during her last year, irrespective of the tips earned or the nature of the work performed.

114.    Defendants employed Plaintiff Woodworth to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

115.    Pursuant to Section 216(b) of the FLSA, Plaintiff Woodworth has previously consented in writing to be a plaintiff in this action.

***Defendants***

116.    Defendant Bob Evans Farms, Inc. ("BEF, Inc.") is a publicly traded Delaware corporation that is the parent corporation of Bob Evans Farms, LLC.

117.    Defendant Bob Evans Farms, LLC ("BEF, LLC") is an Ohio limited liability company and a wholly-owned subsidiary of BEF, Inc.

118.    Upon information and belief, BEF, Inc. and BEF, LLC owned all the Bob Evans Restaurants through at least April 28, 2017. During the statutory period covered by this Complaint BEF, Inc. and BEF, LLC have transacted business within this District.

119.    At material times as alleged in this Complaint, Defendants BEF, Inc. and BEF, LLC were the employers of the Tipped Employees of the Bob Evans restaurants, as defined by the FLSA. 29 U.S.C. § 203(d)

120.    Defendant Bob Evans Restaurants, LLC ("BER, LLC") is a Delaware limited liability company that is wholly owned by the San Francisco-based private equity firm Golden Gate Capital. Golden Gate Capital is a private equity firm based in San Francisco, California.[5] Golden Gate Capital operates as a private holdings company and includes the Bob Evans restaurant chain, operating as Bob Evans Restaurants, LLC, as part of its investment portfolio.[6]

---

[5] https://www.goldengatecap.com (last visited April 11, 2019).
[6] https://www.goldengatecap.com/verticals/consumer/ (last visited April 11, 2019).

BER was duly organized in Delaware on January 10, 2017. It first registered to do business in Ohio as a foreign limited liability company on February 21, 2017.

121.    Upon information and belief, Defendant BER, LLC currently owns and operates the chain of Bob Evans Restaurants located across the United States. BER, LLC maintains its corporate office at 8111 Smith's Mill Road, New Albany, Ohio 43054. In addition, BER, LLC maintains the website "www.bobevans.com." During the statutory period covered by this Complaint, Defendant Bob Evans Restaurants has transacted business within this District.

122.    Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the Defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

123.    Defendants BEF, Inc., BEF, LLC, BER, LLC and Doe Defendants 1 through 10 are collectively referred to herein as "Defendants."

124.    During the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated the Bob Evans restaurants throughout the country under common control for a common business purpose.

125.    Defendants are/were engaged in related activities, e.g., activities which are necessary to the operation and maintenance of Bob Evans restaurants nationwide.

126.     Defendants are/were a single and joint employer with a high degree of interrelated and unified operations, sharing common management between restaurant locations, sharing common employees between locations, as well as sharing common human resources and payroll services. All of Defendants' locations share the common labor policies and practices complained of herein.

127.     During the statutory period covered by this Complaint Defendants collectively owned, operated and/or otherwise controlled the Bob Evans restaurants and employed the Tipped Employees as defined by the FLSA. 29 U.S.C. § 203(d).

## JURISDICTION AND VENUE

128.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

129.     This Court has original jurisdiction over Plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 classes consists of over 100 or more members; (ii) at least some of the members of the proposed Rule 23 classes, including the representative Plaintiff(s) for each of the classes, have a different citizenship from Defendant; and (iii) the claims of the proposed Rule 23 classes exceed $5,000,000.00 in the aggregate.

130.     Further, this Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

131.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

132.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

133.    The crux of the FLSA and the applicable state wage and hour laws is, *inter alia*, that all employees are entitled to be paid all wages due and owing. This includes the proper overtime wages for hours worked in excess of forty and the mandated minimum wages for all hours worked.

134.    Contrary to these basic protections, Plaintiffs and the members of the Classes were deprived of all wages due and owing to them.

135.    Plaintiffs and the members of the Classes are, or were, Tipped Employees employed by Defendants who were an enterprise engaged in commerce that had annual gross sales of at least $500,000.

136.    According to the Company's website, there are at least 500 restaurants operating in the United States. *See* https://www.bobevans.com/about-us/our-company (last visited November 20, 2018).

137.    Defendants govern and administer each restaurant location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the restaurant location that a customer may visit.

138.    Indeed, Defendants represent themselves to the general public as one restaurant chain – Bob Evans – that operates in nearly a third of the states across the country. For example, all of Defendants' restaurant locations use the brand name "Bob Evans" at their respective location and each location offers the same basic array of products and services to the general public.

139.     This family of restaurants provides the same service product to its customers by using a set formula when conducting its business.

140.     Further, all the restaurant locations advertise together on the same website.

141.     Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

142.     Evidencing this fact, on the Company's website, an individual is able to apply online to any Bob Evans location. The description for "server" is identical for all of Bob Evans locations.

143.     Defendants' restaurant locations can "share" Tipped Employees and said employees can transfer from one restaurant location to another.

144.     Moreover, Defendants share common management between restaurant locations. For example, Defendants' regional managers would oversee multiple restaurant locations.

105.     Further, Defendants' restaurants share common human resources and payroll services. Indeed, Defendants operate the various restaurant locations from the same headquarters.

145.     As such, the employment practices complained of herein occurred at all Bob Evans locations nationwide as Defendants utilized common labor policies and practices at each of their locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

**PLAINTIFFS' EXPERIENCE WORKING FOR DEFENDANTS**

146.     Plaintiffs were paid an hourly cash wage rate from Bob Evans and earned tips from those customers who chose to leave them a gratuity.

147.    Plaintiffs' hourly wage rate from Bob Evans was a subminimum wage rate as Defendants claimed a tip credit for all their Tipped Employees. Indeed, upon information and belief, Defendants claimed the maximum tip credit permissible for each of their Tipped Employees irrespective of the amount of tips earned by that Tipped Employee or the type of work he/she was performing for Defendants.

148.    Defendants required Tipped Employees who were opening a restaurant to arrive to arrive for work well before the restaurant opened so that they could perform the necessary opening shift work (e.g., prepping the work station, stocking items, making coffee and iced tea, doing any additional work that those working the closing shift did not do the night before, and often having to stock biscuits, rolls, and other specialty breads).

149.    Defendants required Tipped Employees who were closing a restaurant to stay well after the restaurant closed so that they could perform a host of closing activity including cleaning the tables, sweeping the floors, taking out trash, refilling the sugar, creamer and salt and pepper shakers, stocking their sections with clean dishes, tearing down and cleaning the coffee, tea, and soda machines, cleaning the area where the buns, biscuits and other specialty breads were kept, and rolling silverware.

150.    Plaintiffs estimate that this work took, on average, anywhere from an hour to an hour and a half to complete. During this time, Plaintiffs did not have any opportunity to earn any tips.

151.    In those instances where a Tipped Employee was working neither an opening nor a closing shift, Defendants would have these individuals "cut" or relieved of customer responsibility towards the end of their shift. Thereafter, these "cut" Tipped Employees would be required to perform approximately 30 minutes to 60 minutes of cleaning/break down work

before they could leave. Such work included, but was not limited to, breaking down and cleaning work areas at the end of the shift.

152.    Each Plaintiff believes they spent in excess of 20% of their time performing non-tip generating work while working for Defendants.

153.    Tipped Employees, including Plaintiffs, recorded their work time by logging into Bob Evans timekeeping system through the point-of-sale ("POS") system.

154.    The precise amount of time Plaintiffs recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

155.    Notably, Plaintiffs were never instructed to clock in under a different job code when performing non-tip generating work (such as set up or breakdown work at the start or end of a shift) or when working prior to or after the restaurant opened/closed. Indeed, to the best of each of the Plaintiffs' knowledge, Defendants did not keep track of such time separately from Plaintiffs' entries into the POS system.

156.    Importantly, none of the Plaintiffs recall being told that certain pay practices and/or restaurant procedures only applied to them. Accordingly, upon information and belief, each Plaintiff believes that their experience with Defendants was typical of the experience other Tipped Employees had with Defendants regarding their pay practices and restaurant procedures.

**THE TIP CREDIT PROVISION & REQUIREMENTS**

***FLSA Requirements***

157.    Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

158. As set forth herein, Defendants failed to meet applicable requirements in order to pay its Tipped Employees utilizing a tip credit.

*FLSA Notification Requirements*

159. Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[7] However, in order to take advantage of these wage provisions, the employer must meet certain strict notification requirements.

