IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

**Tiffany Williams**, *et al*

                    Plaintiffs,

vs.

**Bob Evans Restaurants, LLC** *et al*

                    Defendants.

No. 2:18-cv-01353-MRH


**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CONSOLIDATED MASTER COMPLAINT**

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ........................................................................................................1

I.    Standard of Review ..........................................................................................3

II.    Defendants do not actually seek dismissal of Plaintiffs' FLSA non-tipped labor claims. The 80/20 Rule is the standard that applies to these claims. ................ 4

    A.    The FLSA and the Dual Jobs Regulation create undeniable limits on the application of the "tip credit." ..............................................5

    B.    The DOL and the Dual Jobs Regulation: 40 years of temporal limits on the tip credit. ......................................................................8

    C.    The 2018 Opinion Letter does not warrant deference. ................... 9

        1.    The 2018 Opinion Letter is not entitled to *Auer* deference. ...............11

            a.    The 2018 Opinion Letter is unreasonable. ...................11

            b.    The 2018 Opinion Letter does not reflect the DOL's fair and considered judgment. ......................................14

            c.    The 2018 Opinion Letter creates unfair surprise. .................16

        2.    The 2018 Opinion Letter is not entitled to Skidmore deference. ...17

    D.    The 80/20 Rule remains the best means of implementing the Dual Jobs regulation. ..................................................................20

    E.    Plaintiffs' Pennsylvania Non-Tipped PMWA Claim Is Actionable. ...........23

III.    Plaintiffs' FLSA and state tip credit claims should not be dismissed. ......................27

    A.    Plaintiffs plead plausible FLSA tip credit notice claims. ......................27

    B.    Ohio ..............................................................................31

    C.    Illinois ...........................................................................32

    D.    Pennsylvania, Maryland and Michigan. ..........................................33

IV.    Plaintiffs' Overtime Claims Are Plausible & Well-Pled. ...........................................33

i

A.    The Master Complaint states plausible FLSA overtime claims. .............34

B.    Defendants' declarations should be afforded no weight. ..................35

C.    Defendants' cited cases do not support dismissal. .....................36

D.    Plaintiffs plead plausible state overtime claims. .....................37

V.    Plaintiffs plead a plausible claim under the WPCL. ......................41

VI.   Plaintiffs' Illinois non-tipped labor claims (Count XV) should not
      be dismissed. .........................................................43

VII.  Plaintiffs' Ohio non-tipped labor claims (Count V) should not be dismissed. .........45

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling,*
324 U.S. 490 (1945) ................................................................................................ 22

*Acevedo v. Monsignor Donovan High Sch.,*
420 F.Supp.2d 337 (D.N.J. 2006) ........................................................................... 35

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S 608 (1946). ........................................................................................... 19, 20

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................... 3, 4, 5

*Auer v. Robbins,*
519 U.S. 452 (1997) ........................................................................................... 11, 12

*Barcellona v. Tiffany English Pub, Inc.,*
597 F.2d 464 (5th Cir. 1979) .................................................................................. 28

*Bayada Nurses, Inc. v. Com., Department of Labor and Industry,*
607 Pa. 527, 8 A.3d 866 (2010) .............................................................................. 24

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................. 3, 37

*Brandenburg v. Cousin Vinny's Pizza, LLC,*
No. 3:16-CV-516, 2018 WL 5800594 (S.D. Ohio Nov. 6, 2018) ...................... 46, 47

*Burtch v. Milberg Factors, Inc.,*
662 F.3d 212 (3d Cir. 2011) ................................................................................... 35

*Callaway v. DenOne LCC,* No. 1:18-cv-1981,
2019 WL 1090346 (N.D. Ohio Mar. 8, 2019) ......................................................... 15

*Camara v. Kenner,* No. 16-cv-7078,
2018 U.S. Dist. LEXIS 54039 (S.D.N.Y. Mar. 29, 2018) ....................................... 31

*Casco v. Ponzios RD, Inc.,*
No. 16-2084, 2019 U.S. Dist. LEXIS 65320 (D. N.J. April 17, 2019) .................... 30

*Chevalier v. Gen. Nutrition Ctrs., Inc.,*
2019 Pa. LEXIS 6521, 220 A.3d 1038 (S. Ct. Pa. 2019) ................................. 24, 25

iii

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ........................................................................ 10

*Condo v. Sysco Corp.*,
  1 F.3d 599 (7th Cir. 1993) ............................................................... 45

*Cope v Lets Eat Out, Inc.*,
  2019 WL 79367 (W.D. Missouri, January 2, 2019) ........................... 14

*Craig v. Landry's, Inc.*,
  No. 1:16-CV-277, 2016 WL 3406032 (S.D. Ohio June 21, 2016).......... 46

*Davis v. Abington Mem. Hosp.*,
  765 F.3d 236 (3d Cir. 2014) ............................................................ 36

*DeMarco v. Nw. Mem'l Healthcare*,
  2011 WL 3510896 (N.D. Ill. Aug. 10, 2011) .................................... 33

*DiFlavis v. Choice Hotels Int'l, Inc.*,
  No. 18-3914, 2019 U.S. Dist. LEXIS 58924, *17 (E.D. Pa. April 5, 2019) (denying motion.. 37

*Doe v. Delie*,
  257 F.3d 309 (3d Cir. 2001) ............................................................ 35

*Douglas v. Argo-Tech Corp.*,
  113 F.3d 67 (6th Cir. 1997) ....................................................... 31, 46

*Driver v. AppleIllinois, LLC*,
  890 F. Supp. 2d 1008 (N.D. Ill. 2012) ............................................. 24

*Ersy v. P.F. Chang's China Bistro, Inc.*,
  373 F. Supp. 3d 1205 (E.D. Ark. 2019).............................................. 14

*Espinoza v. Atlas R.R. Constr.*, LLC,
  657 Fed. Appx. 101 (3d Cir. 2016)................................................... 25

*Euceda v. Millwood, Inc.*, No. 3:12-0895,
  2013 U.S. Dist. LEXIS 120515, **12-13 (M.D. Pa. Aug. 26, 2013)........ 42

*Fast v. Applebee's Int'l, Inc.*,
  638 F.3d 872 (8th Cir. 2011) .................................................... passim

*Field v. DIRECTV LLC*, No. 14-4427,
  2015 U.S. Dist. LEXIS 193177 (E.D. Pa. Aug. 21, 2015) ................... 36

*Flores v. HMS Host. Corp.*,
    No. 8:18-cv-03312, 2019 WL 5454647 (D. Md. Oct. 23, 2019)................................... 13, 14, 18

*Forsatz v. Contributorship Cos.*, No. 05-2577 (JCL),
    2005 U.S. Dist. LEXIS 25253 (D.N.J. Oct. 19, 2005) ............................................. 35

*Frederick Hart & Co. v. Recordgraph Corp.*,
    169 F.2d 580 (3d Cir. 1948) ...................................................................................... 36

*Giacone v. Virtual Officeware, LLC,*
    642 Fed. Appx. 137 (3d Cir. Mar. 1, 2016) .............................................................. 42

*Haight v. Minchak,*
    146 Ohio St. 3d 481, 58 N.E.3d 1135 (2016) ............................................ 45, 46, 47

*Haynes v. Tru-Green Corp.*,
    507 N.E.2d 945 (Ill. App. 1987) ............................................................................. 45

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989) ................................................................................................. 30

*Honaker v. Wright Bros. Pizza*,
    No. 2:18-CV-1528, 2020 WL 134137 (S.D. Ohio Jan. 13, 2020)........................... 47

*Hudak v. Golubic*,
    2018-Ohio-4874 (8th App. Dist.) ............................................................................ 46

*Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) ...................................................................................... 3

*Irvine v. Destination Wild Dunes Management, Inc.*,
    106 F. Supp. 3d 729 ................................................................................................. 22

*Kerbes v. Raceway Assocs., LLC*,
    961 N.E.2d 865 (Ill. App. 2011) .............................................................................. 45

*Kisor v. Wilke*,
    139 S. Ct. 2400 (2019).......................................................... 10, 11, 14, 16, 17

*Lancaster v. PJM Interconnection, LLC*, No. 16-842,
    2016 U.S. Dist. LEXIS 108961 (E.D. Pa. Aug. 16, 2016) ...................................... 30

*Lugo v. Farmers Pride, Inc.*,
    2009 PA Super 5, 967 A.2d 963 (Sup. Ct. Pa. 2009) .............................................. 43

*Marsh v. J. Alexander's LLC*,
    905 F.3d 610 (9th Cir. 2018) ......................................................................... passim

v

*Martin v. Little, Brown and Company*,
  304 Pa. Super. 424, 450 A.2d 984 (1981) ............................................................ 42

*McCann v. Unum Provident*,
  907 F.3d 130 (3d Cir. 2018) .................................................................... 11, 20

*McGough v. Broadwing Communs., Inc.*,
  177 F. Supp. 2d 289 (D.N.J. 2001) ................................................................ 42

*Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*,
  312 F. Supp. 3d 439 (M.D. Pa. 2018) ............................................................. 38

*Mitchell v. Abercrombie & Fitch*, Co.,
  428 F. Supp.2d 725 (S.D. Ohio 2006) ............................................................. 46

*Nevada v. United States Dep't of Labor*,
  218 F.Supp.3d 520 (E.D. Tex. Nov. 22, 2016) .................................................. 15

*Osman v. Grube*,
  2017 WL 2908864 ................................................................................... 9

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*,
  497 F.3d 337 (3d. Cir. 2007) ....................................................................... 20

*Pellon v. Bus Representation International, Inc.*,
  528 F. Supp. 2d  (S.D. Fla. 2007) ............................................................. 18, 19

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
  998 F.2d 1192 (3d Cir. 1993) ...................................................................... 36

*Perez v. Prime Steak House Rest. Corp.*,
  939 F. Supp. 2d 132 (D. P.R. 2013) .............................................................. 30

*Perez v. Lorraine Enterprises, Inc.*
  769 F.3d 23 (1st Cir. 2014) ................................................................... 28, 29

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ........................................................... 3, 4, 37, 43

*Pinker v. Roche Holdings Ltd.*,
  292 F.3d 361 (3d Cir. 2002) ........................................................................ 3

*Porter v. AJ Auto. Grp., Inc.*,
  2015-Ohio-3769 (8th Dist. Sept. 17, 2015) .................................................... 47

*Presley v. City of Charlottesville*,
    464 F.3d 480 (4th Cir.2006) ................................................................................. 34

*Pritchard v. Dent Wizard Int'l. Corp.*,
    210 F.R.D. 591 (S.D. Ohio 2002) ......................................................................... 46

*Razak v. Uber Techs., Inc.*, No. 16-573,
    2016 U.S. Dist. LEXIS 139668, *22 (E.D. Pa. Oct. 7, 2016) ................................ 24

*Rapczynski v. DIRECTV, LLC*,
    2016 U.S. Dist. LEXIS 34833, *28 (M.D. Pa. Mar. 17, 2016) .............................. 42

*Reich v. Chez Robert, Inc.*,
    28 F.3d 401 (3d Cir. 1994) .................................................................................... 28

*Restaurant Law Center v. Dept. of Labor*,
    Case No. 1:18-cv-00567, 2018 WL 3374109 (W.D. Texas, July 6, 2018) ............ 15

*Rivera v. Mo's Fisherman Exch., Inc.*, No. 15-1427,
    2018 U.S. Dist. LEXIS 72857, *40 (D. Md. May 1, 2018) ............................... 2, 28

*Romero v. Top-Tier Colo., LLC*,
    849 F.3d 1281 (10th Cir. 2017) ............................................................................... 9

*Rui Tong v. Henderson Kitchen, Inc.*, No. No. 17-1073,
    2018 U.S. Dist. LEXIS 176294, *19 (E.D. Pa. Oct. 12, 2018) .............................. 43

*Sec'y United States Dep't of Labor v. Am. Future Sys. Inc.*,
    873 F.3d 420 (3d Cir. 2017) .................................................................................. 18

*Truman v. DeWolff, Boberg & Assocs.*, No. 07-01702,
    2009 U.S. Dist. LEXIS 57301 (W.D. Pa. July 7, 2009) ........................................ 25

*Urnikis-Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ................................................................................ 45

*Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956,
    2016 U.S. Dist. LEXIS 107230, *26 (E.D.N.Y. Aug. 11, 2016) ........................... 31

*Whenry v. Bd. of Comm'rs*, No. 2:14-cv-667,
    2015 U.S. Dist. LEXIS 13813, *4 (W.D. Pa. Feb. 5, 2015) .............................. 3, 4