160. According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

161. As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

162. First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

163. Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

---

[7] An employer is not relieved of their duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage. That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit. Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

164.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

165.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

166.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

167.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

168.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.[8] If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

169.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash

---

[8] Courts have strictly construed this notification requirement. Accordingly, some courts have held that a generic governmental poster (which is required by the DOL) does not satisfy the tip credit notification requirement.

component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

**FLSA Dual Jobs Requirements**

170.    The FLSA defines a "tipped employee" as any employee *engaged in an occupation* in which he or she customarily and regularly receives not less than $30 a month in tips. 29 U.S.C. § 203(t)(emphasis added).

171.    Recognizing that tipped employees -- such as the Plaintiffs and members of the Collective Class -- are often *engaged* in more than one *occupation*, one which customarily receives tips and one which customarily does not, the regulations provide that when such tipped employees are employed in "dual jobs" (one which customarily generates tips and one which customarily does not), the employer is not entitled to take the tip credit for time spent engaged in the non-tipped occupation. *See* 29 C.F.R. § 531.56.

172.    To provide further guidance as to when an employer may be prohibited from taking a tip credit against server wages, the United States Department of Labor ("DOL") issued its Field Operations Handbook ("FOH") in 1988 which provides that an employer is *not* permitted to take a tip credit against its minimum wage obligations (1) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employees' tipped occupation (i.e., "dual jobs") or (2) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek. *See* FOH § 30(d)00(e).

173.    This rule is commonly referred to as the "80/20 rule."[9]

---

[9] Since 1988, the "20 percent rule" or "80/20 rule" as it has become known has been widely adhered to in district courts and circuit courts throughout the nation. *See See, e.g.,Marsh v. J. Alexander's LLC*, --- F.3d ----, 2018 WL 4440364 (9th Cir. 2018) (concluding that the plaintiff

174.    Thus, according to long standing DOL requirements, an employer such as Defendants must pay the full minimum wage when either the Tipped Employee is performing non-tipped work that is (i) *unrelated* to the employee's tipped occupation or (ii) non-tipped work that, although *related* to the employee's tipped occupation, exceeds 20 percent of the employee's time worked during a workweek.[10]

175.    As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Ohio's Requirements***

176.    Ohio mandates a higher minimum cash wage and requires employers to pay a tip-wage of at least 50% of the applicable minimum wage per hour. Thus, under Ohio law, the current maximum tip credit is $4.28 per hour, half of the current non-tipped minimum wage rate.

177.    As such, an employer cannot be said to have complied with Ohio's tip credit notification requirements where the employer simply relies on United States Department of

---

stated two claims for relief under the FLSA—"first, that he is entitled to the full hourly minimum wage for the substantial time he spent completing related but untipped tasks, defined as more than 20% of his workweek; and second, that he is entitled to the same for time he spent on unrelated tasks"); *Driver v. Apple Illinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time").

[10] After this suit was initially filed, the Department of Labor issued an opinion letter on November 8, 2018 which suggests that from November 8, 2018 forward the DOL will prohibit an employer from taking the tip credit as it relates to servers for time spent engaged in non-tipped labor that is not performed "contemporaneously with direct customer-service duties." See FLSA2018-27. Notably, this opinion letter has been widely criticized and even disregarded by courts due to its abrupt change in longstanding Department of Labor principals. *See Cope v. Let's Eat Out, Inc.*, 354 F.Supp.3d 976 (W.D. Mo. January 2, 2019); *Callaway v. DenOne LLC*, 2019 WL 1090346 (N.D. Ohio March 8, 2019); *Esry v. P.F. Chang's China Bistro, Inc.*, 2019 WL 1320789 (E.D. Ark. March 22, 2019).

Labor mandated posters, as those posters do not explicitly identify the tip credit amount in Ohio (as it differs from the FLSA tip credit amount).

178.    Importantly, Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA) (citing *Douglas v. Argo-Tech Corp.,* 113 F.3d 67 n. 2 (6th Cir.1997) (noting that Ohio's wage and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a "unitary fashion" is appropriate).

***Pennsylvania's Requirements***

179.    Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements. *See* 43 P.S. § 333.103(d).

180.    Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour. Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[11]

181.    As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as those posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

182.    In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

   a)  A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

   b)  Weekly or monthly amount reported by the employee, to the employer, of tips received. This may consist of reports made by the employees to the employer on IRS Form 4070;

---

[11] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee. *See* 43 P.S. § 333.103(d).

c)  Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage. The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

d)  Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

e)  Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

*West Virginia's Requirements*

183.    West Virginia mandates a higher minimum wage than under federal law. From January 1, 2015 through December 31, 2015, the West Virginia minimum wage was $8.00 per hour and since January 1, 2016, the minimum wage has been $8.75 per hour. W. Va. Code § 21-5C-2.

184.    For tipped employees, prior to January 1, 2015, West Virginia allowed an employer to claim 20% of the minimum wage due as a tip credit from gratuities received by the employee. W. Va. Code § 21-5C-4. Thus, if the minimum wage was $7.25 per hour, an employer only had to pay a cash wage of $5.80 (assuming the employee received sufficient tips to claim the credit). After January 1, 2015, West Virginia permits an employer to claim a credit of 70% of the minimum wage due as a tip credit from gratuities received by the employee. *Id.*

Consequently, an employer can now pay as little as $2.62 per hour to a tipped employee provided the employee is earning at least $6.13 per hour in tips.

185.    Importantly, however, the employer must maintain "documentary evidence that the employee is receiving at least seventy percent of the minimum wage in gratuities . . ." W. Va. Code § 21-5C-4.

186.    Indeed, the West Virginia Division of Labor states unequivocally that "[t]o qualify for the credit, employers must *ensure* that the employees' tips and the reduced hourly wage rate equal *at least* the required minimum wage rate and must keep accurate records of employees' tips." *See* https://labor.wv.gov/Wage-Hour/Minimum_Wage/Documents/MINIMUM %20WAGE%20POSTER%20012018.pdf (last visited April 11, 2019) (emphasis added).

187.    West Virginia State Laws mandates that when an employer "discharges an employee, or whenever an employee quits or resigns from employment, the [employer] shall pay the employee's wages due for work that the employee performed prior to the separation of employment on or before the next regular payday on which the wages would otherwise be due and payable . . ." W. Va. Code § 21-5-4(b).

### *Maryland's Requirements*

188.    Maryland State Law also maintains tip notification requirements. *See* Md. Code Ann., Labor & Emp't § 3-419(a)(1)(ii) ("This section applies to each employee who has been informed by the employer about the provisions of this section"). Accordingly, courts in this District have held that "the analysis of Defendants' entitlement to claim the tip credit is the same under the FLSA and MWHL." *Prusin v. Canton's Pearls, LLC,* No. JKB-16-0605, 2017 U.S. Dist. LEXIS 183226, *10 (D. Md Nov. 6, 2017).

189.     Importantly, however, Maryland requires hourly workers such as Tipped Employees to be paid a higher hourly wage. Effective July 1, 2018, the hourly wage in Maryland is $10.10 per hour. For Tipped Employees, since July 1, 2014, Maryland requires employers to pay a cash wage of at least $3.63 per hour. Thus, for each year that the minimum wage was raised, Maryland has effectively permitted employers to take a higher tip credit amount.[12]

190.     To help ensure compliance with Maryland's wage and hour laws, Maryland's Department of Labor, Licensing & Regulation ("Department") offers a number of helpful guides and forms to the general public.

191.     In one such brochure, the Department notes that "[i]f an employee does not earn enough tips to meet the tip credit amount, the employer must make up the difference." https://www.dllr.state.md.us/forms/esstipinfobrochure.pdf (last visited January 25, 2019).

192.     The Department also makes clear that if Tipped Employees "are from time to time assigned to perform non-tip related tasks" they "must be paid by their employer at least the full minimum wage rate for that non-tipped time." *See* https://www.dllr.state.md.us/labor/wagepay/wptipped.shtml (last visited January 25, 2019).

***Michigan's Requirements***

193.     Michigan state law also maintains tip notification requirements. *See* M.C.L. § 408.414(d).

194.     Like the FLSA, Michigan law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee. *See* M.C.L. § 408.414 (d).

---

[12] Thus, for example, in July 2014, when the minimum wage was $7.25, employers were permitted to claim a tip credit of $3.62 per hour. By July 2016, when the minimum wage was $8.75, employers were permitted to claim a tip credit of $5.12 per hour ($8.75 minus the cash wage of $3.63 equals the tip credit amount of $5.12). By July 2017, the tip credit amount had increased to $5.62 due to the minimum wage rate now being $9.25 per hour.