*Wood v. Mid-America Management Corp.*,
    192 Fed.Appx. 378 (6th Cir. Aug. 1, 2006) .......................................................... 46

*Wright v. Ristorante La Buca Inc.*, No. 18-2207,
    2018 U.S. Dist. LEXIS 180518 (E.D. Pa. Oct. 22, 2018) ............................... 23, 26

*Zellagui v. MCD Pizza, Inc.*,
  59 F. Supp. 3d 712 (E.D. Pa. 2014) ........................................................ 23, 24, 26, 27

**Statutes**

29 USC § 203(m) ................................................................................................ passim

29 U.S.C. § 203(t) ...................................................................................................... 5

29 U.S.C. § 259 ........................................................................................................ 17

820 ILCS 105/4a ...................................................................................................... 41

820 ILCS 115/9 ........................................................................................................ 44

Article II, Section 34 of the Ohio Constitution .................................................... 47

Article II, Section 34a, Ohio Constitution ...................................................... 47, 48

O.R.C. 4111 ............................................................................................................. 46

O.R.C. 4111.03 ........................................................................................................ 40

Ohio Rev. Code Ann. § 4111.09 .............................................................................. 32

Ohio Rev. Code Ann. § 4111.14(B) ......................................................................... 46

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 3

Fed. R. Civ. P. 12(b) ............................................................................................... 35

Rule 8 ......................................................................................................................... 3

Rule 12(b)(6) ........................................................................................................... 36

**Regulations**

29 C.F.R. § 516.28 ............................................................................................... 7, 22

29 CFR § 516.28(3) .................................................................................................... 2

29 CFR § 516.28(4) .................................................................................................... 2

29 C.F.R. § 531.56(e) .................................................................................... 6

29 C.F.R. § 531.59(b) ................................................................................... 27

29 C.F.R. §§ 541.100 and 541.200 .............................................................. 15

29 C.F.R. § 552.6(b) ..................................................................................... 21

29 C.F.R. § 553.212(a) .................................................................................. 21

29 C.F.R. § 783.37 ........................................................................................ 21

29 C.F.R. § 786.100 ...................................................................................... 21

29 C.F.R. § 786.150 ...................................................................................... 21

29 C.F.R. § 786.200 ...................................................................................... 21

34 Pa. Code § 231.101(b) ............................................................................. 25

34 Pa. Code § 231.34 (4) .............................................................................. 26

As detailed herein, Defendants' Motion to Dismiss Portions of the Second Amended Consolidated Master Complaint (Doc. #139) ("Defendants' Motion"), should be denied. Plaintiffs are submitting their opposition to Defendant Bob Evans Farms, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Consolidated Master Complaint (Doc. #138) in a separate brief.

Rather than accept the well-pled factual allegations set forth in Plaintiffs' Second Amended Consolidated  Master Complaint ("Master Complaint"), Defendants Bob Evans Farms, Inc., Bob Evans Farms, LLC, and Bob Evans Restaurants, LLC, (collectively, "Defendants") assert that this Court should render factual findings, ignore established case law, engage in sweeping assumptions (in Defendants' favor no less) regarding the effectiveness of Defendants' purportedly policies, short-circuit the discovery process, and proceed directly to summary judgment – ruling in Defendants' favor.  Indeed, Defendants would have this Court ignore the plain language set forth in various statutes and regulations and, unlike any court before, announce a wholesale new proposition that any individual who receives $30 a month in tips can spend an unlimited amount of time performing non-tipped work provided they serve one table that month that gives them a $30 tip.  Such an absurd result should not be countenanced by this Court – much less at the Rule 12 stage.

Indeed, Defendants' own motion demonstrates the impropriety of their request.  For example, in one instance they ask this Court to deny Plaintiff McKeel's claim of improper tip credit notification – asserting that they provided her notice.  Then, in the same filing, Defendants proffer extrinsic evidence to disclaim Plaintiff McKeel's claim of overtime – and in doing so, effectively ask this Court to ignore the fact that the tip credit amount claimed changed.  As set forth below, it is black letter law in this Circuit that Defendants cannot claim a tip credit without first meeting all of the statutory requirements, including identifying both the cash amount paid by

the employer, the tip credit claimed by the employer, and any time the tip credit amount changes. *See* 29 CFR § 516.28(3). Thus, Defendants cannot have this Court ignore evidence that the tip credit changed (nor those allegations where Plaintiffs assert they did not make sufficient tips to justify the tip credit claimed) and simply assume that everyone received proper tip credit notification. *See, e.g., Rivera v. Mo's Fisherman Exch., Inc.*, No. 15-1427, 2018 U.S. Dist. LEXIS 72857, *40 (D. Md. May 1, 2018) *Rivera*, 2018 U.S. Dist. LEXIS 72857, **40-41 (granting summary judgment as to 16 plaintiffs who defendant claims their "tip credit notice sheets" were "apparently lost", holding "defendants cannot claim the tip credit for any hours worked prior to when defendants can prove the plaintiffs were given notice.").

More globally, Defendants proffer the hypothetical of a tipped employee who typically works 26 hours per week and then one week only works 24 hours, asserting that under Plaintiffs' paradigm the employee would have to be paid more for working less hours that week (due to the amount of non-tipped work they performed each week remaining constant). This nonsensical argument demonstrates Defendants' real motives – to pay employees as little as possible – and ignores the basic tenet of the FLSA that, absent an exemption not present here, all employees are to be paid at least $7.25 per hour – even tipped employees. *See* 29 USC § 203(m). Moreover, Defendants' analysis would have this Court remove 29 CFR § 516.28(4) from the regulations – as that regulation requires employers to track and record, for tipped employees, the "[h]ours worked each workday in any occupation in which" they do "not receive tips" and the "straight-time payment made by the employer for such hours." *Id.* In short, Defendants want this Court to sanction conduct that the law simply does not permit – paying their employees a subminimum wage for all hours worked (even if it is untipped). Respectfully, the Fair Labor Standards Act ("FLSA") is not read in such draconian fashion.

2

In short, Defendants' factual arguments are, at bottom, proof that discovery is required so as to ascertain precisely what Defendants advised both Plaintiffs and the other Tipped Employees of as well as determine what actions Defendants took to ensure compliance with applicable wage and hour laws. Nothing in Plaintiff's well-pled factual Master Complaint can allow any fair reader to reach any conclusion other than there is a "reasonable inference that the defendant is liable for the misconduct alleged." *Whenry v. Bd. of Comm'rs*, No. 2:14-cv-667, 2015 U.S. Dist. LEXIS 13813, *6 (W.D. Pa. Feb. 5, 2015). Accordingly, Defendants' motion to dismiss should be denied.

## I.      Standard of Review

The standard of review for a motion to dismiss is well established. In ruling on such a motion:

> a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)); (*see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, n.8, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does, however, "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662,678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555).

*Whenry v. Bd. of Comm'rs*, No. 2:14-cv-667, 2015 U.S. Dist. LEXIS 13813, *4 (W.D. Pa. Feb. 5, 2015).

"To comply with this general pleading standard, the complaint, construe[d] . . . in the light most favorable to the plaintiff, must contain enough factual matter (taken as true) to suggest the required element[s] of the claims asserted." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)(internal quotations omitted). Consequently, the Third Circuit has stressed that

3

this pleading standard "does not impose a probability requirement . . . but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotations omitted). Thus, in order "to survive a motion to dismiss, a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Whenry*, 2015 U.S. Dist. LEXIS 13813, at *6 (quoting *Iqbal*, 556 U.S. at 678).

As set forth herein, Plaintiffs unmistakably meet this pleading requirement.

## II. Defendants do not actually seek dismissal of Plaintiffs' FLSA non-tipped labor claims. The 80/20 Rule is the standard that applies to these claims.

Defendants can rewrite their arguments against Plaintiffs' non-tipped labor claims, but they cannot create merit where it does not exist.

While Defendants ostensibly have filed a motion to dismiss, they do not actually seek dismissal of Plaintiffs' non-tipped labor claims. Defendants bury in a footnote:

> To the extent to Plaintiffs' dual jobs claims (Counts II and III) are based on allegations (consistent with the 2018 Opinion Letter) that their non-tipped duties were not "performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties" (FLSA2018-27, at 3-4), Defendants are not moving for dismissal of those allegations. (ECF #139 at fn. 6).

Rather than seeking dismissal, Defendants spend great effort advocating for a standard for analyzing Plaintiffs' non-tipped labor claims which Defendants believe could be more advantageous for them than the longstanding 80/20 Rule. To do so, Defendants attempt to lead the Court down a long winding road which ignores the plain language and temporal restrictions contained in the Dual Jobs regulation, finds ambiguity in the Dual Jobs regulation when it is advantageous to Defendants, and ignores ambiguity in the Dual Jobs regulation when it is not.

Ultimately Defendants would have the Court defer to FLSA2018-27 (the "2018 Opinion Letter") or adopt an unexplained "totality of the circumstances" test.

As detailed below, the 80/20 Rule remains the best means of interpreting and applying the Dual Jobs regulation and the Department of Labor's recent 180 on the issue is not entitled to deference.

> **A.   The FLSA and the Dual Jobs Regulation create undeniable limits on the application of the "tip credit."**

Defendants' argument starts from the falsehood that the Field Operations Handbook and 2018 Opinion Letter forms "the crux" of Plaintiffs' non-tipped labor claims. The actual "crux" of Plaintiffs' claims is the FLSA and the Dual Jobs regulation.

29 U.S.C. § 203(m) allows an employer to pay a "tipped employee" only $2.13 in a cash wage if the employee's tips bring the employee's hourly rate up to a federal minimum wage of $7.25 or more. 29 U.S.C. § 203(m). This is known as taking a "tip credit." The tip credit is only available as to wages of tipped employees. *Id*. The FLSA defines a "tipped employee" as a person "**engaged in** an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added). "The tip credit does not apply to just any employee who ever received a tip…an employee is a tipped employee if two things occur: 1) he is engaged in an occupation, and 2) the occupation is one in which he regularly and customarily receives at least $30 in tips per month." *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011) (citing 29 U.S.C. § 203(t)).

The threshold question is whether an employee is "engaged in" customarily tipped job duties. In 1967, the DOL promulgated regulations implementing the 1966 FLSA amendments seeking to clarify the meaning of a "tipped employee", including what constitutes an "occupation"

that "customarily and regularly receives tips."[1]  Those regulations detail limitations on the tip

credit employers could take in the context of a tipped employee who performs "dual jobs" – one

tipped and one not tipped – for the same employer. The "dual jobs" regulation provides:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter.  He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter, is a tipped employee only with respect to his employment as a waiter.  He is employed in two occupations, and no tip credit be taken for his hours of employment in his occupation of maintenance man.
>
> Such a situation is distinguishable from that of a waitress who spends **part of her time** cleaning and setting tables, toasting bread, making coffee and **occasionally** washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such **related** duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (emphasis added).

The dual jobs regulation recognizes that an employer may seek to use the same employee

in more than one role, and that this practice may prohibit the employer from using the tip credit

based on the types and amounts of work performed. In contemplating scenarios where it may still

be permissible to take the tip credit, the dual jobs regulation contains three important qualifiers:

(1) related; (2) occasionally and (3) part of the time.

---

[1] *See also* S. Rep. No. 93-690, 93rd Cong., 2d Sess. (Feb 22, 1974) at 42 "[T]he tipped employee should have stronger protection to ensure the fair operation of [the tip credit] provision."  The Committee found serious and troubling the "question as to whether the employer should benefit from tips" by paying employees "less than the basic minimum wage."

6

If permissibly claimed job duties must be **related** to the tip producing job duties for the tip credit to be permitted, then any job duties that are **unrelated** to the tip producing job duties may not be subject to the tip credit.  As it relates to servers specifically, **related** tasks such as "cleaning and setting tables, toasting bread, making coffee" and "washing dishes or glasses" may be subject to the tip credit only if they are performed **part of the time** or **occasionally.**  Indeed, as a practical statement, there must be a temporal limitation on the amount of non-tipped work a tipped employee can do.  Otherwise, an employer could ostensibly pay an individual using a tip credit ($2.13 per hour under federal law) and have them work Monday through Thursday 8 hours per day rolling silverware or washing dishes provided they had them wait on tables Friday.  Plainly, such a result files in clear contravention of the FLSA.  Indeed, the FLSA's regulations themselves denote that an employer must record time spent by an employee working in an occupation in which they do not receive tips.  *See, e.g.* 29 C.F.R. § 516.28.