195.    Importantly, however, Michigan mandates a higher minimum cash wage and requires employers to pay at least $3.52 per hour effective January 1, 2018.[13] Thus, under Michigan law, the maximum tip credit is $5.73 per hour.

196.    Further, Michigan requires notice to be given in order for an employer to pay an employee a cash wage below the full minimum wage.

197.    Michigan law also requires an employer to keep a written, signed statement of the amount of gratuities the employee received that week.

198.    Courts in this District have "aggressively enforce[ed] the notice requirement" of the tip credit provisions. *McFarlin v. Word Enters., LLC*, No. 16-cv-12536, 2018 U.S. Dist. LEXIS 46212, *11 (E.D. Mich. Mar. 21, 2018) (granting plaintiff's motion for partial summary judgment as to the issue of whether defendants met tip notification requirements).

199.    As such, an employer cannot be said to have complied with Michigan's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters. This is because these posters do not explicitly identify the tip credit amount in Michigan (as it differs from the FLSA tip credit amount).

*Illinois' Requirements*

200.    The elements of an IMWL overtime claim parallel those required to sustain a claim under FLSA. *See DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510896, at *3 (N.D. Ill. Aug. 10, 2011) (citing state and federal authority for the proposition that the IMWL and FLSA overtime provisions are coextensive). However, unlike the FLSA, the IMWL permits recovery of monthly-compounding statutory damages. See 820 ILCS 105/12(a).  *Robert House v. Ill. Bell Tel. Co.* (N.D. Ill., 2016).  "[T]ip credits are treated identically" under the IMWL and FLSA) see

---

[13] The minimum wage rate in Michigan, as of January 1, 2018, is $9.25 per hour.

*Driver v. AppleIllinois, LLC* (N.D. Ill., 2013).  Illinois does not permit deductions from wages that are not for the benefit of the employee unless made with the express written consent of the employee, given freely at the time the deduction is made.

### New York's Requirements

201.    New York state law maintains specific written requirements for an employer to pay wages below the full minimum wage.

202.    Before a New York employer can take a tip credit, they must inform the employee in writing, in English and in the employee's native language if not English, that the employer is taking a tip credit and the amount of the tip credit.

203.    Specifically, N.Y.C.R.R. §§137-2.2, 146.2-2 states that every New York employer in the restaurant industry shall furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages.

204.    Moreover, the NYLL, Article 6, § 195(1), requires New York employers to provide its employees a written statement in English, or in the language identified as their primary language, containing, *inter alia*,: (i) the employee's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; (ii) the regular pay day designated by the employer; and (iii)  allowances, if any, claimed as part of the minimum wage, *including tip*, in accordance with NYLL, Article 6, § 191.

205.    Further, the NYLL, Article 6, § 195(3), requires New York employers to furnish each employee with a statement with every payment of wages, listing the following: (i)  the dates of work covered by that payment of wages; (ii)  name of employee; (iii)  name of employer; (iv)

address and phone number of employer; (v)  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  (vi) deductions; (vii) *allowances, if any*, *claimed as part of the minimum wage*;  and (viii) net wages.

206.    Upon information and belief, Defendants maintained a policy and practice whereby they failed to provide Plaintiff Willis and the other members of the NY Class with the statutorily required notices that Defendants were paying its New York Tipped Employees the "tipped" minimum wage rate.

**DEFENDANTS' FAILURE TO COMPLY WITH APPLICABLE WAGE LAWS**

*Overtime*

207.    Absent certain exceptions and exemptions not applicable here, both the FLSA and PMWA requires all employers to pay their employees premium overtime wages at the rate of 1.5 times their regular rate of pay for all hours in excess of 40 in a workweek.

208.    As an initial matter, when an employee works in a tipped position, an employer must pay overtime based off the full minimum wage – and not the lower cash wage. Stated another way, under federal law, a tipped employee's overtime rate is 1.5 times $7.25 ($10.88) and not 1.5 times $2.13.

209.    Moreover, an employer cannot claim a tip credit larger than what is set forth in the regulations and Fact Sheet #15 ($5.12 per hour). Thus, under federal law, a tipped employee's overtime rate is $5.76 per hour ($10.88 minus $5.12).

210.    Further, when an employee performs work at two or more hourly job rates during a week and exceeds the forty-hour threshold, that employee's regular rate of pay is a combination of those two hourly rates. Stated another way, an employer cannot unilaterally elect

to pay an employee for overtime hours worked at the overtime rate of a lower job code, even if the work was performed under that job code.

211.    Indeed, it is black letter law that when an employee works, in a single workweek, two or more different types of work where he/she receives two or more different straight-time hourly rates, the regular rate of pay (for purposes of determining overtime compensation) is the weighted average of such hourly rates. *See, e.g.,* Fact Sheet #23: Overtime Pay Requirements of the FLSA.

212.    In the instant matter, Defendants failed to pay the proper overtime rate to Tipped Employees who worked in excess of forty hours in a workweek.

213.    Plaintiff McKeel's pay record for the pay period ending November 29, 2017, (attached in redacted form as Exhibit A) is a prime example of Defendants only paying the Tipped Employee overtime based on the tipped job code when Tipped Employees performed work under both a tipped job code and a non-tipped job code.[14]

214.    As Exhibit A makes plain, Defendants accorded no weight to the "Regular" time Plaintiff McKeel worked this particular pay period when calculating her overtime rate.

215.    Defendants' failure to pay the proper overtime rate is not limited to Plaintiff McKeel's experience.

---

[14] During this pay period, Plaintiff worked forty hours at the tipped rate of $2.83 per hour. In addition, Plaintiff also worked 10.87 hours of overtime at the tipped overtime rate of $6.4544 per hour. Although not provided in any detail, it also appears that Plaintiff worked additional "Regular" time during this week and was paid $10.03 for this work. In short, Defendant did not include this "Regular" work in the calculation of the proper overtime rate for this week. Indeed, considering the maximum tip credit amount that could be claimed for the 10.87 hours of tipped work is just over $48, it appears that Plaintiff was shorted $5.08 of overtime pay for this pay period (assuming Plaintiff's "regular" rate of pay was the full minimum wage of $7.25 per hour).

216.    For example, when Plaintiff Caperna incurred overtime for the pay period ending May 23, 2018 (attached in redacted form as Exhibit B), Defendants failed to pay the full overtime rate due and owing.

217.    Indeed, rather than pay the appropriate amount of $5.76 per hour worked over 40, Defendants only paid Plaintiff Caperna $5.2696 per hour of overtime worked.

218.    Consequently, Plaintiff McKeel and Plaintiff Caperna, as well as members of the Collective OT Class and PA OT Class, have been victims of a common policy and plan by Defendants that has violated their rights under the FLSA and the PMWA by denying them premium overtime wages calculated at the proper overtime rate for weeks where the Tipped Employee worked over forty hours.

*Minimum Wage Violations -- Notification*

219.    As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

220.    Rather than comply with the notification requirements set forth in Fact Sheet #15 (and the corresponding regulations)[15], Defendants chose to simply pay their Tipped Employees the subminimum wage rate and claim the maximum tip credit amount permissible. In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

221.    The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, including paying employees for all hours worked, that employer forfeits the tip credit and must pay the employee the full minimum wage.

---

[15] Courts in Pennsylvania look to FLSA jurisprudence when determining whether Pennsylvania's tip credit notification requirements have been satisfied.

41

222.     Indeed, Plaintiffs specifically do not ever recall being notified by Bob Evans that it intended to take a "tip credit," nor how much that amount would be.

223.     In addition, Plaintiffs recall several instances where they earned little to no tips and yet their hourly rate did not change. For example, Plaintiff McKeel recalls working one shift from 4:00 p.m. to 9:00 p.m. and earned only $20 in tips total. Plaintiff McKeel recalls another time where she was called into work, worked 45 minutes, earned a total of $3 in tips, and had to call her mother to pick her up because she did not make enough money to put gas in her car. Yet despite these paltry tips, Defendant still claimed the maximum tip credit of $4.42 for each of these hours worked.

224.     When Plaintiffs earned little to no tips, they do not ever recall Defendants adjusting their hourly rate upwards so as to account for the low tip amount received. As set forth above, this is in contravention of applicable wage laws regarding the tip credit provisions.

225.     Moreover, due to the nature of Defendants' business, Defendants were aware that on occasion, Tipped Employees earned little to no tips. Indeed, Plaintiff McKeel recalls being instructed to claim 10% of her sales in tips when entering said information into the POS system at the end of her shift. This was because the manager did not like entering overrides in the computer system, which was required every time an employee declared less than 10% of their sales in tips.