Consequently, the dual jobs regulation prescribes both a qualitative and quantitative analysis. The relevant questions are (1) whether Defendants required servers to perform job duties unrelated to their tipped occupations; and (2) whether Defendants required servers to perform related tasks more than occasionally or part of the time.  Courts have granted *Chevron* deference to the dual jobs regulation as a useful way of prescribing when a tip credit may or may not be taken.  *See e.g. Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011); *see also Marsh*, 905 F.3d at 621 (9th Cir. 2018). Defendant's Motion does not deny that the dual jobs regulation is entitled to *Chevron* deference by this Court. Instead, Defendants ask the Court to ignore or pervert the terms "related", "part of the time", and "occasionally" contained within the Dual Jobs Regulations.

**B.    The DOL and the Dual Jobs Regulation: 40 years of temporal limits on the tip credit.**

Following the amendments to FLSA in 1966, and the promulgation of the Dual Jobs regulation in 1967, the DOL next spoke on the topic of applying the tip credit to non-tipped labor in 1979. *See* WHD Opinion Letter FLSA-895 (Aug. 8, 1979) ("1979 Opinion Letter"). The 1979 Opinion Letter confronted a restaurant which used its servers to prepare vegetables for the salad bar and the DOL concluded "since it is our opinion that salad preparation activities are essentially the activities performed by chefs, no tip credit may be taken for the time spent preparing vegetables for the salad bar." *Id*. The DOL's next Opinion Letter was issued in 1980. WHD Opinion Letter WH-502, 1980 WL 141336 (Mar. 28, 1980) ("1980 Opinion Letter"). The 1980 Opinion Letter addressed a situation in which servers "clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset tables (including filling cheese, salt and pepper shakers) and vacuum the dining room carpet." Adhering to the language of the Dual Jobs regulation, the 1980 Opinion Letter clarified that the tip credit can be taken for such "related" duties but suggested "that the employer would not be permitted to take the tip credit if 'specific employees were **routinely** assigned, for example, maintenance-type work such as floor vacuuming." *Id.* (emphasis added). The DOL again spoke on these issues in 1985 when it (1) reiterated the 1979 Opinion Letter's conclusion that no tip credit may be taken for time spent in preparing vegetables for the salad bar and (2) elaborated on the 1980 Opinion Letter in concluding that imposing the tip credit would be impermissible if tipped employees spend 30% to 40% of their workday performing maintenance and preparatory activities such as setting tables and stocking supplies. *See* WHD Opinion Letter FLSA-854, 1985 WL 1259240 (Dec. 20, 1985).

In 1988, the DOL "distilled and refined its existing guidance interpreting the dual jobs regulation in the Field Operations Handbook ("FOH"). The DOL reaffirmed that no tip credit may

be taken for time spent on tasks **unrelated** to tip producing job duties, and that no tip credit is permitted for an employee performing related tasks more than "part of the time" or "occasionally." The DOL built on the1985 Opinion Letter, establishing that twenty percent is the temporal limit meant by "part of the time" or "occasional" as it pertains to **related** tasks, thus establishing the "80/20 Rule." The DOL reaffirmed its support of the 80/20 Rule in 2010 when it was challenged in the Eighth Circuit in *Fast*, and the DOL again reaffirmed its support of the 80/20 Rule in 2016 when it was challenged in the Ninth Circuit in *Marsh*.[2] *See also* Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiff-Appellant, *Romero v. Top-Tier Colo., LLC,* 849 F.3d 1281 (10th Cir. 2017) (No. 16-1057).

Circuit courts and district courts across the nation have employed the 80/20 Rule as a reasonable means of resolving the ambiguities contained in the tip credit provisions of the FLSA and the dual jobs regulation and being "consistent with nearly four decades of interpretive guidance and with the statute and the regulation itself." *Marsh*, 905 F.3d, at 625.

### C.    The 2018 Opinion Letter does not warrant deference.

Defendants have previously argued that the Dual Jobs regulation is unambiguous, rendering any further judicial reliance on DOL guidance improper. *See Carr v. Bob Evans Farms, Inc.*, Case No. 1:17-cv-01875JG, Doc. #29 at p. 14 (N.D. Ohio Nov. 27, 2017). Defendants have since changed their tune, asking this Court to rely solely upon the DOL's November 8, 2018 Opinion Letter. FLSA 2018-27 ("2018 Opinion Letter"). What remains constant is Defendants' desire to have the cost savings available to them through the tip credit unfettered by the 80/20 rule. As explained below, the 2018 Opinion Letter fails the prerequisites for deference.

---

[2] Ex. A, citing Sec'y of Labor's Amicus Br., *Fast v. Applebee's Int'l, Inc*., 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725, 10-1726) (filed Sept. 10, 2010).

Defendants concede that the Dual Jobs regulation itself is genuinely ambiguous. (ECF #139 at p. 11) *see also Osman v. Grube*, 2017 WL 2908864 at *3 (citing *Fast*, 638 F.3d at 877-81) "[t]o properly analyze whether an employee is employed in a dual job, it is essential to know what 'related duties' are and how much time is 'part of [the] time' or 'occasionally.' The failure to define these essential terms makes the regulation ambiguous."). The Court cannot interpret the Dual Jobs regulation as espoused in the 2018 Opinion Letter without first finding that the 2018 Opinion Letter meets all the requirements for deference as recently clarified by the Supreme Court in *Kisor v. Wilke*, 129 S. Ct. 2400 (2019). These requirements the 2018 Opinion Letter cannot meet.

"If a regulation is ambiguous, a court looks to whether the agency has advanced an interpretation of the regulation that warrants either *Auer* or *Skidmore* deference." *Belt v. P.F. Chang's China Bistro, Inc.* No. 18-3831, (E.D. Pa. Aug. 15, 2019) citing *Kisor, supra* at 2414 (attached hereto as Exhibit "B"). "The first kind of deference to an agency's interpretation of an ambiguous regulation—called *Auer* deference —is based on the presumption that 'Congress intended for courts to defer to agencies when they interpret their own ambiguous rules.'" *Id*. This presumption is not applicable to every agency interpretation, however, and *Auer* deference is unwarranted "when the reasons for that presumption do not apply, or countervailing reasons outweigh them." *Id*.  If a court determines that *Auer* deference is unwarranted, a court must consider whether to award *Skidmore* deference: "a measure of deference proportional to . . . all those factors which give [the interpretation] power to persuade." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012) (internal quotation marks omitted). Finally, if a court determines that the agency interpretation merits neither *Auer* nor *Skidmore* deference, a court must employ "traditional tools of interpretation" to determine the meaning of the regulation without

deference to the agency interpretation. *Christopher*, 567 U.S. at 161. In doing so, a court should consider "the ordinary and natural meaning of the regulatory language within its context and the [regulation's] overarching purpose." *McCann v. Unum Provident*, 907 F.3d 130, 144 (3d Cir. 2018).

### 1.    The 2018 Opinion Letter is not entitled to *Auer* deference.

To warrant deference from a court, *Auer* requires that an agency's interpretation of an ambiguous regulation be reasonable and "reflect fair and considered judgment" by the agency. *Belt, supra* citing *Kisor* 139 S. Ct. at 2416-18. An agency's interpretation of its own ambiguous regulation will not be granted deference if an "alternative reading is compelled by the regulation's plain language or by other indication of the [agency's] intent at the time of the regulation's promulgation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Additionally, courts are not to defer to guidance which creates "unfair surprise." *Kisor,* 139 St. Ct. at 2406.

### a.    The 2018 Opinion Letter is unreasonable.

The 2018 Opinion Letter cannot be granted deference because it is unreasonable. Since first issuing its Field Operations Handbook in 1988, the DOL has interpreted the temporal restrictions "part of the time" and "occasionally" contained within the Dual Jobs regulation as prohibiting the application of the tip credit when an employee spends more than 20% of his or her time on non-tipped tasks related to their tipped occupation.[3] But, the 2018 Opinion Letter purports to lift the time limitations on related non-tipped tasks entirely. FLSA2018-27 at *3 ("No limitation shall be placed on the amount of these [untipped related] duties that may be performed, whether or not they involve direct customer service…). At the same time, the 2018 Opinion Letter also requires that such related tasks be "performed contemporaneously with the duties involving direct

---

[3] Importantly, this Field Operations Handbook only amplified the distinctions made by the DOL since at least the 1979 Opinion Letter.

service to customers or for a reasonable time immediately before or after performing such direct-service duties." *Id*.

"It is therefore not clear what the DOL's current interpretation is: is there some limit on the amount of related and untipped work a tipped employee can perform before he or she become engaged in "dual jobs," or is there no limit?" *Belt, supra*. "This internal inconsistency alone undermines the reasonableness of the interpretation." *Id. see also O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-00280-JJH (N.D. Ohio, Jan. 14, 2020 attached hereto as "Exhibit C" ("At the outset, I note the tension between the New Guidance stating '[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the act are met, and the text of the dual jobs regulation.'") (citations omitted).

Defendants cannot reconcile this internal inconsistency. Instead, Defendants reason that the Dual Jobs regulation is ambiguous as to what tasks are "related" and what tasks are "unrelated" to a server's customer service duties, which would allow the Court to defer to O*NET's expansive list of related tasks. But, Defendants posit that the terms "part of the time" and "occasionally" contained in the Dual Jobs regulation are unambiguous, so that the Court need not be concerned by what the 2018 Opinion Letter means by requiring that such related activities be performed for a "reasonable" amount of time. Defendants submit that the terms "part of the time" and "occasionally" can plainly be read as not implying "any temporal limitation other than not being all of the time." (ECF #138 at p. 19). The unreasonableness of Defendants' position is self-evident. Under Defendants' construction of Dual Jobs, they can require their servers to perform all non-tipped tasks on O*NET's expansive list ***99% of the time*** while paying them as little as $2.13 an hour. "If, as the 2018 DOL Letter states, no quantitative limits exist on an employer's imposition

12

of 'related' but untipped duties, then employees could be deprived of the regular minimum wage even if only a fraction of the employee duties were tipped. This interpretation of the regulation flatly contradicts the purpose of the FLSA and thus cannot stand." *Flores v. HMS Host. Corp.*, No. 8:18-cv-03312, 2019 WL 5454647 (D. Md. Oct. 23, 2019).

Aside from being inconsistent on its face, the 2018 Opinion Letter's reliance on O*NET renders the guidance unreasonable. *See O'Neal v. Denn-Ohio, LLC, supra.* O*NET purportedly collects its data in a two-step process of (1) randomly sampling businesses expected to employ workers in the targeted occupations and (2) randomly sampling workers in those occupations within those businesses. https://www.onetcenter.org/dataCollection.html (last visited Jan. 23, 2020). The O*NET list of core and supplemental tasks as it pertains to servers is extensive, presently containing twenty-five subjects, many of which contain multiple sub-tasks. https://www.onetonline.org/link/summary/35-3031.00 (last visited Jan. 23, 2020). The 2018 Opinion Letter would effectively read this entire list, as O*NET may amend it from time to time, into the Dual Jobs regulation. Reading the O*NET list into the Dual Jobs regulation creates many inconsistencies with the DOL's prior interpretations of the regulation. For example, preparing salads, which the DOL has considered an unrelated job duty not subject to the tip credit since the 1979 and 1985 Opinion Letters would now be a related task according to O*NET.

"The dual jobs regulation was intended to prevent employees from evading the requirements of the FLSA by having tipped employees perform non-tipped work that would otherwise be performed by higher-paid, non-tipped employees." *O'Neal v. Denn-Ohio, LLC, supra.* "This purpose is undermined by relying on O*NET, which, at least in part, relies on data obtained by asking employees which tasks their employers are requiring them to perform." *Id.* "If employers assign tipped employees duties traditionally performed by non-tipped employees, the

O*NET definitions will reflect this and the protections established by the dual jobs regulation will erode." *Id.* "An interpretation of the dual jobs regulation that would allow employers to re-write the regulation without going through the normal rule-making process cannot be a reasonable one." *Id. see also Ersy v. P.F. Chang's China Bistro, Inc.,* 373 F. Supp. 3d 1205, 1209–11 (E.D. Ark. 2019) ("[M]ost importantly the guidance is unpersuasive because, as discussed above, it contradicts the regulation as it plainly reads and as *Fast* interpreted it."); *Flores v. HMS Host. Corp. supra* ("Because the 2018 DOL Letter is 'inconsistent with the regulation,' the Court cannot accord it *Auer* deference").