226.     Bob Evans also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing whenever the tip credit claimed by Defendants changed. Rather, Defendants took the maximum tip credit permissible irrespective of whether its Tipped Employees actually earned sufficient tips to substantiate the tip credit claimed.

***Minimum Wage Violations -- "Dual Jobs"***

227.    Defendants violated the FLSA by enforcing a policy or practice of paying servers sub-minimum, tip-credit wages even when they required those employees to perform non-tipped work that is *unrelated* to their tipped occupation (i.e., "dual jobs").

228.    Defendants violated the FLSA by enforcing a policy or practice of requiring servers to perform non-tipped work that, even if it was related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

229.    Defendants violated the FLSA by enforcing a policy or practice of requiring servers to perform non-tipped work that, even if it was related to their tipped occupation, was required to be performed for substantial and unreasonable periods of time and not contemporaneous to direct-service duties. For example, Defendants have required their servers to perform non-tipped work for substantial and unreasonable periods of time prior to waiting on any customers, after waiting on last customers, prior to the restaurants' opening for business and following the restaurants' close for business.

230.    Defendants regularly and frequently required Plaintiffs and the members of the Collective Class to perform a number of non-tipped duties **unrelated** to their tipped occupations, including but not limited to: taking out trash; scrubbing walls and doors; cleaning windows and sills; cleaning light fixtures; cleaning computers and electronics; scrubbing sinks; scrubbing trays and bins; sweeping and mopping floors; breaking down and cleaning booths; cleaning chairs; washing dishes and operating the dishtank; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; performing general janitorial work throughout the restaurant; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; preparing carry-out orders; preparing online orders; preparing delivery orders; answering the phone; working the cash register;

counting down and balancing cash drawers; greeting and seating customers; stocking and detail cleaning the salad case; stocking and detail cleaning the steam table; preparing salads; preparing deserts; baking bread; plating and preparing other foods away from customer tables, brewing coffee; detail cleaning the coffee, hot chocolate, juice and soda machines; preparing specialty drinks such as lemonades; filling and re-stocking ice bins; preparing individual servings of butters and dressings; and rolling bins full of silverware.

231.    Defendants regularly and frequently required Plaintiffs and the members of the Collective Class to perform a number of non-tipped duties **related** to their tipped occupation, including but not limited to: preparatory and workplace maintenance tasks such as sweeping floors; cleaning booths; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; stocking ice; brewing coffee; preparing specialty drinks such as lemonades; and rolling bins full of silverware. Defendants required Plaintiffs and members of the Collective Class to perform such related but non-tipped tasks for substantial and unreasonable periods of time and not contemporaneous to direct-service duties. Defendants required Plaintiffs and members of the Collective Class to perform such related but non-tipped work for substantial and unreasonable period of times prior to waiting on any customers, after waiting on last customers, prior to the restaurants' opening for business and following the restaurants' close for business.

232.    Despite performing these non-tipped duties, Defendants paid Plaintiffs and members of the Collective Class at an hourly rate less than the full minimum wage for all hours that Plaintiffs and members of the Collective Class worked for Defendants including the periods during which they were performing non-tipped duties.

233.    Further, Defendants also violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiffs Williams, Walker, and McKeel to be paid a sub-

minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as before or after the restaurant was opened/closed to the public or when the Tipped Employee was "cut" for the evening.

234.    In such situations, Tipped Employees performed the same basic set-up/break down, stocking, and cleaning work that Plaintiffs detailed above. Indeed, the "server" job description indicates that one of servers "regular" job accountabilities is to handle "food prep equipment such as knives, coffer maker, ice tea machine, etc." and that a physical requirement of servers is to be able to "freely access . . . [the] stock area" of the restaurant. *See* https://secure.jobappnetwork.com/apply/c_ber/l_en/Team-Member--Server-job-Phoenixville-PA-US-2706925.html#s (last visited January 22, 2019).

235.    At no time did Defendants have Plaintiffs or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage for time spent performing such non-tip generating work. Instead, Defendants elected to continue to pay Plaintiffs and other Tipped Employees the minimum cash wage and continued to claim the tip credit despite the fact that these employees could not earn tips during this time.

236.    Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiffs Williams, Walker, and McKeel and the other Tipped Employee were engaged in non-tip generating work.

237.    Because of the above violations, Defendants owe Plaintiffs and the other Tipped Employees the full minimum wage for every hour they worked and were only paid the minimum cash wage (and Defendants claimed the maximum tip credit for each hour worked). Thus, the amounts due and owing are significant.

***Uniform Deductions***

238.     It is a violation of 820 ILCS 115/9 for an employer to deduct uniform costs from wages unless the deduction is made with the express written consent of the employee, freely given at the time the deduction is made.

239.     By deducting uniform costs from Illinois Plaintiff and the IL IWPCA classes wages without their express written consent at the time the deductions were made, Defendants violated the IWPCA.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

240.     Plaintiffs bring this action on behalf of the Collective Class and Collective OT Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

241.     Plaintiffs McKeel and Caperna also bring this action on behalf of the Collective OT Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

242.     Plaintiff Bailey brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the OH Class for claims under OH State Laws.

243.     Plaintiff Bailey also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the OH OT Class for claims under OH State Laws.

244.     Plaintiffs Williams, Walker, and McKeel also bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the PA Class for claims under the PA State Laws.

245.     Plaintiff McKeel also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA OT Class for claims under the PA State Laws.

246.     Plaintiffs Jensen and Rash also bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the WV Class for claims under the WV State Laws, specifically, the WVWPCA.

247.     Plaintiff Ratcliff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the WV Class for claims under the WV State Laws, specifically, the WVMWMHS.

248.     Plaintiffs Hutton and Leo also bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the MD Class for claims under the MD State Laws.

249.     Plaintiff Peabody also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the MI Class for claims under the MI State Law.

250.     Plaintiff Woodworth also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the IL Class for claims under IL State Laws.

251.     Plaintiff Willis also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the NY Class for claims under the NY State Laws.

252.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).

253.     The claims brought pursuant to the OH State Laws, PA State Laws, WV State Law, MD State Laws, MI State Law, IL State Laws, and NY State Laws may be pursued by all similarly-situated persons who do not opt-out of their respective class pursuant to Fed. R. Civ. P. 23.

254.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiffs at this time, and can only be ascertained through appropriate

discovery, given that Bob Evans operates over 500 restaurants nationwide and their extensive presence in each of the states comprising the Rule 23 classes, there are likely thousands of individuals in each of the Classes.

255.    Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

256.    The claims of Plaintiffs are typical of the claims of the Classes they seek to represent. Plaintiffs and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

257.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting Plaintiffs individually and include, but are not limited to, the following:

a)   whether Defendants have failed to pay the full minimum wage for each hour worked;

b)   whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

c)   whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint;

d)   whether Defendants properly calculated the overtime wages of their Tipped Employees; and

e)   whether Plaintiffs and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

258.    Plaintiffs will fairly and adequately protect the interests of the Classes as their interests are aligned with those of the members of the Classes. Each of the Plaintiffs has no interests adverse to the Classes they seek to represent and has retained competent and experienced counsel.

259.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

260.    Plaintiffs and the Classes they seek to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

261.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of OH State Laws, PA State Laws, WV State Law, MD State Laws, MI State Law, IL State Laws and NY State Laws.

**FIRST CLAIM FOR RELIEF[16]**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

262.    Plaintiffs, on behalf of themselves and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

263.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

---

[16] FLSA "Tip Credit Notice" claim as originally alleged against all Defendants on January 24, 2019, in *McKeel*, Case No. 2:19-cv-00082 at ECF #1.

264.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

265.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs and each of the Collective Class Members within the meaning of the FLSA.