### b. The 2018 Opinion Letter does not reflect the DOL's fair and considered judgment.

Aside from lacking the reasonableness required by *Auer*, the 2018 Opinion Letter does not reflect the requisite "fair and considered judgment". This is true for several reasons. "First, the New Guidance represents a stark change from the approach the DOL adhered to for decades before its issuance." *O'Neal v. Denn-Ohio, LLC, supra citing Kisor*, 139 S.Ct. at 2418. "While it is true that the DOL once strayed from this approach in a 2009 opinion letter, that letter was issued by an outgoing administration and withdrawn immediately when the new administration took office months later." "The fact that the 2018 letter 'reproduces below the verbatim text' of that 2009 letter further counsels against deferring to it here." *Id.* It is therefore "implausible that the DOL gave its 'fair and considered judgment' to a question only to conclude that it had actually arrived at exactly the right answer nine years prior" *Id. see also Esry*, 373 F. Supp. 3d 1209–11 (calling the 2018 Opinion Letter an "about face").

Neither Defendants nor the DOL can explain why, after nearly 30 years, the DOL correctly spurned the 80/20 Rule in 2009, changed its mind in favor of the 80/20 Rule in *amicus* briefs for several years following, and then flip flopped back to the industry friendly guidance in the 2018

14

Opinion Letter. *See Cope v Lets Eat Out, Inc.*, 2019 WL 79367, at *5 (W.D. Missouri, January 2, 2019) ("[T]he DOL does not offer reasoning or evidence of any thorough consideration for reversing course.").

"The *Auer* doctrine stems from the commonsense idea that the agency, as drafter, is in the best position to know what the agency intended when it wrote a regulation." *Callaway v. DenOne LCC*, No. 1:18-cv-1981, 2019 WL 1090346, at *5–7 (N.D. Ohio Mar. 8, 2019). "[T]he chief rationale for the Auer deference is absent here" because, "it is unlikely that the drafters of the 1967 dual-jobs regulation played any role in the new guidance." *Id*. Instead, the 2018 Opinion Letter is simply a regurgitation of the 2009 Opinion Letter which "coincided with a change in administration strongly suggests that the change is a matter of policy, not an effort to determine the meaning of the regulation." *Id*.

The timing of 2018 Opinion Letter renders it impossible believe that it reflects the DOL's fair and considered judgment and "casts further doubt on the its interpretive integrity." *O'Neal v. Denn-Ohio, LLC, supra*. The 2018 Opinion Letter was a direct result of *Restaurant Law Center v. Dept. of Labor*, Case No. 1:18-cv-00567, 2018 WL 3374109 (W.D. Texas, July 6, 2018). Restaurant Law Center's "goal is to protect and advance the restaurant industry, including fighting overregulation at the federal, state and local level." https://restaurant.org/advocacy/legal/Law-Center/About (last visited Jan. 26, 2020). The self-described "private interest group" turned to the Western District Court of Texas to advance its agenda in challenging the DOL's authority to implement the 80/20 Rule specifically. *See also Nevada v. United States Dep't of Labor,* 218 F.Supp.3d 520, 533–34 (E.D. Tex. Nov. 22, 2016) (issuing a nationwide injunction preventing the DOL from implementing and enforcing amended overtime regulations 29 C.F.R. §§ 541.100 and 541.200). Four months after *Restaurant Law Center* was filed, the case was jointly dismissed with

a settlement that included an agreement by the DOL to reissue the 2009 Opinion Letter. "All of this makes the decision to reissue the 2009 opinion letter resemble a 'convenient litigating position' that is not entitled to *Auer* deference." *O'Neal v. Denn-Ohio, supra citing Kisor*, 139 S.Ct. at 2417.

**c.      The 2018 Opinion Letter creates unfair surprise.**

"[A] court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties. That disruption of expectations may occur when an agency substitutes one view of a rule for another. We have therefore only rarely given Auer deference to an agency construction 'conflict[ing] with a prior' one. *Kisor,* 139 St. Ct. at 2418 (internal citations omitted).

Defendants would have the 2018 Opinion Letter **retroactively** eliminate all temporal restrictions on non-tipped labor. This is particularly absurd in this case as the 2018 Opinion Letter was issued after this matter was filed. Moreover, the three-year statute of limitations in this case will reach back to 2015, when the DOL itself was still staunchly in favor of the 80/20 Rule.

Eliminating or substantially inhibiting Plaintiffs' cause of action by deferring to the 2018 Opinion Letter would no doubt create unfair surprise to Plaintiffs. Defendants attempt to explain this by stating that "unfair surprise" applies only to the "regulated parties" and that they, as the employers, are the only "regulated parties." This is nonsense. This case is rooted in wage laws which prescribe the minimum amounts of wages employees are permitted to be paid. Both employers and employees are regulated by the FLSA. In this context, the employees are the very party which the FLSA was enacted to protect. Obviously, deferring to "guidance" which retroactively eliminates these protections would create unfair surprise to Plaintiffs.

The language of the 2018 Opinion Letter itself does not purport to apply retroactively as Defendants would have it. It specifically states that it is an official statement of the Wage and Hour Division "[f]rom today forward… for the purposes of the Portal-to-Portal Act 29 U.S.C. § 259." 2018 Letter, at p.1. On its face, the 2018 Letter is not meant to be retroactive. § 259, entitled "Reliance in **future** on Administrative rulings, etc." (emphasis added), provides that an employer may establish an affirmative defense through good faith reliance on a prior agency ruling. § 259 further provides that the affirmative defense may still be valid even if the agency ruling is later "modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." The statutory framework, by its own language, prohibits retroactive application of policy modifications.

"Under *Auer*, as under *Chevron*, the agency's reading must fall 'within the bounds of reasonable interpretation.' And let there be no mistake: That is a requirement an agency can fail." *Kisor, supra* (internal citations omitted).  Purported "guidance" which (1) contains contradictory language on its face; (2) defers to the regulated industry itself to define and interpret the regulation; (3) directly contradicts decades of prior guidance; (4) contradicts the very purpose of the regulation and the remedial purpose of the FLSA itself; (5) creates unfair surprise to the protected parties and (6) was issued in direct response to litigation filed by a restaurant industry private interest group against the DOL, cannot be afforded *Auer* deference.

### 2.     The 2018 Opinion Letter is not entitled to *Skidmore* deference.

"*Skidmore* deference to the DOL's interpretation of the Dual Jobs regulation is unwarranted for many of the same reasons that *Auer* deference is inappropriate." *Belt v. P.F. Chang's China Bistro, Inc. supra* citing *Kisor*, 139 S. Ct. at 2424-25 (Roberts, C.J., concurring) (observing that "the cases in which *Auer* deference is warranted largely overlap with the cases in

which it be unreasonable for a court" to not award *Skidmore* deference). Courts should only afford *Skidmore* deference to an agency interpretation "to the extent it has the power to persuade." *Id*. (internal quotation marks omitted). In deciding whether to award *Skidmore* deference, courts apply "a sliding-scale test in which the level of weight afforded to an interpretation varies depending on [the] analysis of the enumerated factors," including "whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy." *Sec'y United States Dep't of Labor v. Am. Future Sys. Inc.*, 873 F.3d 420 (3d Cir. 2017) (internal quotation marks omitted).

As detailed above, "DOL's current interpretation was issued decades after the tip-credit provision was added to the FLSA, is unreasonable, and abandons decades of consistent agency policy without explanation." *Belt, supra* (It has no "power to persuade", and the Court will not afford it *Skidmore* deference.") *see also Denn-Ohio, surpa (*"I note again how the New Guidance flies in the face of decades of DOL interpretations and applications of the dual jobs regulation that used an entirely different analytical framework. . . . I join many of my trial court colleagues who have also found the New Guidance lacks the power to persuade.") citing *Flores v. HMS Host. Corp.*, No. 8:18-cv-03312, 2019 WL 5454647 (D. Md. Oct. 23, 2019) (collecting cases).

Even in a vacuum, the 2018 Opinion Letter as originally issued in 2009 lacks the power to persuade and it was quickly withdrawn for a reason.  "Although the Letter contends that the 20% guideline has been abandoned because of difficulties in administration, it fails to explain why the former bright-line rule is hopelessly confusing." *Id*. In fact, the 2018 Opinion Letter "overstate[s] the degree of 'confusion' engendered by the DOL Handbook's 20% guideline." *Id*. The 2018 Opinion Letter is premised upon a purported disagreement among courts in whether to accord the

20% guideline any weight. The Letter cites *Pellon v. Bus Representation International, Inc*., 528 F. Supp. 2d 1313 (S.D. Fla. 2007) aff'd 291 F. App'x 310 (11th Cir. 2008), as "rejecting" the 20% threshold finding it confusing and unworkable. "However, contrary to the DOL's recitation, *Pellon* never squarely rejected the 20% guideline and instead sidestepped the question by finding it 'unnecessary' to reach the validity of the 20% guideline on the particular facts of that case.'" *Belt, supra*. Thus, while *Pellon* may have criticized the 20% threshold as fraught with difficulty in implementation, the court did not reach the issue of whether to accord it deference. *See Pellon*, 528 F. Supp. at 1314. The reliance on *Pellon* in 2009 is one thing, but relying on *Pellon* in 2018 is particularly unpersuasive and "unsettling", because as of 2018, "a vast majority of courts had already adopted the 20% rule without difficulty." *Id.* ([W]here the DOL Letter announces confusion, this Court sees consensus.").

And while the DOL may have alluded to confusion regarding the application of the 80/20 Rule in the 2009 Opinion Letter, later in 2016, the DOL professed quite the opposite:

> [S]howing that an employee performs only tipped work or does not exceed the 20 percent tolerance for performing non-tipped, related work, far from being an arbitrary burden, is how an employer can properly justify claiming a tip credit rather than directly paying the full minimum wage. And such a showing should not be onerous because it is within the purview of the employer to both know and control the tasks of its employees. *See Anderson,* 328 U.S. at 687 ("[I]t is the employer … who is in position to know and produce the most probative facts concerning the nature and amount of work performed."). Furthermore, the 20 percent tolerance protects against employer manipulation of an ostensibly tipped employee's schedule to include duties, or significant time performing duties, for which an employer would normally directly pay the full minimum wage."

2016 DOL *Amicus* Brief, Ex. A at p. 26. The 2018 Letter does not attempt to explain how the purported confusion is somehow back.

Issuing guidance for the sake of "[c]larity and consistency may be laudable goals, but the pursuit of those ends does not give the DOL free reign to reimagine the meaning of a regulation it

wrote into law decades ago." *Denn-Ohio, supra.* " If the DOL believes the dual jobs regulation does not appropriately carry out the FLSA because it has been applied inconsistently by courts, it remains free to implement a new regulation through the appropriate procedures, but it may not circumvent those procedures by distorting the meaning of an existing regulation." *Id.*

> ### D.      The 80/20 Rule remains the best means of implementing the Dual Jobs regulation.

Ultimately, it must be determined whether Plaintiffs spent more than "**part of [their] time** cleaning and setting tables, toasting bread, making coffee and **occasionally** washing dishes or glasses." The 80/20 Rule was developed as a reasonable means of doing so and it has been in operation for decades.

To determine the best or most reasonable interpretation, courts "consider the ordinary and natural meaning of the regulatory language within its context and the [regulation's] overarching purpose." *McCann*, 907 F.3d at 144. Courts should not interpret a regulation in a way that "would be contrary to the fundamental purpose" of the underlying statute. *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3d. Cir. 2007).

Defendants' proposed interpretation of the Dual Jobs regulation, "that there is *no* limit on the amount of untipped related work an employee can perform—plainly contradicts the Dual Jobs regulation, because it does not reflect the regulation's temporal limits on untipped related work." *Belt, supra.* "Plaintiffs' proposed interpretation—that there is a twenty percent limit on time spent performing untipped related work—is reasonable." *Id. citing Marsh*, 905 F.3d at 622; *Fast*, 638 F.3d at 879.

The 80/20 Rule "is not only reasonable, but is also the best interpretation of the Dual Jobs regulation." *Id.* A twenty percent limit aligns with the ordinary meaning of the regulation. *Id.* "Occasionally" means "now and then, at times, sometimes; irregularly and infrequently." *Id. citing*

*Fast*, 638 F.3d at 879-80. Therefore, the ordinary meaning of the regulation suggests that an employer cannot take the tip credit for time an employee spends performing untipped related duties if such duties are performed more than infrequently. "Twenty percent is a reasonable interpretation of 'occasionally' or 'part of [the] time.'" *Id.* Defendants' interpretation, that "part of the time" means anything less than *all* of the time, is plainly unreasonable.