266.    Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

267.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

268.    Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

269.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

### SECOND CLAIM FOR RELIEF[17]
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
#### (On Behalf of the Collective Class)

270.    Plaintiffs, on behalf of themselves and the Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

---

[17] FLSA "Unrelated Duties" claim as originally raised against Defendants' Bob Evans Restaurants, LLC and Bob Evans Farms, Inc. on October 10, 2018 in *Williams*, Case No. 2:18-01353 at ECF #1; and as raised against Defendant Bob Evans Farms, LLC on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

271.    Defendants failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, et seq., 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f) by requiring Plaintiffs and the Collective Members in a given workweek, and during each and every workweek Plaintiffs and the Collective Members were employed by Defendants, to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying Plaintiffs and the Collective Members at the tip credit rate. Examples of such non-tipped labor unrelated to the primary duties of the tipped occupation of server include, but are not limited to taking out trash; scrubbing walls and doors; cleaning windows and sills; cleaning light fixtures; cleaning computers and electronics; scrubbing sinks; scrubbing trays and bins; sweeping and mopping floors; breaking down and cleaning booths; cleaning chairs; washing dishes and operating the dishtank; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; performing general janitorial work throughout the restaurant; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; preparing carry-out orders; preparing online orders; preparing delivery orders; answering the phone; working the cash register; counting down and balancing cash drawers; greeting and seating customers; stocking and detail cleaning the salad case; stocking and detail cleaning the steam table; preparing salads; preparing deserts; baking bread; plating and preparing other foods away from customer tables, brewing coffee; detail cleaning the coffee, hot chocolate, juice and soda machines; preparing specialty drinks such as lemonades; filling and re-stocking ice bins; preparing individual servings of butters and dressings; and rolling bins full of silverware.

272.    Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from the Defendants, compensation for

unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

273.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

### THIRD CLAIM FOR RELIEF[18]
### FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS
### (On Behalf of the Collective Class)

274.    Plaintiffs, on behalf of themselves and the Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

275.    Defendants failed and/or refused to comply with the FLSA, 29 U.S.C. § 201, et seq., 29 C.F.R. § 531.56(e), and the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f) by requiring Plaintiffs and the members of the Collective Class in a given workweek, and during each and every workweek Plaintiffs and the members of the Collective Class were employed by Defendants, to perform non-tipped labor related to their tipped occupation for substantial and unreasonable amounts of time in excess of twenty percent (20%) of their regular workweek, and at times that are not contemporaneous to direct-service duties, while paying Plaintiffs and the members of the Collective Class at the tip credit rate. Examples of such non-tipped labor related to their tipped occupation of servers include, but are not limited to, preparatory and workplace maintenance tasks such as sweeping floors; cleaning booths; stocking stations throughout the restaurant; stocking and setting tables; bussing tables; stocking ice; brewing coffee; preparing specialty drinks such as lemonades; and rolling bins full of silverware.

---

[18] FLSA "Related Duties" claim as originally raised against Defendants Bob Evans Restaurants, LLC and Bob Evans Farms, Inc. on October 10, 2018 in *Williams*, Case No. 2:18-01353 at ECF #1; and as raised against Defendant Bob Evans Farms, LLC on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

276.     Defendants required Plaintiffs and the members of the Collective Class to perform such related but non-tipped work for substantial and unreasonable period of times prior to waiting on any customers, after waiting on last customers, prior to the restaurants' opening for business and following the restaurants' close for business.

277.     Defendants failed and/or refused to pay Plaintiffs and the members of the Collective Class the full applicable minimum wage according to the provisions of the FLSA for time they spent performing non-tipped labor related to their tipped occupation, despite requiring them to perform such work in excess of twenty percent (20%) of a given workweek, for each and every workweek that Plaintiffs and the members of the Collective Class were employed by Defendants, in violation of 29 U.S.C. § 206(a).

278.     Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

279.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**FOURTH CLAIM FOR RELIEF[19]**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective OT Class)**

280.     Plaintiffs McKeel and Caperna, on behalf of themselves and the Collective OT Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

---

[19] FLSA Overtime claim as originally alleged against all Defendants on January 24, 2019, in *McKeel*, Case No. 2:19-cv-00082 at ECF #1.

281.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed herein.

282.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect Plaintiffs McKeel and Caperna and the members of the Collective OT Class.

283.    At all relevant times, Plaintiffs McKeel and Caperna and the members of the Collective OT Class were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s).

284.    At all relevant times, Plaintiffs McKeel and Caperna and the members of the Collective OT Class were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

285.    At all relevant times, Defendants have been an enterprise engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s) with annual gross volume of sales made or business done in excess of $500,000.00.

286.    At all relevant times, Defendants employed Plaintiffs McKeel and Caperna and the members of the Collective OT Class within the meaning of 29 U.S.C. § 203(g).

287.    As stated above, Defendants had a policy and practice of failing to pay the proper overtime rate to Tipped Employees who worked in excess of forty (40) hours per week.

288.    Defendants' failure to pay Plaintiffs McKeel and Caperna and all other members of the Collective OT Class the proper overtime compensation due and owing is a violation of 29 U.S.C. §§ 206, 207.

289.    In violating the FLSA, Defendants acted willfully and with disregard of clearly applicable FLSA provisions. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

290.    Due to the Defendants' FLSA violations, Plaintiffs McKeel and Caperna and the members of the Collective OT Class are entitled to recover from Defendants their unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

291.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**FIFTH CLAIM FOR RELIEF[20]**
**OHIO MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the OH Class)**

292.    Plaintiff Bailey, on behalf of herself and the members of the OH Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

293.    At all relevant times, Bob Evans has employed, and/or continues to employ, Plaintiff Bailey and each of the OH Class Members within the meaning of the Ohio Constitution and the Ohio MFWSA.

294.    Pursuant to Bob Evans' compensation policies, rather than pay Tipped Employees the Ohio mandated minimum wage, Bob Evans improperly took a tip credit and paid Tipped Employees at a rate well below the Ohio minimum wage.

295.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

---

[20] Ohio Class claims as originally alleged against all Defendants on March 23, 2019 in *Jensen*, Case No. 2:19-cv-00921 at ECF #1.

296.     In addition, at relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to pay the full minimum wage for time spent by Plaintiff Bailey and members of the OH Class performing non-tip generating work.

297.     As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the OH Class less than the Ohio minimum wage for all hours worked.

298.     Due to the Defendants' violations, Plaintiff Bailey, on behalf of herself and the members of the OH Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF[21]**
**OHIO MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the OH OT Class)**

299.     Plaintiff Bailey, on behalf of herself and the members of the OH OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

300.     At all relevant times, Plaintiff Bailey and the members of the OH OT Class were "Employees" and Defendants were their "Employer" within the meaning of the Ohio Constitution and the Ohio MFWSA.

301.     The MFWSA provides that employees who work over 40 hours in a workweek shall receive a wage rate of "one and one-half times the employees wage rate for hours worked in excess of forty hours in one workweek." O.R.C. 4111.03.

---

[21] Ohio Class claims as originally alleged against all Defendants on March 23, 2019 in *Jensen*, Case No. 2:19-cv-00921 at ECF #1.

302.     Defendants violated the MFWSA by failing to pay Plaintiff Bailey and the members of the OH OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.

303.     In violating the MFWSA and the Ohio Constitution, Defendants acted willfully and with disregard of clearly applicable PMWA provisions.

304.     Pursuant to the MFWSA and the Ohio Constitution Plaintiff Bailey and the members of the OH OT Class are entitled to recover from Defendants an amount treble the overtime compensation for all the hours worked in excess of forty hours in a work week for which they did not receive the proper overtime compensation, in an amount to be proven at trial, together with costs and reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF[22]**
**PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

305.     Plaintiffs Williams, Walker, and McKeel, on behalf of themselves and the members of the PA Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

306.     At all relevant times, Bob Evans has employed, and/or continues to employ, Plaintiffs Williams, Walker, and McKeel and each of the PA Class Members within the meaning of the PMWA.

307.     Pursuant to Bob Evans' compensation policies, rather than pay Tipped Employees the Pennsylvania mandated minimum wage, Bob Evans improperly took a tip credit and paid Tipped Employees at a rate well below the Pennsylvania minimum wage.

---

[22] PA Class claims as originally alleged against all Defendants on January 24, 2019, in *McKeel*, Case No. 2:19-cv-00082 at ECF #1.

308.     Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the required minimum wage in Pennsylvania, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage.

309.     At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

310.     In addition, at relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to pay the full minimum wage for time spent by Plaintiffs Williams, Walker, and McKeel and members of the PA Class performing non-tip generating work.

311.     As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

312.     Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

313.     Due to the Defendants' violations, Plaintiffs Williams, Walker, and McKeel, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF[23]
### <u>PENNSYLVANIA WAGE PAYMENT COLLECTION LAW</u>
### (On Behalf of the PA Class)

---

[23] PA Class claims as originally alleged against all Defendants on January 24, 2019, in *McKeel*, Case No. 2:19-cv-00082 at ECF #1.

314.    Plaintiffs Williams, Walker, and McKeel, on behalf of themselves and the members of the PA Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

315.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiffs Williams, Walker, and McKeel and each of the PA Class Members within the meaning of the WPCL.