Applying a twenty percent limit to untipped related work is consistent with the DOL's routine use of a twenty percent threshold in analogous contexts. The DOL consistently uses "a 20 percent threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA." *Fast*, 628 F.3d at 881; *see also Marsh*, 905 F.3d at 629 (finding that the 80/20 Rule was "consistent with [the DOL's] treatment of other temporal limitations"). For example, a DOL regulation states that a seaman is employed as a seaman, and exempt from overtime under the FLSA, even if performs non-seaman work that "is not substantial in amount." 29 C.F.R. § 783.37. The regulation draws the line between "not-substantial" and "substantial" at twenty percent. *Id*. The DOL also consistently places a twenty percent limit on the amount of nonexempt work that many other types of exempt employees may perform. *See, e.g.*, 29 C.F.R. § 553.212(a) (stating that employees working in law enforcement are exempt under the FLSA as long as they perform nonexempt work for no more than twenty percent of the hours worked in a given workweek); 29 C.F.R. § 552.6(b) (stating that employees who provide companionship services are exempt even if they perform general household work for an amount of time that is no more than twenty percent of the hours worked); 29 C.F.R. § 786.100 (placing a twenty percent limit on nonexempt work performed by exempt switchboard operators); 29 C.F.R. 786.150 (placing a twenty percent limit on nonexempt work by exempt rail carriers); 29 C.F.R. 786.200 (placing a twenty percent limit on nonexempt work by exempt taxi drivers).

For years, both the DOL and courts across the country have adopted the 80/20 Rule as a reasonable means of implementing Dual Jobs. *See, e.g.*, *Marsh,* 905 F.3d at 630 (holding that a twenty percent limit on untipped related work "closely hews to the framework suggested by the dual jobs regulation"); *Fast*, 638 F.3d at 881 (finding that "[t]he 20 percent threshold . . . is a reasonable interpretation of the terms "part of [the] time" and occasionally" in the Dual Jobs regulation); *Denn-Ohio, supra* ("the majority of courts that have confronted this question have adhered to the twenty-percent rule previously advanced by the DOL. I join these courts and evaluate Plaintiffs' claims against that standard.").

Complying with the 80/20 Rule "should not be onerous because it is within the purview of the employer to both know and control the tasks of its employees." *Id.* "A quantitative measure of employees' time . . . [is] tremendously useful in evaluating whether employees are in fact employed in a tipped 'occupation.'" *Irvine*, 106 F. Supp. at 735. Employers are already required to keep records of the hours in which an employee receives tips, and the hours in which they do not—regardless of whether the Dual Jobs regulation applies. *See* 29 C.F.R. § 516.28. Once employees are spending more than twenty percent of their time performing untipped related work, "it is not impracticable for an employer to keep track of time spent on related tasks by requiring employees to clock in any time spent" performing untipped related work. *Marsh*, 905 F.3d at 631.

The 80/20 Rule does not inhibit teamwork as Defendants suggest. Maximizing corporate profits by having servers perform non-tipped labor for as little as $2.13 per hour in lieu of paying full minimum wage is not teamwork – it is unfair labor. Conversely, the 80/20 Rule is consistent with the Supreme Court's stated purpose of the FLSA which was "was designed to extend the frontiers of social progress by insuring to all our ablebodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493 (1945) (internal

quotation marks omitted). A "fair day's pay for a fair day's work" can only be guaranteed if employers' ability to take the tip credit is limited to when their employees are actually "engaged in a tipped occupation." *Belt, supra*. A twenty percent limit on untipped related work avoids the "possibility that employers could misuse [the tip credit provision] to withhold wages from dual job employees . . . who are titled 'servers' or 'bartenders,' but who function in actuality as bussers, janitors, and chefs at least part of the time . . . ." *Marsh*, 905 F.3d at 633.

Defendants would have the Court abandon all limits on applying the tip credit to non-tipped labor, or in the alternative, apply a "totality of the circumstances test." Defendants do not endeavor to explain how a "totality of the circumstances test" would apply in a Dual Jobs context. The standard itself would be entirely subjective. And, what happens if the "totality of the circumstances" suggest that an employer has applied the tip credit to non-tipped labor for more than a reasonable amount of time? How would the trier of fact calculate damages? The 80/20 Rule provides these answers.

The 80/20 Rule was a reasonable means of implementing the Dual Jobs regulation when it was refined in the Field Operation Handbook in 1988. The 80/20 Rule did not suddenly go bad in 2009, turn good again almost immediately thereafter, only to go bad again in 2018. The 80/20 Rule remains the best means of implementing the Dual Jobs regulation. Defendants' desire to avoid liability and labor costs cannot surmount this reality.

### E. Plaintiffs' Pennsylvania Non-Tipped PMWA Claim Is Actionable.

Defendants assert that Plaintiffs' Fifth Claim for Relief must be dismissed because, according to Defendants, Pennsylvania law does not require Tipped Employees to be paid the full minimum wage when performing non-tip generating work. With all due respect to Defendants, they are plainly wrong and at least two sister courts in this district have held that tipped employees

must be paid the full minimum wage for time spent performing non-tip generating work. *See Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 715 (E.D. Pa. 2014); *Wright v. Ristorante La Buca Inc.*, No. 18-2207, 2018 U.S. Dist. LEXIS 180518, *22 (E.D. Pa. Oct. 22, 2018).[4]  Indeed, as the *Zellagui* court aptly noted, "[w]hen employees perform both tipped and non-tipped work, employers must pay the full minimum wage for all hours that their employees spend performing non-tipped tasks." *Zellagui*, 59 F. Supp. 3d at 715 (citing *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1031, 1037 (N.D. Ill. 2012)).

Plainly, "the PMWA substantially parallels the FLSA" in many regards and, consequently, courts are generally "directed to interpretation of the FLSA when analyzing claims under the PMWA." *Razak v. Uber Techs., Inc.*, No. 16-573, 2016 U.S. Dist. LEXIS 139668, *22 (E.D. Pa. Oct. 7, 2016) (internal quotation omitted).  However, there are important distinctions between the two statutes.  As the Pennsylvania Supreme Court aptly noted, "the federal statute establishes only a national floor under which wage protections cannot drop, but more generous protections provided by a state are not precluded." *Bayada Nurses, Inc. v. Commonwealth, Dept. of Labor & Indus.*, 607 Pa. 527, 8 A.3d 866, 883 (Pa. 2010).  Thus, differences between the two statutes cannot be ignored.

For example, in *Bayada Nurses,* the Supreme Court of Pennsylvania refused to interpret the PMWA's "domestic services" exemption in accordance with the FLSA's exemption because the exemptions were "materially distinct" and did not parallel one another.  8 A.3d at 882.  Thus, the precise language of the two statutes matters when determining whether they should be read in

---

[4] Notably absent from Defendants argument is any recognition of the fact that the PMWA's "minimum wage and overtime requirements have been interpreted more narrowly than the parallel exemptions contained in the FLSA." *Ford v. Lehigh Valley Rest. Grp., Inc.*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 11, *30 (Com. Pleas Ct. Lakawanna Cty. Apr. 24, 2015) (citing *Bayada Nurses, Inc. v. Com., Department of Labor and Industry*, 607 Pa. 527, 555-556, 8 A.3d 866, 882-882 (2010)).

accordance with one another.  *See, e.g., Chevalier v. Gen. Nutrition Ctrs., Inc.,* 2019 Pa. LEXIS

6521, 220 A.3d 1038 (S. Ct. Pa. 2019) (Pennsylvania Supreme Court affirming lower court's

holding that the FLSA's fluctuating work week has no applicability to the PMWA's calculation of

overtime due to statutory differences); *Truman v. DeWolff, Boberg & Assocs.*, No. 07-01702, 2009

U.S. Dist. LEXIS 57301, **5-6 (W.D. Pa. July 7, 2009) (refusing to read into the PMWA the

FLSA's explicit exemption for work performed outside of the United States).  The Third Circuit

itself has noted the differences between the two statutes.  *See, e.g., Espinoza v. Atlas R.R. Constr.*,

LLC, 657 Fed. Appx. 101, 105 (3d Cir. 2016) (in deciding whether travel time is compensable

under PMWA, refusing to reference the FLSA in analysis due to PMWA including the term

"duties" which was not found in the related FLSA provision).[5]  In short, the "law under the FLSA

and the [PMWA] are substantively different . . ." *Bonds*, 2017 Pa. Dist. & Cnty. Dec. LEXIS

10622, *10 (denying motion for summary judgment as to PMWA claim even though federal court

disposed of related FLSA claim).  Whether a Tipped Employee must be paid the full minimum

wage when performing non-tipped work is one such substantive difference.

Unlike the FLSA, the PMWA states that "[i]n determining the ***hourly wage*** an employer

is required to pay a tipped employe[e] . . ." 43 P.S. Labor § 333.103(d) (emphasis added).  Further,

Pennsylvania law also limits when a tip credit can be claimed, specifically stating "[t]he minimum

wage credit for tipped employees is $2.83 per hour" subject to, *inter alia*, "the following

conditions: (1) An employer shall pay the difference when the employee's tips plus the credit for

---

[5] As one Pennsylvania state court aptly noted, "[s]ince Pennsylvania has not fully adopted the
provisions of the FLSA, and since Pennsylvania law, in general, offers stronger protections for
employees . . . it would be inappropriate to see the [PMWA] and FLSA as interchangeable." *Bonds
v. Gms Mine Repair & Maint.*, No. 2015-6310, 2017 Pa. Dist. & Cnty. Dec. LEXIS 10622, *10
(Dec. 12, 2017).  Indeed, the PMWA embodies a "strong public policy favoring employee
protection" as the Commonwealth's General Assembly "did not mince words in stating" the
purpose of the PMWA was to "increase employee wages."  *Chevalier*, 2019 Pa. LEXIS 6521,
**39, 41.

tipped employees does not meet" the $7.25 per hour requirement.  34 Pa. Code § 231.101(b).  Thus, under Pennsylvania law, a tip credit *cannot be claimed* when a tipped employee works and does not receive tips for that hour.

Indeed, Pennsylvania law clearly requires an employer to maintain payroll records detailing "Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours." 34 Pa. Code § 231.34 (4).  While Defendants assert that there is no private right of action under this administrative code provision, they fail to recognize that this administrative provision makes plain the property of Plaintiffs' claim – that Tipped Employees were not paid in accordance with the PMWA -- including for time spent working at Pennsylvania locations where they performed non-tip generating work.  Such a claim is plainly actionable.  *See, e.g., Wright*, 2018 U.S. Dist. LEXIS 180518 at *22 (granting summary judgment for plaintiff regarding PMWA claim where plaintiff alleges he was paid $3.00 per hour for spent performing "set-up and breakdown work for which customers did not tip him").  As the *Zellagui* court made plain, the PMWA is violated when a tipped employee performs non-tipped generating work and is not paid the full minimum wage for such time.  *Zellagui*, 59 F. Supp. 3d at 715.[6]

Thus, Defendants' Motion is not in accord with applicable law in directly analogous cases nor does it account for the specific statutory language differences between the definition of wages under 29 U.S.C. 203(m) and 43 P.S. Labor § 333.103(d).  As such, it should be denied as to this issue.

---

[6] In their motion, Defendants assert that this Court should accord *Wright* and *Zellagui* no weight as they were not properly decided.  Respectfully, Defendants are flat wrong as those two decisions align perfectly with the statutory requirements of the PMWA and recordkeeping requirements.  To hold otherwise would render the recordkeeping language superfluous.

**III.**     **Plaintiffs' FLSA and state tip credit claims should not be dismissed.**

Defendants seek to dismiss Plaintiffs' First, Fifth, Seventh, Twelfth, Fourteenth, and Fifteenth Claims, which are predicated in part on violating the FLSA and state tip credit notification rules. In doing so, Defendants ask the Court to ignore established legal principles and weigh the merits of these claims based upon their unilateral submission of extrinsic evidence and without Plaintiffs being afforded the opportunity for discovery.

**A.**     **Plaintiffs plead plausible FLSA tip credit notice claims.**

The prerequisites to taking a tip credit from the wages of an employee, which are set forth in 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b), state that "an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act." Under federal law, in order to be entitled to claim a tip credit against an employee's wages, the employer must inform the employee (1) the amount of cash wage that is to be paid to the tipped employee by the employer; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. *Id.*

Defendants contend that Plaintiffs' allegations that they do not ever recall being notified by Bob Evans that it intended to take a 'tip credit,' nor the amount, is "insufficient and immaterial," and that Plaintiffs' lack of memory is not a sufficient factual allegation to support their claim." *Id..* Conspicuously, Defendants also ignore Plaintiffs' specific allegation that "Defendants had a

willful policy and practice of failing to satisfy the notification requirements in order for Defendants to claim the tip credit." (*Id*. at 34-35). Defendants would have the Court hold Plaintiffs to an impossible standard. Defendants argue that Plaintiffs have failed to plead factual allegations of something Plaintiffs say didn't happen – Defendants satisfying the tip notification requirements. Defendants' claims that Plaintiffs have failed to adequately plead that Defendants failed to satisfy the tip credit notification requirements are simply belied by the plain language of Plaintiffs' Master Complaint.   Moreover, it is *Defendants* that bear the burden to prove that *they* satisfied the notification requirements. *See Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)("if the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage"); *see also Rivera v. Mo's Fisherman Exch., Inc.*, No. 15-1427, 2018 U.S. Dist. LEXIS 72857, *40 (D. Md. May 1, 2018) ("It is clear that defendants bear the burden of demonstrating compliance with the FLSA's tip credit provision.").[7] Given Plaintiffs' fulsome allegations, the question of notification requirement satisfaction is one that simply is not amenable to answering without discovery.