316.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiffs Williams, Walker, and McKeel and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

317.    As a result of Defendants' unlawful policies, Plaintiffs Williams, Walker, and McKeel and the members of the PA Class have been deprived of compensation due and owing.

318.    In paying Plaintiffs Williams, Walker, and McKeel and Tipped Employees the tip credit wage, Defendants effectively agreed that Plaintiff and Tipped Employees were to be paid minimum wage.

319.    Indeed, it is black letter law that an employee cannot voluntarily agree or contract to be paid less than the legal minimum wage for each hour worked. Accordingly, at a minimum, an employee must contract to be paid at least the minimum wage for each hour worked. Through the practices described above, Defendants paid Plaintiffs Williams, Walker, and McKeel and other Tipped Employees less than what they were effectively bound to pay -- the legal minimum wage for each hour worked.

320.    Plaintiffs Williams, Walker, and McKeel, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid

compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

## NINTH CLAIM FOR RELIEF[24]
## PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
### (On Behalf of the PA OT Class)

321.   Plaintiff McKeel, on behalf of herself and the members of the PA OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

322.   At all relevant times, Plaintiff McKeel and the members of the PA OT Class were "Employees" and Defendants were their "Employer" within the meaning of the PMWA.

323.   The PMWA provides that employees who work over 40 hours in a workweek shall receive "1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week." 43 P.S. § 333.104(c).

324.   Defendants violated the PMWA by failing to pay Plaintiff McKeel and the members of the PA OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.

325.   In violating the PMWA, Defendants acted willfully and with disregard of clearly applicable PMWA provisions.

326.   Pursuant to the PMWA, 43 P.S. § 333.113 Plaintiff McKeel and the members of the PA OT Class are entitled to recover from Defendants an amount equal to unpaid overtime compensation for all the hours worked in excess of forty hours in a work week for which they did not receive the proper overtime compensation, in an amount to be proven at trial, together with interest, costs and reasonable attorneys' fees.

---

[24] PA Class claims as originally alleged against all Defendants on January 24, 2019, in *McKeel*, Case No. 2:19-cv-00082 at ECF #1.

## TENTH CLAIM FOR RELIEF[25]
## <u>WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT</u>
### (On Behalf of the WV Class)

327.     Plaintiffs Jensen and Rash, on behalf of themselves and the members of the WV

Class, reallege and incorporate by reference the paragraphs above as if they were set forth again

herein.

328.     At all relevant times, Plaintiffs Jensen and Rash and the members of the WV

Class were "Employees" and Defendants were their "Employer" within the meaning of the

WVWPCA.

329.     Further, at all relevant times, Defendants employed six or more employees in any

one separate, distinct and permanent location during a calendar week, thereby making them

subject to the minimum wage requirements set forth in W. Va. Code § 21-5C.

330.     The WVWPCA provides that employees are entitled to all wages due and owing

to them upon their separation with their employer "on or before the next regular payday" that the

employee would otherwise receive their paycheck had they not been separated. W. Va. Code §

21-5-4(b).

331.     Defendants violated the WVWPCA by failing to timely pay Plaintiffs L. Williams

and Ratcliff and the members of the WSV Class all wages owed to them within the time periods

mandated by the WVWPCA for employees pursuant to W. Va. Code § 21-5-4(b).

332.     Pursuant to the WVWPCA, Plaintiffs Jensen and Rash and the members of the

WV Class are entitled to recover from Defendants an amount equal to unpaid wages due, plus

two times the amount of unpaid wages as liquidated damages. W. Va. Code § 21-5-4(e).

_____

[25] WV Class as claims originally alleged against all Defendants on March 23, 2019 in *Jensen*, Case No. 2:19-cv-00921 at ECF #1.

## ELEVENTH CLAIM FOR RELIEF[26]
## WEST VIRGINIA MINIMUM WAGE AND MAXIMUM STANDARDS VIOLATION
### (On Behalf of the WV MW Class)

333.    Plaintiffs Jensen and Rash, on behalf of themselves and the members of the WV MW Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

334.    At all relevant times, Plaintiffs Jensen and Rash and the members of the WV MW Class were "Employees" and Defendants were their "Employer" within the meaning of the WVMWMHS.

335.    Further, at all relevant times, Defendants employed six or more employees in any one separate, distinct and permanent location during a calendar week, thereby making them subject to the minimum wage requirements set forth in W. Va. Code § 21-5C.

336.    The WVMWMHS requires that an employer who wishes to utilize the tip credit in West Virginia ensure that their tipped employees are receiving at least the amount claimed as a tip credit per hour. *See* W. Va. Code § 21-5C-4.

337.    Moreover, an employee cannot voluntarily agree to be paid an improper subminimum wage for one period of time on the expectation that they will earn sufficient tips in another period of time to offset the initial low paying time period.

338.    As the MVMWMHS makes plain, "an agreement by an employee to work for less than the applicable wage rate is hereby declared by the legislature of West Virginia to be against public policy and unenforceable."  W. Va. Code § 21-5C-8(a).

---

[26] WV Class claims as originally alleged against all Defendants on March 23, 2019 in *Jensen*, Case No. 2:19-cv-00921 at ECF #1.

339.     Defendants violated the WVMWMHS by failing to ensure that Plaintiffs Jensen and Rash and the members of the WV MW Class received sufficient gratuities in order to properly claim the tip credit taken.

340.     Pursuant to the WVMWMHS, Plaintiffs Jensen and Rash and the members of the WV MW Class are entitled to recover from Defendants an amount equal to unpaid wages due. W. Va. Code § 21-5C-8.

341.      In addition, Plaintiffs Jensen and Rash and the members of the WV MW Class are entitled to recover from Defendants costs and reasonable attorneys' fees. W. Va. Code § 21-5C-8.

### TWELFTH CLAIM FOR RELIEF[27]
### MARYLAND MINIMUM WAGE VIOLATIONS
### (On Behalf of the MD State Class)

342.     Plaintiffs Hutton and Leo, on behalf of themselves and the members of the MD State Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

343.     At all relevant times, Plaintiffs Hutton and Leo and the MD State Class were "Employees" and Defendants was their "Employer" within the meaning of the MWHL.

344.     At all relevant times, Defendants have employed, and/or continues to employ, Plaintiffs Hutton and Leo and each of member of the MD State Class within the meaning of the MWHL.

345.     Defendants were obligated to pay Plaintiffs Hutton and Leo and the members of the MD State Class at least the minimum wage for each hour worked, pursuant to § 3-413 of the MWHL.

---

[27] MD Class claims as originally alleged against all Defendants on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

346.    Pursuant to Bob Evans' compensation policies, rather than pay Tipped Employees the Maryland mandated minimum wage, Defendants improperly took a tip credit and only paid a tip credit wage. The result of this conduct was that Tipped Employees were paid at a rate below the Maryland minimum wage.

347.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements set forth in § 3-419 of the MWHL in order for Defendants to claim the tip credit.

348.    In addition, at relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to pay the full minimum wage for time spent by Plaintiffs Hutton and Leo and members of the MD Class performing non-tip generating work.

349.    As a result of Defendants' willful practices, Bob Evans was not entitled to claim the tip credit and pay Plaintiffs Hutton and Leo and the members of the MD State Class less than the Maryland minimum wage for all hours worked.

350.    Due to the Defendants' violations, Plaintiffs Hutton and Leo, on behalf of themselves and the members of the MD State Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees, and costs.

**THIRTEENTH CLAIM FOR RELIEF[28]**
**MARYLAND WAGE PAYMENT AND COLLECTION LAW VIOLATIONS**
**(On Behalf of the MD State Class)**

351.    Plaintiffs Hutton and Leo, on behalf of themselves and the members of the MD State Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

---

[28] MD Class claims as originally alleged against all Defendants on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

352.    The MWPCL provides in relevant part:

Each employer:

(i)     Shall set regular pay periods; and

(ii)    Except as provided in paragraph (2) of this subsection, shall pay each employee at least once in every 2 weeks or twice in each month.

Md. Code Ann., Labor & Employment, §3-502.

353.    Plaintiffs Hutton and Leo and members of the MD State Class are/were employees of Defendants within the meaning of the MWPCL and, as such, are entitled to timely payment of wages due to them.

354.    Defendants are employers within the meaning of the MWPCL.

355.    More than two weeks have elapsed from the date on which Defendants were required to have paid the wages owed to the Plaintiffs Hutton and Leo and to the MD State Class members for all hours of work and the full minimum wage due and owing for each hour worked. Defendant has no bona fide reason for withholding the wages owed to Plaintiffs Hutton and Leo and to the MD State Class members.