Defendants case aside Plaintiffs' allegations that Defendants failed to satisfy the tip credit requirements due to numerous instances where they earned little to no tips. (*See* Master Complaint at ¶¶ 147, 169, 223-225). As the statute makes plain, Defendants may only avail themselves of the tip credit if their Tipped Employees earned enough in tips to at least equal the amount of the tip credit claimed by Defendants and that the cash wage plus tips earned equal minimum wage.  *See* 29 U.S.C. § 203(m).  Thus, if Defendants claimed a tip credit in excess of the amount of tips earned

---

[7] *See also Perez*, 769 F.3d at 27 ("It is the employer's burden to show that it has satisfied all the requirements for tip-credit eligibility.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467-68 (5th Cir. 1979)).

by Plaintiffs, then they violated the tip credit notification requirements.  Accordingly, Plaintiffs'
First, Fifth, Seventh, Twelfth, Fourteenth, and Fifteenth Claims must not be dismissed.

Much of Defendants' argument is not a legal argument, and is instead predicated on the
introducing extrinsic facts to refute the specific allegations of Plaintiffs' Master Complaint.
Defendants rely upon tip credit notices signed by limited number of the Plaintiffs. (ECF# 139 at
pp. 36-37).  But, whether a "tip credit notice" satisfies Defendants' tip notification requirements
is a matter of law, and not an issue that can be decided on a 12(b)(6) motion.  Additionally,
Defendants cite to declarations and portions of an employee handbook that were attached as
exhibits to Defendants' Motion. (*Id*. at 36-39).  Consideration of such extrinsic evidence is not
proper for a 12(b)(6) motion.

To the extent the Court considers these additional facts, Defendants cannot rely on their
employee handbooks to satisfy the tip credit notification requirements as that document does not
provide detail as to (i) the amount of cash wages actually paid by the employer or (ii) the amount
of tip credit claimed by Defendants. (*See* ECF# 78-1, p.23).[8]  Further, there appears to be some
contradiction between the employee handbook and the tip credit notice forms. *Compare* ECF# 78-
1, p.23 (employee handbook stating that "[i]f an employee in a tipped position does not report
sufficient tips . . . they will be paid at least minimum wage by the Company") *with* ECF# 78-1,
p.45 (Plaintiff Walker's Pennsylvania Tip Credit Notice stating that "[i]f you receive less than the
amount of the tip credit listed above, please notify your General Manager").[9]

---

[8] For the Court's convenience, the page reference is to the ECF page number. The document's
internal page number is 17.

[9] Notably, there is no indication as to what a "tip credit" is in the Tip Credit Notice.  Accordingly,
it is plainly an issue of fact as to what this language means.

Hundreds of servers have already joined this action and thousands more who should be given the opportunity to join should this Court order dissemination of notice pursuant to *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Defendants would have the Court foreclose the issue of whether they have provided legally required notice of the tip credit based on a relatively miniscule amount of written notices and a handbook. How many Plaintiffs actually received such notices and/or handbooks and whether the requirements of Section 203(m) of the FLSA have been met are issues to be analyzed at summary judgment – not on the pleadings. *See, e.g.*, *Casco v. Ponzios RD, Inc.*, No. 16-2084, 2019 U.S. Dist. LEXIS 65320, **13-14 (D. N.J. April 17, 2019) (in granting summary judgment for plaintiffs, finding defendant has not shown it met tip credit notification requirements where the notification form defendant utilized failed to tell employees that "Defendant could not claim a tip credit over and above the tip amounts they actually received.").

It is important to note that courts typically do not grant motions to dismiss attacking FLSA claims. *See, e.g., Lancaster v. PJM Interconnection, LLC,* No. 16-842, 2016 U.S. Dist. LEXIS 108961, *15 (E.D. Pa. Aug. 16, 2016) (in FLSA case, denying motion to dismiss as defendants' arguments "conflict[ed] not only with the Third Circuit's mandate for 'liberal interpretation' of FLSA complaints, but also Supreme Court precedent."). This is especially true regarding claims of failure to provide tip credit notification. *See, e.g., Perez v. Prime Steak House Rest. Corp.*, 939 F. Supp. 2d 132, 138 (D. P.R. 2013) ("A reasonable inference can be made from the complaint that defendant . . . failed to provide the type of notice required by section 203(m)"). This is even when defendant proffers purported tip credit notification forms. *Id.,* at **137-138 (rejecting defendant's assertion that form was sufficient at the motion to dismiss stage).[10]   Indeed, courts

---

[10] Importantly, the court also noted that at the motion to dismiss stage it is not proper to consider the acknowledgments submitted by defendants in support of their motion. *Perez*, 939 F. Supp. 2d

have refused to grant summary judgment in analogous cases where, notwithstanding a purportedly

sufficient tip notification form, plaintiffs have raised factual issues that undermine the propriety of

the tip credit claimed.  *See, e.g., Camara v. Kenner,* No. 16-cv-7078, 2018 U.S. Dist. LEXIS 54039

*28-34 (S.D.N.Y. Mar. 29, 2018) (rejecting defendants' motion for summary judgment as to tip

notification claim where plaintiffs alleged being required to spend more than 20% of their time

performing non-tip generating work and dispute whether signatures on tip notification forms are

genuine).  In the instant action, Plaintiffs, in addition to spending greater than 20% of their time

performing non-tip generating work, have also alleged that Defendants took a tip credit in excess

of the amount of tips earned. (Master Complaint at ¶¶ 147, 169, 223-225).

## B.     Ohio.

Regarding Plaintiff Bailey's Ohio state law tip credit notification claim, Defendants

contend that Ohio has no notification requirement for employers taking a tip credit.  Defendants

reason that Plaintiff's citation to *Douglas v. Argo-Tech Corp.*, 113 F.3d 67 (6th Cir. 1997), for the

proposition that Ohio's wage and hour law should be interpreted in accordance with the FLSA is

inapposite.  This is plainly inaccurate, and is an attempt to complicate allegations by Plaintiff that

are actually straightforward.

The Ohio MFWSA requires, in pertinent part, that:

> Every employer subject to sections 4111.01 to 4111.17 of the
> Revised Code, or to any rules issued thereunder, shall keep a
> summary of the sections, approved by the director of commerce, and
> copies of any applicable rules issued thereunder, or a summary of
> the rules, posted in a conspicuous and accessible place in or about
> the premises wherein any person subject thereto is employed.

---

132, 137, FN 6. Further, to the extent Defendants assert that there was oral notification of the tip
credit requirements, that argument is woefully premature. *See, e.g., Velez v. 111 Atlas Rest. Corp.*,
No. 14 CV 6956, 2016 U.S. Dist. LEXIS 107230, *26 (E.D.N.Y. Aug. 11, 2016) ("The adequacy
of any oral notice defendants provided to their employees under the FLSA is a question of fact
more properly reserved for the jury.").

Ohio Rev. Code Ann. § 4111.09

In the Master Complaint, Plaintiffs allege that "Ohio mandates a higher minimum cash wage and requires employers to pay a tip-wage of at least 50% of the applicable minimum wage per hour," and that "as such, an employer cannot be said to have complied with Ohio's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as those posters do not explicitly identify the tip credit amount in Ohio (as it differs from the FLSA tip credit amount)."  (*See* Master Complaint at ¶¶ 176 & 177).  Plaintiffs' allegation is that Ohio's minimum wage statute does, in fact, have notification requirements that parallel the FLSA's, and that failing to adequately notify employees of the tip credit rules is, in and of itself, a violation of the MFWSA.  That much cannot be in dispute, based upon the plain language of Ohio Rev. Code Ann. § 4111.09, as quoted above.  Therefore, even if Defendants are correct that the *Douglas* relates only to those sections of the MFWSA that "parallel" the FLSA, then the guidance of that case is still applicable here.  The sections of the FLSA and the applicable Ohio statute are not required to mirror each other, or to be identical to one another.  They need only be "parallels" of one another, as these clearly are.  Both statutes require notice to employees of the tip credit rules and requirements each law provides for.  Plaintiff alleges that notice of the requirements of the MFWSA was absent, as was notice of the tip credit requirements of the FLSA.

### C.     Illinois.

Similarly, with respect to Defendants' arguments regarding the applicable Illinois statute, Defendants erroneously contend that Plaintiff Woodworth has not sufficiently alleged a specific violation of the IMWL.  Here again, Defendants seek to "muddy the water" making a simple allegation more complex, in an effort to buttress an even more complex argument by Defendants.  However, contrary to Defendants' assertions, Plaintiff has not sought to supplant the IMWL with

the requirements of the FLSA.  Rather, Plaintiff asserts that the "elements of an IMWL overtime claim parallel those required to sustain a claim under FLSA. See *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510896, at *3 (N.D. Ill. Aug. 10, 2011) (citing state and federal authority for the proposition that the IMWL and FLSA overtime provisions are coextensive)."  (*See* Master Complaint at ¶ 200).  Plaintiff further alleges that "Defendants violated the IMWL when they: (i) failed to provide proper tip credit notification…" (*Id*. at ¶ 18).  Defendant seems to base its argument on the fact that Plaintiff's don't extensively discuss the poster or other physical form of notice that would comply with the IMWL.  Here again, Defendants suggest that Plaintiff's allegations are left wanting because he does not provide the specific details of a notice that he contends Defendants *did not* provide.  Plaintiff cannot allege such things "in the negative." Plaintiff very clearly alleges that Defendants have failed to comply with *both* the notice requirements of the FLSA and the IMWL.  These allegations are sufficient to maintain claims under each respective statute.

### D.      Pennsylvania, Maryland and Michigan.

With respect to Plaintiffs' state law tip credit claims involving tip credit notification under certain state laws, Pennsylvania (Count VII), Maryland (Count XII), and Michigan (Count XIV), Defendants acknowledge that these claims track with Plaintiffs' FLSA tip credit notification claims, and therefore incorporate their arguments in opposition to those claims.  Plaintiffs, in turn, incorporate their responsive argument, as set forth above.

## IV.    Plaintiffs' Overtime Claims Are Plausible & Well-Pled.

In seeking to dismiss Plaintiffs' overtime claims (Counts IV, VI, IX, and XVII), Defendants argument is solely premised on attacking the merits of Plaintiffs' claims. (Defs. Motion at 44-48).  Just like Defendants' factual arguments challenging tip credit notification, Defendants

factual arguments as to why Plaintiffs' overtime claims should be dismissed are similarly inappropriate at this nascent stage of the litigation. "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006) (internal quotation marks and alterations omitted).

### A.  The Master Complaint states plausible FLSA overtime claims.

The Master Complaint adequately pleads with specificity overtime claims pursuant to the FLSA.  In the Master Complaint, Plaintiffs detail paychecks received by Plaintiffs McKeel and Caperna and allege that the paychecks reflect an incorrect overtime rate. (*See* Master Complaint at ¶¶ 207-218). Defendants ignore the plain language of these allegations.  Pointing to a paycheck received by Plaintiff McKeel, Plaintiffs allege that Defendants only paid "overtime based on the tipped job code when Tipped Employees performed work under both a tipped job code and a non-tipped job code." (Master Complaint at ¶ 213).  Plaintiffs further offer a straightforward computation substantiating their overtime allegation and specifying the specific dollar amount of the alleged unpaid overtime. (*Id*. at FN 14).  In addition, Plaintiffs cite to a paycheck received by Plaintiff Caperna and specifically allege "rather than pay the appropriate amount of $5.76 per hour worked over 40, Defendants only paid Plaintiff Caperna $5.2696 per hour of overtime worked." (*Id*. at ¶ 217).  Thus, it cannot be credibly argued that Plaintiffs do not adequately plead a claim for overtime.  Rather than offer illusory conclusions or simply cite the legal requirements for an overtime claim, Plaintiffs cited to specific paychecks and alleged actual dollar amounts.