356.    Further, Md. Code Ann., Labor & Employment, §3-505 requires an employer to pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

357.    Plaintiffs Hutton and Leo and members of the MD State Class who ceased employment with Defendants more than two weeks ago are entitled to unpaid compensation, but to date have not received such compensation.

358.    Pursuant to Md. Code Ann., Labor & Employment, §3-507.2, due to the Defendants' violations set forth above, Plaintiffs Hutton and Leo, on behalf of themselves and the members of the MD State Class, are entitled to recover three times the unpaid wages, attorneys' fees and costs.

**FOURTEENTH CLAIM FOR RELIEF[29]**
**MWOWA – MINIMUM WAGE VIOLATIONS**
**(On Behalf of the MI Class)**

359.    Plaintiff Peabody, on behalf of herself and the members of the MI Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

360.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff Peabody and each of the MI Class Members within the meaning of the MWOWA.

361.    Pursuant to Bob Evans's compensation policies, rather than pay Tipped Employees the Michigan mandated minimum wage, Defendants improperly took a tip credit and only paid a tip credit wage. The result of this conduct was that Tipped Employees were paid at a rate below the Michigan minimum wage.

362.    At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

363.    As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff Peabody and the members of the MI Class less than the Michigan minimum wage for all hours worked.

364.    Defendants have violated and, continue to violate, the Michigan Workforce Opportunity Wage Act.

---

[29] MI Class claims as originally alleged against all Defendants on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

365.   Due to the Defendants' violations, Plaintiff Peabody, on behalf of herself and the members of the MI Class, are entitled to recover from Defendants the amount of unpaid minimum wages; an additional equal amount as liquidated damages; and attorneys' fees and costs.

**FIFTEENTH CLAIM FOR RELIEF[30]**
**VIOLATIONS OF IL STATE LAWS – Minimum Wage Violations**
**(On Behalf of the IL Class)**

366.   Plaintiff Woodworth, on behalf of himself and the members of the IL Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

367.   At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff Woodworth and each of the IL Class Members within the meaning of the IMWL.

368.   Pursuant to Bob Evans' compensation policies, rather than pay Tipped Employees the Illinois mandated minimum wage, Defendants improperly took a tip credit and only paid a tip credit wage. The result of this conduct was that Tipped Employees were paid at a rate below the Illinois minimum wage.

369.   At relevant times in the period encompassed by this Complaint, Defendants had a willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit.

370.   As a result of Defendants' willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff Woodworth and the members of the IL Class less than the Illinois minimum wage for all hours worked.

371.   Defendants have violated and, continue to violate Illinois Minimum Wage Law.

---

[30] As alleged against all Defendants upon the filing of this Master Complaint.

372.     Due to the Defendants' violations, Plaintiff Woodworth, on behalf of himself and the members of the IL Class, are entitled to recover from Defendants the amount of unpaid minimum wages; an additional equal to twice the amount of unpaid minimum wages as well as 5% of the amount of the underpayment for each month following the date of payment during which such underpayments remain unpaid as liquidated damages; and attorneys' fees and costs.

### SIXTEENTH CLAIM FOR RELIEF[31]
### ILLINOIS MINIMUM WAGE LAW– OVERTIME VIOLATIONS
### (On Behalf of the IL OT Class)

373.     Plaintiff Woodworth, on behalf of himself and the members of the IL OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

374.     At all relevant times, Plaintiff Woodworth and the members of the IL OT Class were "Employees" and Defendants were their "Employer" within the meaning of the IMWL.

375.     The IMWL provides that employees who work over 40 hours in a workweek shall receive "compensation for his employment in excess above at a rate not less than 1 ½ times the regular rate." (820 ILCS 105/4a.)

376.     Defendants violated the IMWL  by failing to pay Plaintiff Woodworth and the members of the IL OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.

377.     In violating the IMWL, Defendants acted willfully and with disregard of clearly applicable IMWL provisions.

378.     Pursuant to the IMWL, Plaintiff Woodworth and the members of the IL OT Class are entitled to recover from Defendants an amount treble the overtime compensation and 5% of

---

[31] As alleged against all Defendants upon the filing of this Master Complaint.

the amount of the underpayment for each month following the date of payment during which such underpayments remain unpaid for all the hours worked in excess of forty hours in a work week for which they did not receive the proper overtime compensation, in an amount to be proven at trial, together with costs and reasonable attorneys' fees.

## SEVENTEENTH CLAIM FOR RELIEF[32]
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT–ILLEGAL DEDUCTIONS
### (On Behalf of the IL IWPCA Class)

379.     Plaintiff Woodworth, on behalf of himself and the members of the IL OT Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

380.     At all relevant times, Plaintiff Woodworth and the members of the IL IWPCA Class were "Employees" and Defendants were their "Employer" within the meaning of the IWPCA.

381.     This Count arises from Defendants' practice of making unlawful deductions from the wages of Plaintiff Woodworth and the IL IWPCA Class.

382.     During the course of his employment, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

383.     Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

384.     Defendants had a practice of making unlawful deductions from Plaintiff Woodworth's and the IL IWPCA Class's earned wages without authorization from Plaintiff Woodworth and the IL IWPCA Class in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiffs' benefit; (c) were not in response to a valid

---

[32]  As alleged against all Defendants upon the filing of this Master Complaint.

wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiffs, given freely at the time the deductions were made.

385.    Defendants likewise had a practice of making unlawful deductions from members of the IL IWPCA Class without their authorization.

386.    Defendants' practice of making unlawful deductions from the earned wages of Plaintiff Woodworth and the IL IWPCA Class violated the IWPCA.

387.    Plaintiff and the IL IWPCA Class are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

388.    As a result of Defendants' violations of the IWPCA, Plaintiff Woodworth and the IL IWPCA Class, are entitled to unpaid wages and unlawful deductions, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**EIGHTEENTH CLAIM FOR RELIEF[33]**
**VIOLATIONS OF NY STATE LAWS – Minimum Wage Violations**
**(On Behalf of the NY Class)**

389.    Plaintiff Willis, on behalf of herself and the members of the NY Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

390.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff Willis and each member of the NY Class within the meaning of the NY State Laws.

391.    This count arises from Defendants' willful violation of the NYLL, New York Minimum Wage Act, Article 19, § 650 *et seq*., for Defendants' failure to pay Plaintiff Willis and the members of the NY Class their earned minimum wages. Plaintiff Willis and the members of

---

[33] NY Class claims as originally alleged against all Defendants on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

the NY Class are current and former Tipped Employees of Defendants who are due, and who have not been paid, minimum wages under the provisions of the NYLL.

392.    As set forth above, Defendants have a policy or practice of paying Plaintiff Willis and the members of the NY Class subminimum wages.

393.    Defendants paid Plaintiff Willis and the members of the NY Class these wages even though they perform jobs that are not within the scope of the "Food service worker" definition under the NYLL or associated regulations.

394.    For example, Defendants' policy is to pay Plaintiff Willis and the members of the NY Class subminimum wages even though they are performing jobs unrelated to their tipped jobs.

395.    Additionally, Defendants' policy is to pay Plaintiff Willis and the members of the NY Class subminimum wages even on days in which they spend more than 20% of their work day performing non-tipped occupations, and during workweeks that they spend more than 20% of the workweek performing non-tipped occupations.

396.    Further, Defendants' policy is to pay Plaintiff Willis and the members of the NY Class subminimum wages even on days in which the Plaintiffs are assigned to work in an occupation in which tips are not customarily received.

397.    As set forth in detail above, Defendants regularly require Plaintiff Willis and the members of the NY Class to perform such jobs as food preparation and general restaurant cleaning, but continued to pay these individuals subminimum wages while they are engaged in those jobs.

398.    Defendants also failed to provide written notice of the tip credit or allowance to Plaintiff Willis and the members of the NY Class as required under New York State law.

399.    At all relevant times, Defendants did not comply with NYLL's tip credit provision and the supporting New York State Department of Labor Regulations, including, but not limited to 12 N.Y.C.R.R. §137-2.2 and 146.2-2.

400.    Moreover, Defendants failed to provide Plaintiff Willis and the members of the NY Class with wage statements that complied with the requirements of NYLL. For example, Plaintiff Willis was not given wage statements that listed allowances claimed by Defendants, including the tip credit, as required by NYLL § 195(3) as amended by the New York Wage Theft Prevention Act.

401.    Accordingly, Defendants are not entitled to pay Plaintiff Willis and the members of the NY Class subminimum wages under NYLL.