Faced with the black and white, detailed allegations of Plaintiffs' Master Complaint, Defendants go beyond the standards of a motion to dismiss and attack the merits of Plaintiffs' claims and improperly seeking to introduce evidence beyond the pleadings. Specifically,

34

Defendants cite to the Declarations of JP McCarthy and Adam Rocco to argue that Plaintiffs McKeel and Caperna were paid correctly. (*See* Defs. Motion at 44, 46-47).  Defendants attach and cite to a Department of Labor Handbook to further argue that Plaintiffs McKeel and Caperna were paid the proper overtime rate. (*Id.* at 45).  Lastly, Defendants argue that a "glitch resulted in an incorrect overtime rate being listed on Caperna pay stub." (*Id.* at 47).  None of these arguments however demonstrate that the pleaded facts of the Master Complaint fail to state a plausible claim for relief.

Defendants' arguments merely refute the factual accuracy of Plaintiffs' claims.  Arguments that merely attack the factual accuracy of Plaintiffs' allegations, however, are "improper arguments to support a motion to dismiss under Rule 12(b)(6)." *Acevedo v. Monsignor Donovan High Sch.*, 420 F.Supp.2d 337, 342 (D.N.J. 2006); *see also Forsatz v. Contributorship Cos.*, No. 05-2577 (JCL), 2005 U.S. Dist. LEXIS 25253 at *3 (D.N.J. Oct. 19, 2005)(noting that consideration of facts that may contradict the plaintiff's arguments is "wholly improper" on a motion to dismiss.[11]). It is well established that for purposes of motion to dismiss the factual allegations of the Master Complaint must be accepted as true, and Defendants may not contest the factual these allegations. *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001).

### B.  Defendants' declarations should be afforded no weight.

When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burch v. Milberg Factors, Inc.,* 662 F.3d 212, 220 (3d Cir. 2011).  When deciding a motion to dismiss

---

[11] The court in *Forsatz* further noted "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Forsatz*, 2005 U.S. Dist. LEXIS 25253 at *3 (quoting Fed. R. Civ. P. 12(b)).  To the extent Defendants or this Court wishes to convert this into a Rule 56 motion, Plaintiffs should be afforded an opportunity to conduct discovery.

pursuant to Rule 12(b)(6), a court may consider only the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the claimant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Consequently, it is well-settled that declarations, such as the one relied upon by Defendants, are inappropriate at this stage of the proceedings. *See Frederick Hart & Co. v. Recordgraph Corp.*, 169 F.2d 580, 581 (3d Cir. 1948) ("An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well-pleaded facts in the complaint.") Defendants' declarations are not a matter of public record, nor are Plaintiffs' claims based upon the declaration.  Accordingly, Defendants' declaration should not be given any weight.  Instead, discovery will determine the extent to which Defendants  have failed to pay legally required overtime.

### C.  Defendants' cited cases do not support dismissal.

In an attempt to disguise the fact that the entirety of their argument is an attack on the merits of Plaintiffs' claims in the form of disputing the facts as alleged by Plaintiffs, Defendants do cite to certain cases purportedly in support of their argument.  A review of those cases quickly reveals they offer no support to dismissal of Plaintiffs' overtime claims. By way of example, Defendants curiously cite to *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014). (*See* ECF#138 at pp. 44, 47).  However, the court in *Davis* affirmed dismissal where the plaintiffs failed to allege any weeks in which they were not paid overtime.  *Davis*, 765 F.3d at 244.  Clearly that is inapposite of Plaintiffs' Master Complaint which not only detailed specific paychecks, but also the specific amounts owed to Plaintiffs McKeel and Caperna.  Likewise, Defendants cite to *Field v. DIRECTV LLC*, No. 14-4427, 2015 U.S. Dist. LEXIS 193177, at *8 (E.D. Pa. Aug. 21,

2015), wherein the court dismissed FLSA claims for failing to identify any workweeks for which the plaintiffs were paid less than the FLSA requires.  Plaintiffs' Master Complaint suffers no such defect.  Even if Plaintiffs were to not ultimately prevail on their overtime claims, that is not the issue at present. Indeed, a "complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553).  As a sister court in this Circuit recently noted, "[a]lthough it may not ultimately bear out that [defendant] was" liable to plaintiff, "[plaintiff] has plead enough facts to survive a motion to dismiss." *DiFlavis v. Choice Hotels Int'l, Inc.*, No. 18-3914, 2019 U.S. Dist. LEXIS 58924, *17 (E.D. Pa. April 5, 2019) (denying motion to dismiss complaint alleging FLSA and PMWA claims).

**D.    Plaintiffs plead plausible state overtime claims.**

For much of the same reasons that they have stated plausible FLSA overtime claims, Plaintiffs have also stated enforceable claims for overtime claims under the laws of Pennsylvania, Ohio, and Illinois.  With respect to Plaintiff McKeel's claim under Pennsylvania law, Defendants correctly observe that this claim should be analyzed together with McKeel's FLSA claim.  For the reasons stated above, however, Defendants are incorrect that McKeel's FLSA claim fails, and thus, that her Pennsylvania state law claim fails along with it.  Both are valid claims that should survive Defendants' Motion to Dismiss.

Defendants go on to claim that both the Illinois state law claim of Plaintiff Woodworth and the Ohio state law claim of Plaintiff Bailey should fail because those claims are "merely reciting the respective state laws" coupled with what Defendants assert are allegations which "fail to provide notice of how the respective state laws were purportedly violated…" (*See* Defs. Motion at 47-48).  Defendants' argument, however, ignores both the entirety of the facts as pled in the

Master Complaint, as well as the basic nature of the claims themselves.  Contrary to Defendants

assertions, Plaintiffs allege that Defendants violated the respective Ohio and Illinois state laws

when they "failed to pay the proper overtime rate."  (Master Complaint at ¶¶ 13, 18).  Plaintiffs

then accurately allege the basic requirements of each state's respecting overtime law.  (*Id.* at ¶¶

301, 375).  Finally, Plaintiffs clearly allege that the named Plaintiffs and members of the respective

classes were not paid the legally mandated overtime premiums pursuant to state law.  (*Id.* at ¶¶

302, 376).

Taken together, Plaintiffs have alleged that 1) Defendants were required to pay a premium

for hours worked in excess of forty hours in a work week; 2) that Plaintiffs and members of the

respective state classes worked over and above forty hours during their employment; and 3) that

Defendants failed to pay the required overtime premiums for this work.  It strains credulity to

believe that Defendants do not have "proper notice" of the nature of Plaintiff's claims based upon

these allegations.  These are not intellectually challenging allegations.  Plaintiffs allege that they

were owed payment for overtime work, and Defendants did not pay.  The allegations are more

than sufficient to provide Defendants with "fair notice of what the ... claim is and

the grounds upon which it rests." *Metro. Grp. Prop. & Cas. Ins. Co. v. Hack*, 312 F. Supp. 3d 439,

444 (M.D. Pa. 2018) (citation omitted).

Defendants' Motion takes a superficial view of Plaintiffs' overtime claims. If, as Plaintiffs

allege, Defendants failed to pay the proper minimum wage for the hours they worked, then they

also failed to pay Plaintiffs the proper overtime rate for hours in which they worked over 40 in a

work week because the overtime rate is one and one-half times their regular rate of pay.  As such,

if Defendants violated the state laws by failing to comply with the tip credit provisions, which

resulted in them failing to pay Plaintiffs the appropriate minimum wages for all hours worked,

then the natural consequence of that failure also resulted in Defendants failing to pay Plaintiffs the proper overtime rate for all hours worked over 40 in a workweek.   Indeed, it is notable that Defendants do not claim that these Plaintiffs did not work in excess of forty hours in a workweek – because they cannot.  Consequently, any failure to pay the full minimum wage (due to tip credit notification issues) necessarily means Plaintiffs were not paid all overtime wages due and owing. In short, Defendants make their argument in a vacuum, rather than reading the allegations in the Master Complaint together.

Moreover, contrary to Defendants' assertion, Plaintiffs included more than a single sentence relating to Defendants failure to pay them proper overtime compensation.   Allegations that support Plaintiffs' overtime claims include, but are not limited to:

- Plaintiffs were paid an hourly cash wage rate from Bob Evans and earned tips from those customers who chose to leave them a gratuity.  (Doc. 199, ¶ 146.)

- Plaintiffs' hourly wage rate from Bob Evans was a subminimum wage rate as Defendants claimed a tip credit for all its Tipped Employees. Indeed, upon information and belief, Defendants claimed the maximum tip credit permissible for each of its Tipped Employees irrespective of the amount of tips earned by that Tipped Employee or the type of work he/she was performing for Defendants.  (*Id*. at ¶ 147.)

- Defendants required Tipped Employees who were opening a restaurant to arrive to arrive for work well before the restaurant opened so that they could perform the necessary opening shift work (e.g., prepping the work station, stocking items, making coffee and iced tea, doing any additional work that those working the closing shift did not do the night before, and often having to stock biscuits, rolls, and other specialty breads). (*Id*. at ¶ 148.)

- Defendants required Tipped Employees who were closing a restaurant to stay well after the restaurant closed so that they could perform a host of closing activity including cleaning the tables, sweeping the floors, taking out trash, refilling the sugar, creamer and salt and pepper shakers, stocking their sections with clean dishes, tearing down and cleaning the coffee, tea, and soda machines, cleaning the area where the buns, biscuits and other specialty breads were kept, and rolling silverware. (*Id*. at ¶ 149.)

- In those instances where a Tipped Employee was working neither an opening nor a closing shift, Defendants would have these individuals "cut" or relieved of customer responsibility towards the end of their shift. Thereafter, these "cut" Tipped Employees would be required to perform approximately 30 minutes to 60 minutes of cleaning/break down work before they could leave. Such work included, but was not limited to, breaking down and cleaning work areas at the end of the shift. (*Id*. at ¶ 151.)

- Thus, according to long standing DOL requirements, an employer such as Defendants must pay the full minimum wage when either the Tipped Employee is performing non-tipped work that is (i) *unrelated* to the employee's tipped occupation or (ii) non-tipped work that, although *related* to the employee's tipped occupation, exceeds 20 percent of the employee's time worked during a workweek. (*Id*. at ¶ 174.)

- Pursuant to Bob Evans compensation policies, rather than pay Tipped Employees the Ohio mandated minimum wage, Bob Evans improperly took a tip credit and paid Tipped Employees at a rate well below the Ohio minimum wage. (*Id*. at ¶ 296.)

- The MFWSA provides that employees who work over 40 hours in a workweek shall receive a wage rate of "one and one-half times the employees wage rate for hours worked in excess of forty hours in one workweek." O.R.C. 4111.03. (*Id*. at ¶ 304.)

40

- Defendants violated the MFWSA by failing to pay Plaintiff Bailey and the members of the OH OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.  (*Id*. at ¶ 305.)

- Pursuant to Bob Evans's compensation policies, rather than pay Tipped Employees the Illinois mandated minimum wage, Defendants' improperly took a tip credit and only paid a tip credit wage. The result of this conduct was that Tipped Employees were paid at a rate below the Illinois minimum wage.  (*Id*. at ¶ 371.)

- The IMWL provides that employees who work over 40 hours in a workweek shall receive "compensation for his employment in excess above at a rate not less than 1 ½ times the regular rate." (820 ILCS 105/4a.)  (*Id*. at ¶ 378.)

- Defendants violated the IMWL by failing to pay Plaintiff Woodworth and the members of the IL OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek.  (*Id*. at ¶ 379.)

As such, reading the allegations together throughout the Master Complaint, rather than reading them in the vacuum in which Defendants inappropriately request this Honorable Court to do, Plaintiffs McKeel, Bailey, and Woodworth provide more than sufficient notice of how the state overtime laws were violated.

## V.       Plaintiffs plead a plausible claim under the WPCL.

Defendants assert that Plaintiffs' WPCL claim (Count VIII) must be dismissed because Plaintiffs have failed to allege a contractual obligation to pay wages due. (ECF# 138 at p. 48). While Defendants are correct that the WPCL does not create a right to compensation, they fail to recognize the gist of Plaintiffs' claims.  In short, Plaintiffs allege that Defendants, by paying

Plaintiffs a subminimum wage, either explicitly or implicitly asserted that Plaintiffs would be paid the full minimum wage using the tip credit.