402.    Because Defendants never paid Plaintiff Willis and the members of the NY Class more than the subminimum wage rate in any week (and instead paid them only at the lower tip credit rate for all time worked), in each week in which Plaintiff Willis and the members of the NY Class did work at the improper tip credit rate, the average of that Tipped Employee's wages for that week necessarily falls below the minimum wage for that week.

403.    Further, Plaintiff Willis and the members of the NY Class suffered this loss of wages in virtually every week in which they worked for the Defendants. This is true because Defendants consistently assigned the non-tipped tasks to Plaintiff Willis and the members of the NY Class on every shift, or almost every shift, which they worked. Therefore, such violations occurred in each workweek in which Plaintiff Willis and the members of the NY Class worked.

404.    Therefore, over the course of a workweek, Plaintiff Willis and the members of the NY Class were performing non-tip credit work at improper, lower, tip credit rates and never

receiving sufficient compensation from Defendants over the course of the week to enable the class members' compensation to reach the average minimum hourly wage for that week.

405.     Due to the Defendants' violations, Plaintiff Willis, on behalf of herself and the members of the NY Class, are entitled to recover from Defendants the amount of unpaid minimum wages, plus penalties and prejudgment interest as allowed by NY State Laws.

**NINETEENTH CLAIM FOR RELIEF[34]**
**VIOLATIONS OF NY STATE LAWS – Failure To Provide Annual Wage Notices**
**(On Behalf of the NY Class)**

406.     Plaintiff Willis, on behalf of herself and the members of the NY Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

407.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff Willis and each member of the NY Class within the meaning of the NY State Laws.

408.     Defendants have willfully failed to supply Plaintiff Willis and each member of the NY Class with wage notices, as required by the NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing Plaintiff Willis' and each member of the NY Class rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

---

[34] NY Class claims as originally alleged against all Defendants on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

409.    Through their knowing or intentional failure to provide Plaintiff Willis and each member of the NY Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

410.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff Willis and each member of the NY Class are entitled to statutory penalties of $50 for each workday that Defendants failed to provide them with wage notices, or up to a total of $5,000, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-b).

## TWENTIETH CLAIM FOR RELIEF[35]
## VIOLATIONS OF NY STATE LAWS – Failure To Provide Accurate Wage Statements
### (On Behalf of the NY Class)

411.    Plaintiff Willis, on behalf of herself and the members of the NY Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

412.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff Willis and each member of the NY Class within the meaning of the NY State Laws.

413.    Defendants have willfully failed to supply Plaintiff Willis and each member of the NY Class with accurate statements of wages as required by the NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

---

[35] NY Class claims as originally alleged against all Defendants on April 22, 2019 following the consolidation of *Williams* and *McKeel*, at ECF ##57, 60.

414.     Through their knowing or intentional failure to provide Plaintiff Willis and each member of the NY Class with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

415.     Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff Willis and each member of the NY Class are entitled to statutory penalties of $250 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of up to $5,000, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and/or on behalf of herself and all other similarly situated members of the Classes respectfully requests the Court grant the following relief:

A.     Designation of this action as a collective action on behalf of the Collective Class and the Collective OT Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.     Designation of the action as a class action under F.R.C.P. 23 on behalf of the OH Class, the OH OT Class, PA Class, the PA OT Class, the WV Class, the MD Class, the MI Class, the IL Class, the IL OT Class, the IL IWPCA Class, and the NY Class;

C.     Designation of Plaintiffs as representatives of the Collective Class;

D.     Designation of Plaintiffs McKeel and Caperna as representatives of the Collective OT Class;

E.     Designation of Plaintiff Bailey as representative of the OH Class;

F.      Designation of Plaintiff Bailey as representative of the OH OT Class;

G.      Designation of Plaintiffs Williams, Walker, and McKeel as representatives of the PA Class;

H.      Designation of Plaintiff McKeel as representative of the PA OT Class;

I.      Designation of Plaintiffs Jensen and Rash as representatives of the WV Class;

J.      Designation of Plaintiffs Jensen and Rash as representative of the WV MW Class;

K.      Designation of Plaintiffs Hutton and Leo as representatives of the MD Class;

L.      Designation of Plaintiff Peabody as representative of the MI Class;

M.      Designation of Plaintiff Woodworth as representative of the IL Class;

N.      Designation of Plaintiff Woodworth as representative of the IL OT Class;

O.      Designation of Plaintiff Woodworth as representative of the IL IWPCA Class;

P.      Designation of Plaintiff Willis as representative of the NY Class;

Q.      Designation of Plaintiffs' counsel as class counsel for the Classes;

R.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, OH State Laws, PA State Laws, WV State Laws, MD State Laws, MI State Law, IL State Laws, and NY State Laws;

S.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

T.      An award of unpaid minimum wages to Plaintiffs and the members of the Collective Class;

U.      An award of unpaid overtime wages to Plaintiffs McKeel and Caperna and the members of the Collective OT Class;

V.      An award of unpaid minimum wages to Plaintiff Bailey and the OH Class;

W.      An award of unpaid overtime wages to Plaintiff Bailey and the members of the OH OT Class;

X.      An award of unpaid minimum wages to Plaintiffs Williams, Walker, and McKeel and the members of the PA Class;

Y.      An award of unpaid overtime wages to Plaintiff McKeel and the members of the PA OT Class;

Z.      An award of unpaid minimum wages to Plaintiffs Jensen and Rash and the members of the WV Class;

AA.     An award of unpaid minimum wages to Plaintiffs Jensen and Rash and the members of the WV MW Class;

BB.     An award of unpaid minimum wages to Plaintiffs Hutton and Leo and the members of the MD Class;

CC.     An award of unpaid minimum wages to Plaintiff Peabody and the members of the MI Class;

DD.     An award of unpaid minimum wages to Plaintiff Woodworth and the members of the IL Class;

EE.     An award of unpaid overtime wages to Plaintiff Woodworth and the members of the IL OT Class;

FF.     An award of unauthorized deductions to Plaintiff Woodworth and the members of the IL IWPCA Class;

GG.     An award of unpaid minimum wages to Plaintiff Willis and the members of the NY Class;

HH.     An award of liquidated damages to Plaintiffs and members of the Classes;

II.     Pre-judgment interest and post-judgment interest;

JJ.     An award of costs and expenses of this action together with reasonable attorneys'
and expert fees to Plaintiffs and members of the Classes; and

KK.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury
trial as to all issues so triable.


Dated: November 20, 2019                    Respectfully submitted,

                                            **CARLSON LYNCH KILPELA &
                                            CARPENTER, LLP**

                                            By: /s/ Gary F. Lynch
                                            Gary F. Lynch (PA ID# 56887)
                                            1133 Penn Ave, 5th Floor
                                            Pittsburgh, PA 15222
                                            Telephone: 412-322-9243
                                            Facsimile: 412-231-0246
                                            Email: glynch@carlsonlynch.com

                                            **THE LAW OFFICES OF SIMON & SIMON**
                                            James L. Simon (OH No. 0089483)
                                            6000 Freedom Square Dr.
                                            Independence, OH 44131
                                            Telephone: 216- 525-8890
                                            Facsimile: 216-642-5814
                                            Email: jameslsimonlaw@yahoo.com

                                            *Co-Lead Counsel for Plaintiffs and the
                                            Proposed Classes*


                                            **THE LAW OFFICE OF MICHAEL L. FRADIN**
                                            Michael L. Fradin (*pro hac vice forthcoming*)

                                            8401 Crawford Avenue, Suite 104
                                            Skokie, Illinois 60076

78

Phone:  847-644-3425
Facsimile:  847-673-1228
mike@fradinlaw.com

**THE LAZZARO LAW FIRM, LLC**
Anthony J. Lazzaro (0077962)
Chastity L. Christy (0076977)
Lori M. Griffin (0085241)

The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com
lori@lazzarolawfirm.com

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III (*admitted pro hac vice*)
Robert J. Gray
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: gwells@cwglaw.com
        rgray@cwglaw.com

**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (*admitted pro hac vice*)
Christopher J. Bendau (*pro hac vice forthcoming*)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: 480-382-5176
Facsimile: 480-304-3805
Email: cliffordbendau@bendaulaw.com
        chris@bendaulaw.com

*Counsel for Plaintiffs and the
 Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

A true and complete copy of the forgoing was served upon all necessary parties through the Court's Electronic Case Filing system on this 20th day of November, 2019.

<u>/s/   *James L. Simon*          </u>