At base, Defendants misapprehend the liberal nature of the WPCL. *See Giacone v. Virtual Officeware, LLC,* 642 Fed. Appx. 137, **143-144 (3d Cir. Mar. 1, 2016) ("After all, the WPCL, which was enacted to make employees whole, must be liberally construed.") (collecting cases). Indeed, and contrary to Defendants' veiled assertions set forth in the Motion, in order to adequately plead a WPCL claim:

> the plaintiff need not plead the existence of any formal employment contract. Rather the plaintiff need only plead the existence of some contractual agreement to pay wages that defendant now owes to the plaintiff. Such a binding agreement may be express or, as the Third Circuit noted in De Asencio, it may be implied. In the context of an employment relationship "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *McGough v. Broadwing Communs., Inc.*, 177 F. Supp. 2d 289, 297 (D.N.J. 2001) (quoting *Martin v. Little, Brown and Company*, 304 Pa. Super. 424, 450 A.2d 984 (1981)).

*Euceda v. Millwood, Inc.*, No. 3:12-0895, 2013 U.S. Dist. LEXIS 120515, **12-13 (M.D. Pa. Aug. 26, 2013). Thus, based on this permissive pleading of a WPCL claim, courts in this Circuit have been loath to dismiss WPCL claims at the pleadings stage. *See, e.g., Rapczynski v. DIRECTV, LLC,* 2016 U.S. Dist. LEXIS 34833, *28 (M.D. Pa. Mar. 17, 2016) (in denying motion to dismiss WPCL claim, finding "the allegations that DIRECTV oversees a Provider Network, which includes MasTec, that supplies it with technicians, and that Plaintiffs are technicians in this Network who fulfill DIRECTV work orders are sufficient to imply 'a promise to pay the reasonable value of the service' performed by Plaintiffs for Defendants") (citing *Euceda,* 2013 U.S. Dist. LEXIS 120515, at *12). Indeed, a Pennsylvania state appellate court found that the regulations regarding the PMWA could be held as a basis for supporting a "meeting of the minds"

and thus the WPCL claim should not have been dismissed.  *Lugo v. Farmers Pride, Inc.,* 2009 PA

Super 5, 967 A.2d 963, 969 (Sup. Ct. Pa. 2009).

Given that Defendants' own Motion states repeatedly that Plaintiffs and other Tipped

Employees were provided notice of Defendants' intent to claim a tip credit, at this nascent stage

of the proceedings a plausible claim has been asserted that Defendants failed to pay Tipped

Employees in accordance with the applicable tip credit provisions.  *Cf. Rui Tong v. Henderson*

*Kitchen, Inc.,* No. No. 17-1073, 2018 U.S. Dist. LEXIS 176294, *19 (E.D. Pa. Oct. 12, 2018)

(dismissing plaintiffs' WPCL claims without prejudice due to finding that they had "not alleged

the existence of a contractual right, either express or implied, to recover the wages and tips they

seek pursuant to the WPCL.").[12]

## VI.    Plaintiffs' Illinois non-tipped labor claims (Count XV) should not be dismissed.

With respect to Count XV, Defendants' sole argument is that Illinois law does not contain

a provision to protect employees from the illegal conduct in which they have engaged.  However,

to the contrary, courts in Illinois have uniformly held that Illinois's wage and hour law should be

interpreted in accordance with the FLSA.

Defendants only argue that the tip-credit notification portion of Count XV is insufficient

and in an apparent attempt to mislead the Court.  Count XV incorporates all previous allegations

concerning the violation of the "80/20" Rule as well as requiring Plaintiff and the putative class

members to perform work completely unrelated to tipped work.  (See Master Complaint ¶366).

---

[12] To the extent this Court determines that Plaintiffs have not sufficiently pled an express or implied contractual right to wages, Plaintiffs would respectfully request leave of the Court so as to further plead this claim for relief. *See, e.g., Phillips,* 515 F.3d at 245 (even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").

The Court should not be misled into reading Count XV's minimum wage claim in a vacuum.   For example, ¶18, which Defendants do not address, alleges:

18. Defendants violated the IMWL when they: (i) failed to provide proper tip credit notification; (ii) required Plaintiff James Woodworth and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the night (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work); and (iii) failed to pay the proper overtime rate. This is in contravention of applicable Illinois state law. Defendants violated the minimum wage and overtime provisions of the IMWL as Plaintiff Woodworth and members of the Illinois Class were consistently and uniformly not paid the applicable minimum wage for all the work they performed during the course of their employment with Defendants. Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but widespread, repeated and part of a pattern and practice of conduct affecting Plaintiff Woodworth and all members of the Illinois Class. Defendants violated the IWPCA when they deducted expenses from the Plaintiff's and the Illinois IWPCA Class's wages without authorization in violation of 820 ILCS 115/9.

In the interest in keeping the Master Complaint less than 100 pages, Plaintiffs reallege allegations such as ¶18 into Count XV.   ¶114 is another example of an allegations specific to Plaintiff Woodworth that is integrated into Count XV.

114. Defendants employed Plaintiff Woodworth to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning the restaurant, busing tables, washing dishes, preparing food and other side work.

That said, the Defendants should not be permitted to mislead the Court into viewing the allegations in Count XV in a vacuum.   For example, ¶146-156 apply to Count XV and provide substantial detail of the minimum wage violations, which are far greater than only the tip-credit notification violation. However, the tip-credit notification requirement was also violated and, because the IMWL mirrors the FLSA, this IMWL violation results in a complete forfeiture of the tip-credit.

The IMWL parallels the FLSA and the IMWL and the same analysis applies to IMWL claims as to FLSA claims.  The IMWL minimum wage and overtime provisions run parallel to that of the FLSA, and Illinois courts apply the same principles; all provisions of the FLSA as well as interpretations of FLSA legislation can be considered in applying the IMWL. See *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010), *Condo v. Sysco Corp.,* 1 F.3d 599, 601 n.3 (7th Cir. 1993) and *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 870 (Ill. App. 2011).  See also *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 1987), holding that because the IMWL "parallels" the FLSA, "[t]he same analysis which applies to a violation of the FLSA applies to State law").

Therefore, just as the non-tipped duties violations alleged throughout the Master Complaint also apply to Count XV, so does the tip-credit notification violation, the primary difference being that the tip-credit notification violation results in a complete forfeiture of the tip-credit. Accordingly, Count XV should not be dismissed.

## VII.   Plaintiffs' Ohio non-tipped labor claims (Count V) should not be dismissed.

With respect to Count V, Defendants' sole argument is that Ohio law does not contain a provision to protect employees from the illegal conduct in which they have engaged.  However, to the contrary, courts in Ohio, including the Ohio Supreme Court, have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA.  In *Haight*, the Supreme Court of Ohio held that "The Fair Minimum Wage Amendment incorporates the FLSA **without any limitation**".  *Haight v. Minchak*, 146 Ohio St. 3d 481, 485, 58 N.E.3d 1135, 1139 (2016). (Emphasis Added.)  In reaching this conclusion, the Supreme Court reasoned, "It would have been a simple matter for the drafters of the Fair Minimum Wage Amendment to include a limitation by referring to a specific section of the FLSA. Since there is no limitation, the constitutional

provision's use of the plural term "meanings" indicates that the entirety of the FLSA is to be considered when determining who is covered under its protections." *Id.* at 1139.

Citing to *Haight*, the Southern District of Ohio stated that "The Court notes initially that FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to same standards and may be analyzed concurrently." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016)(citing *Mitchell v. Abercrombie & Fitch*, Co., 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Haight v. Minchak*, 146 Ohio St. 3d 481, 485, 58 N.E.3d 1135, 1139 (Ohio Mar. 17, 2016)("The Fair Minimum Wage Amendment incorporates the FLSA without any limitation.")). See also *Hudak v. Golubic*, 2018-Ohio-4874, ¶ 10 (8th App. Dist.)(quoting *Haight, supra*.)

In fact, in the Sixth Circuit Court of Appeals has stated repeatedly that the Ohio Minimum Fair Wage Standards Act incorporates the minimum-wage and overtime-compensation provisions of the FLSA. See *Wood v. Mid-America Management Corp.*, 192 Fed.Appx. 378, 379 (6th Cir. Aug. 1, 2006); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 69 (6th Cir. 1997)(recognizing that since O.R.C. 4111 "parallels the FLSA" there would not be a separate analysis.)

Further, Ohio Rev. Code Ann. § 4111.14(B), which details the purpose and construction of Ohio's Minimum Fair Wage Standards Act, states in part:

> In construing the meaning of these terms, due consideration and great weight shall be given to the United States department of labor's and federal courts' interpretations of those terms under the Fair Labor Standards Act and its regulations.

In *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2017 WL 3500411, at *1 (S.D. Ohio Aug. 15, 2017), the Southern District of Ohio certified a collective action in which the plaintiffs alleged that they were spending 30% to 50% of their work time completing non-tipped duties, but "were nonetheless compensated at a minimum wage mins a 'tip credit' for all hour

spent working."  A little more than a year later the Court granted the plaintiffs' Rule 23 Motion to Certify the Ohio Class on the same grounds.  *See Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-CV-516, 2018 WL 5800594, *3 (S.D. Ohio Nov. 6, 2018)(noting that The Fair Minimum Wage Amendment is to be "liberally construed in favor of its purposes.").  *See also Porter v. AJ Auto. Grp., Inc.*, 2015-Ohio-3769, ¶ 7 (8th Dist. Sept. 17, 2015)("the Ohio Constitution was amended under Article II, Section 34a to ensure minimum wages for Ohio workers. Article II, Section 34a, Ohio Constitution specifically states that "[t]his section shall be liberally construed in favor of its purposes."); *Honaker v. Wright Bros. Pizza*, No. 2:18-CV-1528, 2020 WL 134137, at *1 (S.D. Ohio Jan. 13, 2020)(plaintiffs alleged defendants paid delivery drivers less than minimum wage by counting some of their tips to make up the difference between their hourly wages and minimum wage in violation of FLSA, the Ohio Constitution, Article II, Section 34a, and the Ohio Minimum Fair Wage Standards Act.)

Additionally, Defendants argue that "Ohio law contains its own definition of 'wages'." (Doc. 139 p. 44.)  The Supreme Court of Ohio specifically rejected such an argument in *Haight* and stated that "the constitutional provision's use of the plural term 'meanings' indicates that the entirety of the FLSA is to be considered when determining who is covered under its protections." *Haight, supra*, at 1139.  Further, the Court found that "it is logical to conclude that the drafters did not need to restate the FLSA exemptions within Article II, Section 34 of the Ohio Constitution because those exemptions had already been incorporated." *Id.* at 1140.  As the Court notes, the proponents of the Ohio Fair Minimum Wage Amendment issued a publication to Ohio voters stating, *inter alia*, "[e]mployment law experts explain that state authorities in Ohio will undoubtedly interpret the parallel language in the Amendment in the same manner as the federal Department of Labor…" *Id.*

47

It should also be noted that the Ohio Fair Minimum Wage Amendment, in requiring it to be "liberally construed in favor of its purposes," also permits only laws to be passed that will "create additional remedies, increase the wage rate and extend coverage of the section, but in no manner restricting any provision of the section."  Ohio Const. Article II, Section 34a.

As such, it is clear under statutory construction, as well as by the mandate of the Supreme Court of Ohio that "The Fair Minimum Wage Amendment incorporates the FLSA **without any limitation**", that Ohio law incorporates and adopts the FLSA.  If the FLSA claims survive dismissal, so does the Ohio claim.

RESPECTFULLY SUBMITTED this February 7, 2020.

BENDAU & BENDAU PLLC

By: /s/ *Edward W. Ciolko*
Clifford P. Bendau, II
P.O. Box 97066
Phoenix, AZ 85060
Telephone: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com

THE LAW OFFICES OF SIMON & SIMON
James L. Simon
6000 Freedom Square Dr.
Independence, OH 44131
Telephone: (216) 525-8890
Fax: (216) 642-5814
Email: jameslsimonlaw@yahoo.com

CARLSON LYNCH, LLP
Ed Ciolko
Gary F. Lynch
Matthew Brady
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246
Email: glynch@carlsonlynch.com
        eciolko@carlsonlynch.com
        mbrady@carlsonlynch.com

CONNOLLY WELLS & GRAY, LLP
Gerald D. Wells, III
Robert J. Gray
2200 Renaissance Boulevard, Suite 275
King of Prussia, PA 19406
Telephone: (610) 822-3700
Fax: (610) 822-3800
Email: gwells@cwglaw.com
        rgray@cwglaw.com

*Counsel for Plaintiffs and Opt-In Plaintiffs*

## <u>CERTIFICATE SERVICE</u>

I hereby certify that a true and complete copy of the forgoing along was served upon all necessary parties through the Court's electronic case filing system on this 7th Day of February, 2020.

<u>/s/ Edward W. Ciolko</u>