**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Tiffany Williams and Doreen Walker, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action 2:18-cv-1353 |
| v. | : | Judge Mark R. Hornak |
| | : | Complaint – Collective Action |
| Bob Evans Restaurants, LLC and Bob | : | |
| Evans Farms, Inc., | : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS BOB EVANS FARMS, INC., BOB EVANS FARMS, LLC, AND BOB EVANS RESTAURANTS, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED MASTER COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iv

I.      FAIR LABOR STANDARDS ACT "DUAL JOBS" CLAIMS (Counts II and III) .......... 1

Plaintiffs' FLSA dual jobs claims fail because their entire 20% claim (Count II) relies on the existence of a 20% limit, and no such limit exists. The DOL's rescission of the 20% limit is reasonable and consistent with prior DOL determinations, and the DOL reasonably determined that the 20% limit was unworkable in practice. Because the Opinion Letter simply clarifies an existing ambiguous regulation, it applies retroactively. Further, limits on retroactive application apply only burdens imposed on regulated parties, which, under the FLSA, are employers. The DOL's interpretation removes potential burdens.

Plaintiffs' unrelated duties claim (Count III) relies on whether the duties fall outside those listed in O*NET, and they do not.  The Secretary of Labor created O*NET at the express direction of Congress. The DOL reasonably relied on O*NET as the source for determining what constitutes "related duties" in a particular occupation. Federal and state agencies, courts, and millions of private users rely on O*NET's data, the development of which is the result of extensive and fully documented research. The use of O*NET ensures consistency in interpreting and applying the dual jobs regulation.

A.      The DOL reasonably relied on O*NET (Count II) ................................................. 1

B.      The DOL's rescission of the 20% is entitled to deference (Count III) .................. 5

1.      The Opinion Letter reflects the DOL's fair and considered judgment ...................................................................................... 6

2.      The Opinion Letter reasonably interprets the dual jobs regulation.............. 8

C.      The Opinion Letter operates retroactively because it clarifies the regulation ........ 9

D.      If the Court does not defer to the Opinion Letter, it should adopt an occupation-based, totality of circumstances test consistent with Congressional intent............ 10

II.      STATE "NON-TIPPED" DUTIES CLAIMS (Counts V, VII, and XV)......................... 13

Plaintiffs' non-tipped duties claim under Ohio law fails because Ohio law does not recognize such a claim. Nor does Ohio law incorporate every aspect of the FLSA and its regulations, let alone the dual jobs regulation. Without direction from the Ohio Supreme Court, this Court cannot impose a limit on performing non-tipped servers on servers in Ohio.

Plaintiffs' belated non-tipped duties claim under Illinois law fails because they never pled allegations supporting or providing notice of that claim.  It is axiomatic that Plaintiffs cannot amend their Complaint or assert new allegations in opposition to a motion to dismiss.

A. The non-tipped duties claim under Ohio Law should be dismissed (Count V).... 13

B. The non-tipped duties claim under the PMWA should be dismissed (Count VII)14

C. Count XV fails to allege a non-tipped duties claim under Illinois law................ 16

III. FLSA AND STATE TIP CREDIT NOTICE CLAIMS (Counts I, V, VII, XII, XIV, XV) ..................................................................................... 17

Plaintiffs' FLSA tip credit notice claim fails because Plaintiffs plead only a conclusory allegation that Defendants had a willful policy of failing to provide tip credit notice.  Plaintiffs do not plead any facts supporting the alleged unlawful policy. Plaintiffs vaguely plead they have no "recollection" of receiving tip credit notice. Defendants have produced Tip Credit Notices signed by 9 of the 15 Named Plaintiffs, which fully comply with FLSA notice requirements, are consistent with Defendants' policy and practice, are indisputably authentic, must be considered by the Court, and, as a result, warrant dismissal of this claim.

Plaintiffs' Ohio tip credit notification claim fails because Ohio law does not require that an employer provide a tip credit notice, let alone an FLSA-style notice. Employers need only post a summary of Ohio law provided by the State. Without direction from the Ohio Supreme Court, this Court cannot write into Ohio law, or into the State's summary of its laws, a tip credit notification requirement that does not appear.

Similarly, Plaintiffs' tip credit notification claims for violation of Illinois law fails because the conclusory allegations wrongly assume that Illinois law mirrors the FLSA's tip credit notice requirements.  Illinois law and the FLSA differ in this regard, and Illinois law does not incorporate the FLSA's tip credit notice requirements.

A. Plaintiffs' FLSA tip credit notice claim fails as a matter of law .......................... 17

1. Plaintiffs failed to plead sufficient facts stating a tip credit notice claim........................................................................................... 17

2. The Court can evaluate tip credit notices indisputably signed by Plaintiffs..................................................................................... 18

3. Plaintiffs' contentions on the merits fail................................................... 19

B. The Ohio tip credit notification claim fails to state a claim (Count V) ............... 20

     C.      Plaintiffs Illinois tip credit notice claim fail (Count XV) ..................................... 21

IV.    FLSA AND STATE OVERTIME CLAIMS (Counts IV, VI, IX, XVII) ........................ 22

Plaintiffs' overtime claim under the FLSA must be dismissed for failure to plead facts establishing an FLSA violation. Plaintiffs' CMC relies solely on a single paystub for Plaintiffs McKeel and Caperna, yet neither paystub actually reflects any underpayment of overtime. McKeel was paid correctly and Caperna was overpaid.  Plaintiffs make no allegation that any other server, including the 13 other Named Plaintiffs and numerous opt-ins, received an incorrect overtime rate of pay.  Plaintiffs have not pled even a single workweek in which any server received an underpayment of overtime.

Plaintiffs' overtime claims under Ohio and Illinois law fail because simply pled a single conclusory allegation that each state's law was violated.  Plaintiffs have failed to present sufficient factual allegations to support their claims or to adequately plead that such claims are derivative of their state tip credit claims.

Plaintiffs' claim under the Pennsylvania Wage Payment and Collection Law fails because Plaintiffs have failed to identify any contractual obligation under which they bring their claim.  Plaintiffs' claim under the Pennsylvania Minimum Wage Act fails because Pennsylvania law does not require that employers pay tipped employees the non-tipped minimum wage for all time spent performing non-tipped duties.

Plaintiffs' claim under the West Virginia Wage Payment and Collection Law fails because Plaintiffs did not oppose Defendants' Motion to Dismiss on this Claim.

     A.      Plaintiffs' FLSA overtime claim fails on the pleadings (Count IV) ..................... 22

          1.     The Court must consider the paystubs Plaintiffs attached to their CMC ................................................................................................... 22

          2.     The paystubs Plaintiffs attach to the CMC do not state a claim ............... 23

          3.     There are no factual allegations of an FLSA overtime violation ............. 23

     B.      Plaintiff's Ohio (Count VI) and Illinois (Count XVI) overtime claims fail ......... 24

V.     STATE WAGE PAYMENT CLAIMS (Counts VIII and X) ........................................... 25

VI.    CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*AARP v. EEOC*, 390 F. Supp.2d 437 (E.D. Pa. 2005) ................................................... 7

*Acosta v. Holland Acquisitions, Inc.*, No. 2:15-cv-1094, 2018 U.S. Dist. LEXIS 202118 (W.D. Pa. Nov. 29, 2018) ................................................. 25

*Acosta v. Las Margaritas*, Inc., No. 16-1390, 2018 U.S. Dist. LEXIS 216549 (E.D. Pa. Dec. 27, 2018) .................................................................. 20

*Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary*, 93 F.3d 103 (3d Cir. 1996) .................................................................. 9

*Attanasio v. Cmty. Health Sys.*, No. 3:11-CV-583, 2011 U.S. Dist. LEXIS 121764 (M.D. Pa. Oct. 20, 2011) ................................................. 24

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Sup. Ct. Pa. 2011) ............................ 25

*Calloway v. DenOne LLC*, 2019 U.S. Dist. LEXIS 37732 (N.D. Ohio Mar. 8, 2019).............. 6, 7

*Carnara v. Kenner*, No. 16-cv-7078, 2018 U.S. Dist. LEXIS 54039 (S.D.N.Y. Mar. 29, 2018) ........................................................................ 19

*Cf. Schaefer v. Walker Bros. Enters., Inc.*, No. 10 CV 6366, 2014 U.S. Dist. LEXIS 177157 (N.D. Ill. Dec. 17, 2014) ............................................. 21

*Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837 (1984) ...................................... 6, 7

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ...................................................... 2, 9

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ................................ 9

*Daugherty v. Adams*, No. 17-368, 2019 U.S. Dist. LEXIS 200436 (W.D. Pa. Nov. 15, 2019) .......................................................................... 16

*Davis v. Abington Mem. Hosp.*, 765 F.3d 236 (3d Cir. 2014) .................................... 24

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016).............................................. 18, 24

*Dimmet v. Colvin*, 816 F.3d 486 (7th Cir. 2016) ......................................................... 3

*Dir. v. Newport News Shipbuilding Dry Dock Co.*, 514 U.S. 122 (1995) ................... 11

*Doe v. WM Operating*, LLC, No. 17-2204, 2017 U.S. Dist. LEXIS 123979 (E.D. Pa. Aug. 7, 2017) .......................................................................... 2

*Dole v. Fred Bishop & Carol Bishop*, 740 F. Supp. 1221 (S.D. Miss. 1990)................................. 4

*Dominguez v. Yahoo!, Inc.*, 2017 U.S. Dist. LEXIS 11346 (E.D. Pa. Jan. 27, 2017) ................... 9

*Driver v. AppleIllinois, LLC*, 739 F.3d 1073 (7th Cir. 2014) ........................................................ 4

*Driver v. AppleIllinois, LLC*, 890 F. Supp.2d 1008 (M.D. Ill. 2012) ........................................... 15

*Driver v. AppleIllinois, LLC*, 917 F. Supp.2d 793 (N.D. Ill. 2013).............................................. 21

*Drummond v. Herr Foods Inc.*, No. 13-5991, 2014 U.S. Dist. LEXIS 2409 (E.D. Pa. Jan. 9, 2014)................................................................................................................................. 25

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)................................................................................. 14

*Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp.3d 1205 (E.D. Ark. 2019) ....................... 12

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)........................................................... 7

*Feeley v. Comm'r of Soc. Sec.*, No. 14-4970, 2015 U.S. Dist. LEXIS 71690 (D.N.J. June 3, 2015).......................................................................................................................... 3

*Field v. DIRECTV LLC*, No. 14-4427, 2015 U.S. Dist. LEXIS 193177 (E.D. Pa. Aug. 21, 2015) ................................................................................................................................. 23

*G.L. v. Ligonier Valley Sch. Dist. Auth.*, No. 2:13-cv-00034, 2013 U.S. Dist. LEXIS 180923 (W.D. Pa. Dec. 30, 2013) (Hornak, J.)..................................................................... 10

*Garrett v. Lyng*, 877 F.2d 472 (6th Cir. 1989)............................................................................. 6

*Genon Rema, LLC v. EPA,* 722 F.3d 513 (3d Cir. 2013)................................................................ 7

*Haight v. Minchak*, 146 Ohio St.3d 481 (2016).................................................................... 13, 14

*Hartford Underwriters Ins. v. Union Planters Bank,* 530 U.S. 1 (2000)....................................... 10

*Hughes v. UPS,* 639 F. App'x 99 (3d Cir. 2016) ......................................................................... 22

*Ide v. Neighborhood Rest. Partners, LLC*, 1:13-CV-509-MHC, 2015 U.S. Dist. LEXIS 181149 (N.D. Ga. 2015) ........................................................................................................ 4

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997).................................... 22

*Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999)............................................................................ 9

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ............................................................................. passim

*Kortyna v. Lafayette Coll.*, 726 F. App'x 934 (3d Cir. 2018)...................................................... 19

*Lawson v. Barger*, No. 17-cv-97, 2018 U.S. Dist. LEXIS 176857 (W.D. Pa. Oct. 12, 2018) ........................................................................................................................ 25

*Lepkowski v. Telatron Mktg. Grp.*, 766 F. Supp.2d 572 (W.D. Pa. 2011) ............................. 18, 19

*Levy v. Sterling Holding Co., LLC*, 544 F.3d 493 (3d Cir. 2008) .................................................. 9

*Lugo v. Farmers Pride, Inc.,* 967 A.2d 963 (Sup. Ct. Pa. 2009) ................................................... 25

*Masterson v. Fed. Expr. Corp.*, 07-cv-2241, 2008 U.S. Dist. LEXIS 99622 (M.D. Pa. Dec. 10, 2008) ...................................................................................................................... 16

*Matusky v. Avalon Holdings Corp.*, 379 F. Supp.3d 657 (N.D. Ohio 2019) .............................. 4, 5

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ........................................................................ 18

*Negron v. Sch. Dist. of Phila.*, 994 F. Supp.2d 663 (E.D. Pa. 2014) ............................................ 19

*O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 U.S. Dist. LEXIS 5721 (N.D. Ohio Jan. 14, 2020) ................................................................................................................. passim

*Olson v. Saul*, No. 18-cv-4053, 2019 U.S. Dist. LEXIS 120786 (N.D. Iowa July 18, 2019) .............................................................................................................................. 3

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) ........................................................................ 12

*Pellon v. Business Representation Int'l, Inc*., 528 F. Supp.2d 1306, 1134 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008) ..................................................... 12

*Penn. ex. rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173 (3d Cir. 1988) ........................... 24, 25

*Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192 (3d Cir. 1993) .............. 22, 23

*Pope v. Shalala,* 998 F.2d 473 (7th Cir. 1993) ............................................................................... 9

*Potts v. Hartford Life & Accident Ins. Co.,* 272 F. Supp.3d 690 (W.D. Pa. 2017)....................... 3

*Rice v. Chesapeake Energy Corp.*, No. 2:12-cv-00392, 2012 U.S. Dist. LEXIS 107471 (W.D. Pa. Aug. 12, 2012) (Hornak, J.) ..................................................................... 14, 21

*Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) ............................................................................ 1

*Rosario v. First Student Mgmt. LLC*, No. 15-6478, 2016 U.S. Dist. LEXIS 108172 (E.D. Pa. Aug. 15, 2016)................................................................................................. 19

*Santana v. The Duke, LLC*, 2:16-cv-190-FtM-99MRM, 2017 U.S. Dist. LEXIS 93094 (M.D. Fla. 2017), *adopted*, 2017 U.S. Dist. LEXIS 92195 (M.D. Fla. 2017) ................... 4

*Schaefer v. Walker Bros. Enters.*, 829 F.3d 551 (7th Cir. 2016) ............................................ 20, 21

*Schmidt v. Smith & Wollensky*, 268 F.R.D. 323 (N.D. Ill. 2010) ................................................. 21

*Sherman v. Serv. Corp. Int'l*, No. 16-cv-0011, 2017 U.S. Dist. LEXIS 869 (N.D. Ohio Jan. 4, 2017) ........................................................................................................... 17

*Sida v. Pintura Constr. LLC*, No. 2:18-cv-00806, 2018 U.S. Dist. LEXIS 203080 (W.D. Pa. Nov. 30, 2018) (Hornak, J.) ........................................................................ 17

*Skinner v. Switzer*, 131 S. Ct. 1289 (2011) .................................................................. 18

*Vargas v. Gen. Nutrition Ctrs., Inc.*, Civ. No. 10-867, 2011 U.S. Dist. LEXIS 1155 (W.D. Pa. Jan. 6, 2011) ............................................................................................... 17

*Vasil v. Dunham's Athleisure Corp.*, No. 2:14-cv-690, 2015 U.S. Dist. LEXIS 36894 (W.D. Pa. Mar. 23, 2015) .......................................................................................... 25

*Weigang Wang v. Saker ShopRites, Inc.,* No. 16-2443, 2017 U.S. Dist. LEXIS 11074 (D.N.J. Jan. 26, 2017) ............................................................................................... 19

*White v. NIF Cor.*, No. 15-322-WS-N, 2017 U.S. Dist. LEXIS 6703 (S.D. Ala. 2017) ............... 4

*Wright v. Ristorante La Buca Inc.*, No. 18-2207, 2018 U.S. Dist. LEXIS 180518 (E.D. Pa. Oct. 22, 2018) ................................................................................................ 15, 16

*Zellagui v. MCD Pizza, Inc.*, 59 F. Supp.3d 712 (E.D. Pa. 2014) ................................... 15

## STATUTES

29 U.S.C. §203(m) ............................................................................................. 20, 21

29 U.S.C. §203(m)(2) ............................................................................................. 11

29 U.S.C. §203(t) .................................................................................................... 11

29 U.S.C. §259 ....................................................................................................... 10

29 U.S.C. §49I-2 ................................................................................................... 2, 4

Ohio Rev. Code §4111.09 ........................................................................................ 20

Ohio Rev. Code §4111.13(A) ................................................................................... 20

Pa. Code §231.34(c) ............................................................................................... 16

## OTHER AUTHORITIES

DOL Opinion Letter FLSA2009-23 (January 16, 2009) ...................................................... 6

DOL Opinion Letter FLSA2018-27 ...................................................................... passim

DOL Opinion Letter FLSA-895 (Aug. 8, 1979) ............................................................ 5

FLSA § 203(m) ......................................................................................................... 22

https://www.dol.gov/agencies/whd/flsa/tipcreditnprm (last visited 2/14/2020) ............................ 2

S. Rep. No. 89-1487 (Aug. 23, 1966) .......................................................................... 11

S. Rep. No. 93-690 (Feb. 22, 1974) ............................................................................ 11

**RULES**

Evid. R. 201 ............................................................................................................ 2

**REGULATIONS**

29 C.F.R. §516.28(a)(4) ............................................................................................ 11

29 C.F.R. §516.28(a)(5) ............................................................................................ 11

29 C.F.R. §516.5 ...................................................................................................... 20

29 C.F.R. §531.56(e) .............................................................................................. 4, 5

29 C.F.R. §531.59 ............................................................................................... 20, 21

29 C.F.R. §531.59(b) .......................................................................................... 19, 20

29 C.F.R. §541.56(e) ................................................................................................. 2

83 Fed. Reg. 13787 (3/30/18) ................................................................................. 2, 3

**CONSTITUTIONAL PROVISIONS**

Ohio Const. Art. II, §1 ............................................................................................. 13

I.      FAIR LABOR STANDARDS ACT "DUAL JOBS" CLAIMS (Counts II and III)

The DOL had never before defined "related" duties, which it does now (through the 2018

Opinion Letter) by referencing O*NET. ECF 139, pp. 10-16. This definition is entitled to

deference. And, despite Plaintiffs contentions, the DOL has never adopted any "20% rule."

Whether the DOL included a 20% limit in its internal handbook or once adopted it in an amicus

brief is now irrelevant. Since the 2018 Opinion Letter expressly rejects the 20% limit, it is no

longer the agency's position, and is not entitled to deference. ECF 139, pp. 17-27; FLSA2018-

27, at 4; *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 327 (2008). The 2018 Opinion Letter replaces

the 20% limit with the requirement that related duties be performed contemporaneously with, or

a reasonable time immediately before or after, tipped duties.  This is entitled to deference.  Thus,

the only two issues for the Court to decide are (1) whether the 2018 Opinion is owed deference

in whole or in part; and (2) if not, how will the Court interpret the dual jobs regulation in the

absence of controlling guidance from the DOL.[1]

A.      The DOL reasonably relied on O*NET (Count II).

The DOL's clarification of "related duties" by referring to O*NET warrants deference

independent of the DOL's elimination of the 20% limit (Count III). ECF 139, pp. 10-17.

Plaintiffs now cite to *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 U.S. Dist. LEXIS 5721

(N.D. Ohio Jan. 14, 2020), for the contention that reliance on O*NET is unreasonable. *O'Neal* is

wrongly decided, and nothing in Plaintiffs' argument undermines O*NET's validity.

It is undisputed that the dual jobs regulation is ambiguous as to the meaning of "related

---

[1] Plaintiffs' efforts aside (ECF 148, pp. 4-5), Defendants move to dismiss Counts II and III. Plaintiffs' entire 20% claim (Count III) relies on the existence of a 20% limit, and no such limit exists. Their unrelated duties claim (Count II) relies on whether the duties fall outside those listed in O*NET, and they do not. The DOL will recognize a potential claim when non-tipped duties are not performed "contemporaneously" with related duties or within a "reasonable time immediately before or after" tipped duties. FLSA2018-27, 3-4. But that is a separate claim.

duties in an occupation" because it fails to define that term. 29 C.F.R. §541.56(e). The DOL has

since stated the list of server's duties in O*NET should be used for delineating what duties are

related to a server's occupation. *See* FLSA2018-27; Notice of Proposed Rulemaking.[2] This part

of the Opinion Letter is unrelated to the history or application of the 20% limit. It is independent

guidance interpreting an ambiguous regulation, and so is entitled to deference. *Christensen v.*

*Harris Cty.*, 529 U.S. 576, 587–88 (2000); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019).

O*NET's legitimacy and validity as a source of information for determining job duties in

different occupations cannot seriously be questioned. Pursuant to the Workforce Investment and

Opportunity Act (WIOA), the Secretary of Labor is required to "oversee the development,

maintenance, and continuous improvement of a nationwide employment statistics system of

workforce and labor markets information system." 29 U.S.C. §49I-2. "O*NET information is the

foundational common language for fulfilling the statutory and regulatory responsibilities

regarding information on skills discussed in [WIOA]." Rocco ¶3, Att. 1 at A-17-18.[3] The

Workforce Information Advisory Council (created by 29 U.S.C. §49I-2) explains that:

> The O*NET database is the most comprehensive source of occupational
> information in the United States. No other similarly comprehensive, reliable, and
> valid source exists. If O*NET data are not collected, U.S. citizens, industry,
> business establishments, military, government and educational institutions, and the
> workforce investment system will have few options that meet their needs for
> occupational information. O*NET data are used to develop industry competency
> models and occupational competency profiles (i.e., industry- or occupation-specific
> job or work analyses)….Students, jobseekers and workers need up-to-date
> information on required job skills for specific occupations. O*NET provides the
> best resource for detailed descriptions of the knowledge, skills, abilities, work-
> related tasks, and tools and technologies used by specific occupations.

*Id.* at A-52. *See* 83 Fed. Reg. 13787 (3/30/18) (Rocco ¶6, Att. 4) (O*NET provides the "most

---

[2] <https://www.dol.gov/agencies/whd/flsa/tipcreditnprm> (last visited 2/14/2020).
[3] The Court may take judicial notice of government records like DOL's "Office of Management and Budget Clearance Package Supporting Statement" relating to O*NET in ruling on a motion to dismiss. *See* Evid. R. 201; *Doe v. WM Operating*, LLC, No. 17-2204, 2017 U.S. Dist. LEXIS 123979, at *20 n.6 (E.D. Pa. Aug. 7, 2017).

comprehensive standardized source of occupational and skills information").

"O*NET information is used by a wide range of audiences, including individuals making career decisions, public agencies and schools providing career exploration services or education and training programs, and businesses making staffing and training decisions." 83 Fed. Reg. 13787.[4] The DOL, Social Security Administration, military, and Pennsylvania, Connecticut, and Maine DOLs use O*NET. Rocco ¶3, Att. 1, at A-36 to 37, A-39 to 41. Courts rely on O*NET.[5]

Plaintiffs cite to *O'Neal*, which refused to accord deference to O*NET in determining tipped servers' related duties because it, "at least in part, relies on data obtained by asking employees which tasks their employers are requiring them to perform. *** If employers assign tipped employees duties traditionally performed by non-tipped employees, the O*NET definitions will reflect this…" 2020 U.S. Dist. LEXIS 5721, at *19-20. *O'Neal*'s reasoning shows a fundamental misunderstanding of O*NET and should be rejected. Contrary to the court's misconception, "[t]he descriptors and rating scales for O*NET data were developed through extensive research, drawing primarily from job analysis in industrial/organizational psychology and human resource management. *** The primary sources of data are job incumbents and occupation experts. *** ***The use of questionnaires and rating scales reflects the most widely accepted approach to job analyses conducted across settings, occupations, or positions.***" Rocco ¶3, Att. 1, at A-4 (emphasis added). Further, "[u]sing the most appropriate sources of information (e.g., workers, occupation experts, analysts) and a multiple-method approach, the O*NET Data Collection Program efficiently collects and yields high-quality

---

[4] O*NET averages 10.4 million visits per month. Rocco ¶3, Att. 1, at A-25, A-29, A-30. More than 600 publications refer to O*NET. *Id.* ¶5, Att. 3.
[5] *See Dimmet v. Colvin*, 816 F.3d 486 (7th Cir. 2016); *Feeley v. Comm'r of Soc. Sec.*, No. 14-4970, 2015 U.S. Dist. LEXIS 71690 (D.N.J. June 3, 2015); *Olson v. Saul*, No. 18-cv-4053, 2019 U.S. Dist. LEXIS 120786 (N.D. Iowa July 18, 2019); *Potts v. Hartford Life & Accident Ins. Co.,* 272 F. Supp.3d 690 (W.D. Pa. 2017).

occupational data." *Id.* at A-8; *id.* at A-3 ("The O*NET Content Model is the result of extensive research, and its development is fully documented."); Rocco, Att 2.

Courts are not experts in data collection methodology, as this is not something that "fall[s] more naturally into a judge's bailiwick." *Kisor*, 139 S. Ct. at 2417. "Agencies (unlike courts) have 'unique expertise,' often of a scientific or technical nature, relevant to applying a regulation 'to complex or changing circumstances.'" *Id.* at 2413. Congress recognized the DOL's unique expertise because it expressly tasked the Secretary of Labor with creating a workforce information system (i.e., O*NET).[6] *See* 29 U.S.C. §49I-2.

*O'Neal's* flawed reasoning also leads to results antithetical to the pronouncements in *Kisor*. To illustrate, in 2019, the **same court** decided *Matusky v. Avalon Holdings Corp.*, 379 F. Supp.3d 657 (N.D. Ohio 2019) – which held the precise opposite of *O'Neal*. In *Matusky*, the court dismissed the plaintiffs' claims, having determined that all of the tasks on which the plaintiffs based their claims were tasks that were related to the occupation of "banquet server" found in O*NET. *Id.* at 667-68. Same court, different judge – opposite results. "Judges are most likely to come to divergent conclusions when they are least likely to know what they are doing." *Kisor*, 139 S. Ct. at 2414. The divergent holdings from the **same court** in *O'Neal* and *Matusky*, as well as those in other cases,[7] illustrate why deference to the DOL's use of O*NET is warranted.

---

[6] O*NET's methodology is sound and "employers" are not "re-writing" the dual jobs regulation by relying on O*NET. On the contrary, in FLSA2018-27, the DOL is properly interpreting and clarifying its own regulation. *See generally Kisor*, 139 S. Ct. at 2420.

[7] Courts have variously defined food preparation and cleaning duties as both related and unrelated duties. *See* 29 C.F.R. §531.56(e) (toasting bread, making coffee related); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (food prep unrelated); *White v. NIF Cor.*, No. 15-322-WS-N, 2017 U.S. Dist. LEXIS 6703, at *12 (S.D. Ala. 2017) (food prep related); *Santana v. The Duke, LLC*, 2:16-cv-190-FtM-99MRM, 2017 U.S. Dist. LEXIS 93094, at *19–20 (M.D. Fla. 2017), *adopted*, 2017 U.S. Dist. LEXIS 92195 (M.D. Fla. 2017) (prepping bread, cutting lemons, preparing salads related); *Dole v. Fred Bishop & Carol Bishop*, 740 F. Supp. 1221, 1228 (S.D. Miss. 1990) (food prep unrelated); *Ide v. Neighborhood Rest. Partners, LLC*, 1:13-CV-509-MHC, 2015 U.S. Dist. LEXIS 181149, at *20 (N.D. Ga. 2015) (fruit slicing related); 29 C.F.R. §531.56(e) (washing dishes/glasses related); *Driver*, *supra* (washing dishes unrelated); *White*, *supra* (janitorial activities related).

Adopting *O'Neal's* and Plaintiffs' reasoning leaves judges and jurors, who lack industry expertise, to determine if duties are tipped, related, or unrelated. This would inevitably lead to inconsistent decisions because the same duty could be held related in Pennsylvania, for example, but not in Ohio. *See, e.g., O'Neal*, *Matusky*, and the cases cited in note 7.

Plaintiffs also contend that reliance on O*NET is unreasonable because one of the tasks listed in O*NET supposedly conflicts with a 40-year old DOL opinion. ECF 148, p. 13. The 1979 Opinion Letter spoke to a situation where wait staff were required to show up to work ***two hours before the restaurant opened*** to prepare food for the salad bar, and the DOL concluded they were engaged in two jobs. FLSA-895 (Aug. 8, 1979). In this context the DOL found the "preparation activities" performed were "essentially the activities performed by chefs, [so] no tip credit may be taken for the time spent in preparing vegetables." *Id.* These "activities" must be viewed in context – they were performed for two hours before opening, and nothing in the letter supports the blanket declaration that only chefs, not tipped servers, prepare salads. The dual jobs regulation itself states "toasting bread" (food preparation) is a related duty. 29 C.F.R. §531.56(e).

The DOL's incorporation of O*NET accords with "Congress's frequent 'preference for resolving interpretative issues by uniform administrative decision, rather than piecemeal by litigation." *Kisor*, 139 S. Ct. at 2413. Unlike *O'Neal*'s holding, deference to O*NET is fair to both employers and employees because it "serves to ensure consistency in federal regulatory law, for everyone who needs to know what it requires." *Id.* at 2414. The Court should defer to DOL's use of O*NET for defining related duties regardless of whether it also defers to the DOL's rescission of the 20% limit. Doing so requires that Count II be dismissed because the duties Plaintiffs alleged are "unrelated" all fall within O*NET's listing of related duties.

**B.    The DOL's rescission of the 20% is entitled to deference (Count III).**

Count III hinges upon the existence of a 20% limit on related duties that stems from

*rescinded* DOL guidance. Defendants' Motion explains why the 2018 Opinion Letter warrants deference in this regard. ECF 139, pp. 17-27. Plaintiffs focus primarily on the timing of the Letter's issuance and a supposed "inconsistency" in it. ECF 148, pp. 15-16. Below, Defendants explain why the Letter reflects the DOL's fair and considered judgment and is a reasonable, consistent interpretation of the dual jobs regulation. And as a clarification of existing law, the Letter is retroactive. For these additional reasons, the Opinion Letter is entitled to deference.

### 1.   The Opinion Letter reflects the DOL's fair and considered judgment.

Plaintiffs contend the "timing" of the Opinion Letter reflects a lack of fair and considered judgment because it "coincided with a change in administration" which "suggests that the change is a matter of policy, not an effort to determine the meaning of the regulation." *Calloway v. DenOne LLC*, 2019 U.S. Dist. LEXIS 37732 at *16 (N.D. Ohio Mar. 8, 2019); ECF 148, pp. 14-15. Even if true, this is irrelevant. In 2009, the DOL was poised to issue the predecessor of the 2018 Opinion Letter. FLSA2009-23 (1/16/09). When the administration changed, the 2009 Letter was withdrawn. In 2011 and 2016 (under the same administration), the Secretary filed an amicus brief promoting the 20% limit. *See* ECF 148, p. 19. Then, after another change in administration, the DOL issued the 2018 Opinion Letter expressly revoking that limit. This is hardly unusual – agencies may "properly rely upon the incumbent administration's views of wise policy to inform its judgments." *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 865 (1984). In fact, "[t]hat the change in the Secretary's judgment may have been related to the election of a new President of a different political party is immaterial." *Garrett v. Lyng*, 877 F.2d 472, 475-76 (6th Cir. 1989); *Kisor*, 139 S. Ct. at 2413 ("agencies (unlike courts) have political accountability, because they are subject to the supervision of the President…").

An agency must "display awareness that it *is* changing position" and "show that there are

good reasons' for its new policy, but it need not show that "the reasons for the new policy are *better* than the reasons for the old one." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis in original). The DOL reached a conclusion in 2009. The DOL was unable to act on that conclusion until 2018. This does not mean that the initial conclusion was incorrect. A decade filled with 150-plus actions on the FOH (ECF 139, Appx. B) justifies the DOL's conclusion that the "the current FOH sections addressing the tip credit have resulted in some confusion and inconsistent application and, as a result, may require clarification" and "guidance." FLSA2018-27, at 2-3. *See AARP v. EEOC*, 390 F. Supp.2d 437, 444 n.7 (E.D. Pa. 2005) (the fact that EEOC had since "changed its position" from an earlier amicus brief because of "unintended consequences of its policy" "should not detain us long, since an initial agency interpretation is not instantly carved in stone") (quoting *Chevron*).

Plaintiffs also contend deference is unwarranted because "the chief rationale for *Auer* deference is absent" as "it is unlikely that the drafters of the 1967 dual-jobs regulation played any role in the new guidance." *Calloway*, 2019 U.S. Dist. LEXIS 37732, at *16-17. This makes no sense. It is unlikely that individual "drafters" of the regulation played any role in the FOH or amicus briefs. Indeed, it is "[t]he *agency* that 'wrote the regulation' [that] will often have direct insight into what that rule was intended to mean." *Kisor*, 139 S. Ct. at 2413 (emphasis added). *Calloway's* reasoning also undermines the principle that "[t]he agency is not forever held to its prior interpretations, as the continued validity and appropriateness of the agency's rules is an evolving process." *Genon Rema, LLC v. EPA,* 722 F.3d 513, 525 (3d Cir. 2013).

Finally, Plaintiffs assert the Opinion Letter "highlights" the problem with *Auer* deference, which "allows an agency to make retroactive rule changes through informal guidance" in violation of the APA. *Calloway*, 2019 U.S. Dist. LEXIS 37732, at *15. Plaintiffs and *Calloway*

ignore the irony that the 20% limit itself started life as informal guidance in the FOH before receiving unwarranted judicial deference as a de facto "rule" masquerading as an interpretation in violation of the APA. Further irony is evident in Plaintiffs' contention that the Opinion Letter is just a "convenient litigating position" in light of the *Restaurant Law Center* lawsuit. ECF 148, pp. 15-16; *O'Neal*, 2020 U.S. Dist. LEXIS 5721, at *21. Plaintiffs cannot have it both ways – they cannot rely on the DOL's amicus briefs filed in *Fast* and *Marsh* as support for the 20% limit while denouncing the DOL's position in *Restaurant Law Center*.[8]

### 2. The Opinion Letter reasonably interprets the dual jobs regulation.

The Opinion Letter sets no limit on the amount of related duties that are "performed contemporaneously" with direct customer service "or for a reasonable time immediately before or after performing such direct-service duties." FLSA 2018-27, at 3-4. Plaintiffs contend this is "internally inconsistent," which makes the opinion "unreasonable." ECF 148, pp. 24-25 (citing *Belt* and *O'Neal*). There is no inconsistency, especially in context of the dual jobs regulation and prior DOL Opinion Letters.

The regulation is concerned with when an employee has two occupations, not with differentiating between tasks within an occupation, and the regulation's examples show an employee is not engaged in two distinct occupations simply because he performs different tasks over the course of the day. A server can perform tip-producing and non-tip-producing duties at the same time, like taking an order while wiping down the table, or immediately before or after taking an order, like ensuring the tables' condiments are present. Since these duties are "related" (see O*NET), they all constitute the server's job, regardless of whether they are direct-service.

---

[8] After *Kisor*, an amicus brief is not a proper vehicle for issuing policy worthy of *Auer* deference. *See Kisor,* 139 S. Ct. at 2417 n.6. By that same reasoning, it would be improper bootstrapping to allow the DOL to attain *Auer* deference for an interpretation issued in an amicus brief that merely parrots an interpretation issued in the FOH, which itself is not a proper vehicle for establishing policy. *See* ECF 139, pp. 9-10.

C.      **The Opinion Letter operates retroactively because it clarifies the regulation.**

Plaintiffs' contention that the Opinion Letter is not retroactive because employees would be "unfairly surprised" is wrong. ECF 148, pp. 16-17. The Letter is an interpretative rule. *See Christensen*, 526 U.S. at 587. "Retroactive application of an 'interpretative' rule is permissible." *Dominguez v. Yahoo!, Inc.*, 2017 U.S. Dist. LEXIS 11346, at *23 (E.D. Pa. Jan. 27, 2017); *Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary*, 93 F.3d 103, 113 (3d Cir. 1996); **Error! Bookmark not defined.***Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 506 (3d Cir. 2008) (collecting cases).[9]

Limits on retroactively applying an agency interpretation only apply to burdens or unfair surprise **on the regulated party** – not, as Plaintiffs contend, the "protected party." ECF 148, pp. 16-17. "[A]gencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires' where the new interpretation would impose massive liability on a regulated party." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155-56 (2012) (alternation in original). "And a court may not defer to a new interpretation…that creates 'unfair surprise' to regulated parties." *Kisor*, 139 S. Ct. at 2418. Under the FLSA, the regulated party is employers, not employees. Relevant here, the FLSA requires that "employers" pay a minimum wage (§206); that "employers" pay overtime (§207); that "employers" provide a tip credit notice (§203(m)); and then penalizes "employers" that fail to do so (§216(b)). No such obligations or penalties are imposed upon "employees."[10] Here, rescinding the 20% limit on "related duties" **removes** rather than imposes a burden on regulated parties (employers), while the incorporation

---

[9] *See also Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) ("A rule simply clarifying an unsettled or confusing area of the law…does not change the law, but restates what the law according to the agency is and has always been…"), *overruled on other grounds, Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999).

[10] Plaintiffs do not allege they actually relied upon the 20% limit during their working time as tipped servers. It is highly doubtful they were even aware of the FOH or the Secretary's amicus briefs on the subject.

of O*NET aids regulated parties (employers) in complying with their FLSA obligations. "[R]egulated parties often push for precision from an agency, so that they know what they can and cannot do." *Kisor*, 139 S. Ct. at 2421.

Finally, that the Opinion Letter is a statement of agency policy for purposes of 29 U.S.C. §259 "from this day forward," does not limit its retroactivity. Section 259 provides an ***affirmative defense*** to FLSA violations when an employer reasonably relied upon agency guidance. One cannot rely on guidance until after it is issued; logically, the Opinion Letter can serve as a basis for the defense only "from this day forward." The defense in §259 ***presumes*** that a new agency interpretation applies retroactively.

> **D.     If the Court does not defer to the Opinion Letter, it should adopt an occupation-based, totality of circumstances test consistent with Congressional intent.**

If the Court declines to defer to the DOL in whole or in part, it must independently ascertain the meaning of the dual jobs regulation. In doing so, no independent basis exists from which the Court may divine a 20% limit, nor any authority to impose one. The dual jobs regulation clearly does not contain a bright-line temporal limitation. *See* ECF 139, pp. 19-22. A 20% limit has no basis in the FLSA, is not the DOL's official position, is no longer in the FOH, and is wholly unworkable. Plaintiffs essentially argue that a 20% limit represents a better policy than what the DOL has proposed and that a 20% limit is workable. Even if that were true (it is not), that is not the test. Policy determination "is a task for Congress, not the courts." *Hartford Underwriters Ins. v. Union Planters Bank,* 530 U.S. 1, 13 (2000).

The Court cannot impose an artificial 20% limit that does not appear in the law under the guise that it would be "reasonable," nor can the Court take a 20% limit from an existing rule and graft it onto the regulation. *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, No. 2:13-cv-00034, 2013 U.S. Dist. LEXIS 180923, at *12-13 (W.D. Pa. Dec. 30, 2013) (Hornak, J.) ("It is for Congress,

not the courts, to enact legislation."). The fact the DOL imposed a 20% limit – *by legislative rule* – in other areas (see ECF 148, p. 21; ECF 139, pp. 25-26), but not in the dual jobs regulation, is not only is unhelpful to Plaintiffs, it proves the opposite. *See Dir. v. Newport News Shipbuilding Dry Dock Co.*, 514 U.S. 122, 129-30 (1995) (an act's "silence [as to standing] is significant when laid beside other provisions of law" that provide for standing). Bright-line limits only come from notice-and-comment rulemaking or Congress, not agency or judicial fiat.

Indeed, Congress contemplated an overall assessment of a tipped employee's status on a week-by-week basis, not a slice-and-dice of a single workday into minutes of tipped and non-tipped employment. S. Rep. No. 93-690, at 43 (Feb. 22, 1974) ("employee's status as one who 'customarily and regularly receives tips' will be determined on the basis of the employee's activities over the entire workweek."). The statutory focus is on the wages, the occupation, and the tips.[11] The 20% limit is contrary to Congress's intent "to permit the continuance of existing practices with respect to tips" in the restaurant industry. S. Rep. No. 89-1487 (Aug. 23, 1966).

Plaintiffs ignore this and contend employers could easily track the time tipped employees spend in different sets of duties (tipped, related, unrelated). ECF 148, p. 32. Aside from being absurd, the regulations (consistent with the occupational-based approach) only require that employers keep records of the "[h]ours worked each workday in any *occupation* in which the employee does not receive tips" and "[h]ours worked each workday in *occupations* in which the employee receives tips." *See* 29 C.F.R. §516.28(a)(4), (5) (emphasis added). The regulations do not require tracking tip-generating and non-tip-generating duties (let alone define them). Nothing in the legislative history indicates that Congress intended for restaurant employees' duties to be

---

[11] The FLSA takes an occupation-based approach, as it expressly permits an employer to pay a tipped wage to a "tipped employee," who is "any employee engaged *in an occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. §203(m)(2), §203(t). *See* ECF 139, pp. 5-6.

micromanaged on a task-by-task basis. *See Pellon v. Business Representation Int'l, Inc*., 528 F. Supp.2d 1306, 1134 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008).

Contrary to Plaintiffs' view, the 20% limit was "bad" at its outset, and is not the "best means" of implementing the dual jobs regulation. ECF 148, pp. 20, 23. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001) (unreasonable enactments "do not become less so through passage of time"). Since the 20% limit dropped on employers in 2010, confusion has reigned about what constitutes "related" duties and how much time tipped servers may perform them – over 150 cases contesting the existence, lawfulness, and practicality of the 20% limit hardly shows a settled area of law. ECF 139, Appx. B. Even the case Plaintiffs cite recognized the 20% limit is "almost certainly burdensome to apply in practice." *Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp.3d 1205, 1211 (E.D. Ark. 2019). While Plaintiffs try to paint a picture of Defendants extorting labor from low-wage workers, nothing could be further from the truth. Defendants have gone to great lengths to comply with the "20 % rule" and ensure servers do not perform "unrelated" duties, despite having virtually no authoritative guidance on how to do so. *See* ECF 146, pp. 16-24. This is a prime example of the failure of the "20% rule."

The 20% limit departs from a clear occupation-based standard in favor of a convoluted, minute-by-minute duties-based analysis. The Court must try to judge whether and when a server who takes 30 seconds to take a bag of trash from the dining area to the kitchen somehow ceases to be a server and instead becomes a non-tipped "maintenance" worker for those 30 seconds. The Court must evaluate exactly when wiping a table crosses the line from what is tip-producing work (cleaning a customer's spill?) and becomes non-tipped "cleaning" work (wiping down tables between customers?). Who tracks these tasks and the time spent? More importantly, how?

The "totality of the circumstances" test answers Plaintiffs' hypothetical about spending

99% of the time on non-tipped duties and provides practical answers to the questions above. ECF 148, p. 12. The employee still needs to be engaged in a tipped occupation, which would clearly not be the case if 99% of the work was non-tipped. A totality of the circumstances test avoids absurd results on both ends of the spectrum. It is the approach suggested by Congress and used by the DOL for decades. *See* ECF 139, p. 25. As such, and since there is no statutory, regulatory, or logical support for a 20% limit on related duties, the Court should adopt this approach if it finds that deference to the 2018 Opinion Letter is unwarranted.

## II.    STATE "NON-TIPPED" DUTIES CLAIMS (Counts V, VII, and XV)

### A.    The non-tipped duties claim under Ohio Law should be dismissed (Count V).

Plaintiffs do not dispute that nothing in Ohio law prohibits servers from performing "non-tipped" duties. Instead, Plaintiffs claim that the entirety of the FLSA and its regulations are incorporated into Ohio law. Plaintiffs' cry of "liberal construction" (ECF 148, pp. 47-48) does not make this so. Liberally "construing" *existing* laws does not mean that unwritten provisions spring forth like Athena from the head of Zeus. Only the General Assembly may enact laws. *See* Ohio Const. Art. II, §1; *id.* §34. Nor does the Ohio Supreme Court's decision in *Haight v. Minchak*, 146 Ohio St.3d 481 (2016), prove otherwise. Contrary to Plaintiffs' contention, the Court did not hold that Ohio law fully incorporates the FLSA.

In *Haight*, the Supreme Court analyzed whether the Ohio Constitution's Fair Minimum Wage Amendment statement that "employee" and "employer" "have the same meanings as they do under the Fair Labor Standards Act" incorporated all of the FLSA's *overtime exemptions* and exclusions for purposes of the Amendment. *Id.* at 485. The Court held that, "[s]ince there is no limitation, the constitutional provision's use of the plural term 'meanings' indicates that the entirety of the FLSA is to be considered in determining *who is covered* under its protections." *Id.*

(emphasis added). The Court was discussing, and its holding is limited to, "the incorporation of the FLSA exemptions." *Id.* The Court did not even mention incorporating FLSA regulations like the dual jobs regulation, which is the basis of Plaintiffs' claim. *Haight* simply cannot be read to reflect the incorporation of every element of the FLSA or its regulations that Plaintiffs hope for.

*Haight* has nothing to do with dual jobs or unrelated duties, and Plaintiffs' claim is not about "who is covered" as an employee under Ohio law. Defendants do not argue that Ohio tipped servers are exempt from overtime, and nobody disputes that tipped servers working in a Bob Evans-branded restaurant in Ohio are "covered" by Ohio law. ECF 148, pp. 45-48. *Haight* is simply inapposite.

A district court sitting in diversity is required to apply the law of the appropriate state as it has been determined by that state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). The issue here is whether this Court can state that Ohio law is so clear as to prohibit servers from performing non-tip generating work. No provision in the Ohio Constitution, the Ohio Revised Code, or the Ohio Administrative Code contains any limit. No ruling by the Ohio Supreme Court (nor even by any lower state court) imposes any such limit. As a result, this Court, in exercising its *Erie* analysis, cannot "predict with certain confidence" that the Ohio Supreme Court will impose such a limit. *See Rice v. Chesapeake Energy Corp*., No. 2:12-cv-00392, 2012 U.S. Dist. LEXIS 107471, at *15 (W.D. Pa. Aug. 12, 2012) (Hornak, J.).

**B. The non-tipped duties claim under the PMWA should be dismissed (Count VII).**

Plaintiffs argue that the PMWA requires employers to pay tipped employees at the regular minimum wage for ***any time*** spent performing non-tipped duties. Plaintiffs confusedly assert that the PMWA's requirement exists entirely independent of the FLSA, but in support cite two cases whose foundation is an Illinois decision holding that Illinois law follows the FLSA with regard to dual jobs. ECF 148, pp. 23-24. There is nothing in the PMWA requiring, let alone

suggesting, that servers have to be paid at a different rate for non-tipped duties. ECF 139, p. 45-46. Such an expansive view of the PMWA is without precedent, and should be rejected.

Plaintiffs cite *Zellagui v. MCD Pizza, Inc*., 59 F. Supp.3d 712 (E.D. Pa. 2014) and *Wright v. Ristorante La Buca Inc*., No. 18-2207, 2018 U.S. Dist. LEXIS 180518 (E.D. Pa. Oct. 22, 2018). But *Wright* did not analyze the question—it merely cited *Zellagui* without further discussion. *Id*. at *22 n.117. Thus, Plaintiffs' claim functionally rests entirely on *Zellagui*, which in turn relies (again, without discussion) on *Driver v. AppleIllinois, LLC*, 890 F. Supp.2d 1008 (M.D. Ill. 2012), to support the premise that when employees perform "non-tipped tasks" they must be paid the regular minimum wage under Pennsylvania law. *Wright*, 2018 U.S. Dist. LEXIS 180518, at *22; *Zellagui*, 59 F. Supp.3d at 715.

But *Driver* never stated that when employees perform any non-tipped tasks, they must be paid regular minimum wage – and certainly did not so hold ***under the PMWA***. In *Driver*, servers asserted a ***dual jobs*** claim (not a non-tipped ***duties*** claim) under Illinois law. *Driver*, 890 F. Supp.2d at 1010. Since Illinois law "parallels the FLSA and the same analysis has generally been applied to both statutes[,]" the court relied on the FLSA's dual jobs regulation when evaluating that claim to determine if the servers were employed in dual jobs. *Id*. at 1010, 1029-33 (citations omitted). Here, Plaintiffs argue the Court should deviate from the FLSA because the PMWA contains a "substantive difference" from the FLSA on the question of non-tipped tasks and the tip credit. ECF 148, p. 25. Defendants agree that the PMWA does ***not*** wholly incorporate the FLSA, including the dual jobs regulation. ECF 139, p.47. Thus, it is clear these cases do not support Plaintiffs' position, as *Driver* expressly wove the FLSA's dual jobs regulation into Illinois law.[12] *Driver*, 890 F. Supp.2d at 1011 n.3.

---

[12] Given the procedural history of *Zellagui* and *Wright*, it is easy to see how the courts misinterpreted *Driver*'s holding. In *Zellagui*, the defendants failed to appear or defend the action and the court issued a default judgment. 59 F. Supp.3d

Finally, the Court should reject Plaintiffs' new theory asserted for the first time in their brief that, regardless of an individual's duties, "a tip credit ***cannot be claimed*** when a tipped employee works and does not receive tips for that hour." ECF 148 at 26. "Plaintiffs may not assert new claims or rely on new facts in response to a motion to dismiss." *Daugherty v. Adams*, No. 17-368, 2019 U.S. Dist. LEXIS 200436, at *44 (W.D. Pa. Nov. 15, 2019). And the one federal court considering the issue has rejected an hour-by-hour analysis under the PMWA, and applied the workweek standard. *Masterson v. Fed. Expr. Corp.*, 07-cv-2241, 2008 U.S. Dist. LEXIS 99622, at *14, 18 (M.D. Pa. Dec. 10, 2008). The Court specifically observed "Pennsylvania's regulations, in fact, apply a workweek standard in most situations. *See* Pa. Code §231.34(c) (tipped employees)…" *Id*. at *14. As such, Plaintiffs' claim fails.

### C.  Count XV fails to allege a non-tipped duties claim under Illinois law.

Plaintiffs now attempt to insert a non-tipped duties claim under Illinois law into Count XV of the CMC, which they omitted in the "interest of keeping the [CMC] under 100 pages." ECF 148, p. 44. However, as shown by the Ohio, Pennsylvania, and Maryland law claims, it takes very little to allege the non-tipped duties claim. *Cf.* CMC ¶296 (OH); ¶310 (PA); ¶348 (MD). For those, the CMC separately alleges "Defendants had a willful policy and practice of failing to pay the full minimum wage for time spent ... performing non-tip generating work." *Id.* Plaintiffs could have done the same for Illinois. They did not. Instead, after having repeated opportunities and extended time to refine their claims, Plaintiffs limited Count XV to claiming "Defendants had a willful policy and practice of failing to satisfy the notification requirements" and so "Defendants were not entitled to claim the tip credit." CMC ¶¶369-70. Plaintiffs may not

---

at 714. By the time the court even addressed "non-tipped" duties, it already concluded the defendants had violated the PMWA – rendering the discussion of "non-tipped" duties *dicta. Id.* In *Wright*, the defendants never responded to the plaintiffs' motions for summary judgment, thereby precluding a rigorous analysis of Pennsylvania law. *Wright*, 2018 U.S. Dist. LEXIS 180518, at *7.

now insert additional allegations. *Daugherty*, 2019 U.S. Dist. LEXIS 200436, at *44.

## III.   FLSA AND STATE TIP CREDIT NOTICE CLAIMS (Counts I, V, VII, XII, XIV, XV)

### A.   Plaintiffs' FLSA tip credit notice claim fails as a matter of law.

Defendants moved to dismiss the FLSA tip credit notice claim because reciting conclusory allegations and pleading no "recollection" of receiving a tip credit notice is insufficient to state a claim. Defendants also attached 9 of the 15 Named Plaintiffs' signed Tip Credit Notices that fully comply with FLSA notice requirements.[13] Plaintiffs do not dispute those signed Tip Credit Notices are genuine and integral to their tip credit notice claim.

### 1.   Plaintiffs failed to plead sufficient facts stating a tip credit notice claim.

Plaintiffs must plead sufficient factual matter to withstand a motion to dismiss. *Sida v. Pintura Constr. LLC*, No. 2:18-cv-00806, 2018 U.S. Dist. LEXIS 203080, at *3-4 (W.D. Pa. Nov. 30, 2018) (Hornak, J.). Plaintiffs' CMC does not plead sufficient factual matter to support a tip credit notice claim. Plaintiffs never once plead that they were not informed of the tip credit. Instead, Plaintiffs pled they "do not recall" being informed of the tip credit. A lack of recollection is insufficient to plead a viable claim. *See* ECF 139, p. 44; *Sherman v. Serv. Corp. Int'l*, No. 16-cv-0011, 2017 U.S. Dist. LEXIS 869, at *5 (N.D. Ohio Jan. 4, 2017).

Plaintiffs argue that Defendants hold them to an "impossible standard" of pleading something that did not happen (i.e., that they never received notice). ECF No. 148, p. 38. Yet it is actually quite simple. Plaintiffs needed only to plead they did not receive notice of the tip credit. Since Plaintiffs could not make such an allegation, they instead resorted to vague "beliefs" and "recollections" that form no ***factual basis*** for their claim. *See Vargas v. Gen. Nutrition Ctrs.,*

---

[13] Plaintiffs' state tip credit notice claims for Pennsylvania (Count VII), Maryland (Count XII), and Michigan (Count XIV) fail for the same reasons as their FLSA claim. ECF 139, pp. 54-55.

*Inc.*, Civ. No. 10-867, 2011 U.S. Dist. LEXIS 1155, at *24 (W.D. Pa. Jan. 6, 2011) (dismissing FLSA claims where plaintiffs relied only on vague speculation); *Lepkowski v. Telatron Mktg. Grp.*, 766 F. Supp.2d 572, 585 (W.D. Pa. 2011).

Since their "recollection" of events is not a sufficient factual allegation, Plaintiffs argue that Defendants "ignore" their more specific allegation that Defendants had a willful policy or practice of failing to provide tip credit notice, which they claim is factually sufficient to plead their claim. ECF 148, pp. 37-38. As Defendants explain (ECF 139, pp. 48-49), Plaintiffs' bare allegation of a willful policy or practice, without any supporting factual allegations, is nothing more than a threadbare recital of the elements of their claim and insufficient to withstand a motion to dismiss.[14] *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).

### 2. The Court can evaluate tip credit notices indisputably signed by Plaintiffs.

Plaintiffs never once refute that the Tip Credit Notices signed by 9 of the 15 Named Plaintiffs (and signed Handbook Acknowledgments) are genuine — because they cannot. Instead, they argue it is inappropriate for the Court to consider their ***own*** signed Tip Credit Notices, even though the notices are integral to Plaintiffs' claim and directly contradict their vague "recollections" of not receiving tip credit notice. Plaintiffs are wrong.

In deciding a 12(b)(6) motion, a court must consider undisputably authentic documents if the plaintiff's claims are based upon those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Even if not attached to the complaint, courts "may consider an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss…if that document is

---

[14] Plaintiffs claim they can escape dismissal because employers bear the burden of proving that tip credit notice was provided. ECF 148, p. 38. This misses the point. Regardless of Defendants' burden on the merits of a tip credit notice claim, it does not negate Plaintiffs' legal obligation to *first* plead a factually supported claim. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (question is not whether the claimant "will ultimately prevail...but whether his complaint [is] sufficient to cross the federal court's threshold."). Plaintiffs have failed to do so here.

integral to or explicitly relied upon in the complaint." *Kortyna v. Lafayette Coll.*, 726 F. App'x 934, 937 (3d Cir. 2018) (internal quotations omitted). Clearly, Plaintiffs' signed Tip Credit Notices are integral to Plaintiff's CMC because their ***entire*** tip credit notice claim is based on whether notice of the tip credit was provided—particularly since Plaintiffs do not dispute the authenticity of their own signatures.[15] *Negron v. Sch. Dist. of Phila.*, 994 F. Supp.2d 663, 664 n.1 (E.D. Pa. 2014) (plaintiff's signature on a document attached to motion to dismiss evidences notice to plaintiff). Therefore, the Court can consider the Notices signed by 9 Named Plaintiffs attached to Defendants' Motion. At a minimum, those claims must be dismissed.[16]

### 3.    Plaintiffs' contentions on the merits fail.

Because Plaintiffs cannot dispute the authenticity of their signed Tip Credit Notices or Handbook Acknowledgments, they attempt to dissect the tip credit language in those documents, suggesting Defendants be held to a strict notice standard that does not exist. ECF 148, pp. 39-40. Defendants' Motion demonstrates that their Tip Credit Notices stated, almost verbatim, the items in 29 C.F.R. §531.59(b). ECF 139, p. 51. Yet, Plaintiffs argue the Tip Credit Notice and Handbook policy provide insufficient notice because there is one minor, immaterial difference in wording between the two and neither defines "tip credit." ECF 148, p. 39, fn. 9.

The strict language and definition requirements proposed by Plaintiffs are not supported by the law. Plaintiffs cite no legal authority for the proposition that Defendants are required to

---

[15] Plaintiffs cite *Carnara v. Kenner*, No. 16-cv-7078, 2018 U.S. Dist. LEXIS 54039 (S.D.N.Y. Mar. 29, 2018), for the proposition that courts do not typically grant motions to dismiss FLSA claims. Unlike in *Carnara*, Plaintiffs here do not dispute that their signatures on the tip credit notices are genuine. Indeed, courts in this Circuit regularly grant motions to dismiss FLSA claims where plaintiffs, like here, failed to plead a sufficient factual basis for their claim. *See, e.g., Weigang Wang v. Saker ShopRites, Inc.*, No. 16-2443, 2017 U.S. Dist. LEXIS 11074 (D.N.J. Jan. 26, 2017); *Rosario v. First Student Mgmt. LLC*, No. 15-6478, 2016 U.S. Dist. LEXIS 108172 (E.D. Pa. Aug. 15, 2016); *Lepkowski v. Telatron Mktg. Grp.*, 766 F. Supp.2d 57 (W.D. Pa. 2011).

[16] Plaintiffs argue that "Defendants cannot rely on their handbooks to satisfy the tip credit notification requirements…" ECF 148, p. 39. While Plaintiffs are wrong, Defendants did not advance that argument in their Motion. Instead, the handbook is simply one of several methods through which Defendants provide ***additional*** notice of the tip credit. *See* ECF 139, p. 52. Nonetheless, Plaintiffs also do not dispute the authenticity of the Handbook Acknowledgments.

define the term "tip credit." To the contrary, employers are required only to ***inform*** employees of their intention to take the tip credit, ***not to explain*** the tip credit. *See, e.g., Acosta v. Las Margaritas*, Inc., No. 16-1390, 2018 U.S. Dist. LEXIS 216549, at *27 (E.D. Pa. Dec. 27, 2018) ("[C]ourts have uniformly held that — as stated in 29 U.S.C. §203(m) and 29 C.F.R. §531.59(b) — employers are required only to inform employees of their intention to take the tip credit, not to explain the tip credit."). Further, although employers are not required to recite verbatim the elements in §531.59 (*Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 556 (7th Cir. 2016)), the Notice here clearly aligns with 29 C.F.R. §531.59(b) (see chart at ECF 139, p. 51).[17]

## B.  The Ohio tip credit notification claim fails to state a claim (Count V).

Ohio employers must post a "summary" of Ohio wage-and-hour law drafted by the Ohio Director of Commerce. Ohio Rev. Code §§4111.09; 4111.13(A). Plaintiff Bailey never claims Defendants failed to post this summary at her restaurant or generally failed to do so. If this were true, it would not have been challenging to plead in the CMC.

Realizing this deficiency, Plaintiffs claim that the FLSA notice requirements are incorporated into Ohio law because the Director's summary is "parallel" (i.e., analogous) to the FLSA's explicit requirement that employees "be[] informed by the employer" of the tip credit. EFC 148, p. 32; 29 U.S.C. §203(m); 29 C.F.R. §531.59. It is not. Nothing in that summary requires tip credit notice. It simply requires employers "be able to show that tipped employees received at least the minimum wage when … wages and the tip credit amount are combined." *See* Rocco ¶7, Att. 5. If anything, the summary is analogous to the general FLSA posting requirement (29 C.F.R. §516.5), which is separate and apart from the tip credit notice

---

[17] In a last-ditch effort to save their tip credit notice claim, Plaintiffs allege that Defendants "cast aside" their allegation that Defendants failed to ensure that Plaintiffs earned the full minimum wage for all hours worked between wages and tips received. ECF 148, p. 38. In reality, Defendants fully addressed this argument. *See* ECF 139, pp. 53-54.

requirement. *Cf.* Rocco ¶8, Att. 6. Even if Ohio's posting obligation were construed as a tip credit notice requirement, §203(m) and §531.59 establish that the "Ohio notice requirement" is different from FLSA's requirement, and so the FLSA is inapplicable. *Cf. Schaefer v. Walker Bro. Enters., Inc.*, 10 CV 6366, 2014 U.S. Dist. LEXIS 177157, at *14 (N.D. Ill. Dec. 17, 2014).

The issue here is whether the Court can state Ohio law is so clear as to impose upon employers an FLSA tip credit notice requirement. No provision in the Ohio Constitution, Revised Code, or Administrative Code contains any such requirement. No ruling by an Ohio state court imposes any such requirement. The Director of Commerce's summary does not contain a "notification requirement." If anything, the summary conflicts with an FLSA style of notice. The Court cannot write into Ohio law or into the Director's summary of Ohio law a tip credit notice requirement that does not appear. *See Rice*, 2012 U.S. Dist. LEXIS 107471, at *15.

### C.    Plaintiffs Illinois tip credit notice claim fail (Count XV).

Plaintiffs appear to admit that a claim alleging violation of Illinois' law as to posting has different elements than a claim alleging violation of the FLSA tip credit notice requirement. ECF 148, p. 33. Yet, Plaintiffs still rely on conclusory allegations that Defendants failed "to satisfy the notification requirements in order...to claim the tip credit" in Illinois, without addressing what the Illinois law actually entails or how it was violated. ECF 148, p 28; CMC ¶¶ 18, 49, 362. Illinois law only requires a poster be on the premises – a simple fact to allege. 820 ILCS 105/9; *Schaefer*, 2014 U.S. Dist. LEXIS 177157, at *14 ("This posting is all that is required to comply with the IMWL."). Plaintiffs did not. Plaintiffs' misdirected Illinois notification allegations also fail to state a claim because the FLSA's notice requirements may not be considered when analyzing the Illinois posting law. *Schmidt v. Smith & Wollensky*, 268 F.R.D. 323, 327 n.4 (N.D. Ill. 2010); *Driver v. AppleIllinois, LLC*, 917 F. Supp.2d 793, 800 (N.D. Ill. 2013) ("IMWL

expressly directs what the employer is required to post: the summary approved by the IDOL. The

court cannot add a requirement to comply with the greater [notification] obligation under FLSA

§ 203(m).")". Since Plaintiffs did not allege a failure to post the IMWL poster, this claim fails.

## IV.   FLSA AND STATE OVERTIME CLAIMS (Counts IV, VI, IX, XVII)

### A.   Plaintiffs' FLSA overtime claim fails on the pleadings (Count IV).

Plaintiffs contend the overtime claims of McKeel and Caperna should survive because

they cited two "examples" of "specific paychecks and alleged actual dollar amounts" that were

underpaid. ECF 148, p. 44. These two paychecks, attached to the CMC, form the entire factual

basis for Plaintiffs' FLSA overtime claim. CMC ¶¶ 212-218. A simple review of the paystubs

directly contradicts Plaintiffs' claims and establishes there was no overtime pay violation for

McKeel or Caperna. Since Plaintiffs cannot refute their actual paystubs, they ironically argue the

Court is barred from considering the specific paychecks. Plaintiffs cannot have it both ways.

### 1.   The Court must consider the paystubs Plaintiffs attached to their CMC.

Under Plaintiffs' theory, the Court is prohibited from considering whether the two

paystubs – which Plaintiffs themselves attach to their CMC and rely on as the sole "factual"

allegations for their claim – indeed reflect what Plaintiffs plead. ECF 148, pp. 44-45. This

conflicts with Third Circuit precedent *requiring* consideration of exhibits attached to a

complaint. *See Hughes v. UPS,* 639 F. App'x 99, 103 (3d Cir. 2016) ("In deciding a Rule

12(b)(c) motion, a court must consider…exhibits attached to the complaint…"); *Pension Ben.*

*Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

A "document integral to or explicitly relied upon in the complaint may be considered

without converting the motion [to dismiss] into one for summary judgment." *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). "The rationale

underlying this exception is that the primary problem raised by looking to documents outside the

complaint – lack of notice to the plaintiff – is dissipated 'where plaintiff has actual notice...and has relied upon these documents in framing the complaint.'" *Id.* (citation omitted). The same analysis applies here. Even if the Court ignores Defendants' declarations that provide context to the two paystubs at issue, it must consider ***the paystubs themselves***. Plaintiffs cannot rely on their own mischaracterizations of their actual paystubs attached to the CMC, without the Court even considering the content of those paystubs. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

### 2.    The paystubs Plaintiffs attach to the CMC do not state a claim.

As Defendants' explain (ECF 139, pp. 60-61), Plaintiff Caperna's paystub (CMC, Ex. B) contains all facts necessary to establish no overtime pay violation. She was entitled to $158.40 in cash wages plus $813.68 in earned tips. *See* ECF 139, pp. 60-61. For that week, the paystub shows $258.72 cash wages plus $813.68 in tips. By definition, Caperna has no claim for unpaid overtime because ***her pay exceeded the minimum guaranteed to her by law***. *Field v. DIRECTV LLC*, No. 14-4427, 2015 U.S. Dist. LEXIS 193177, at *8 (E.D. Pa. Aug. 21, 2015).

Similarly, Plaintiff McKeel's paystub (CMC, Ex. A) shows no overtime pay violation. Plaintiffs present her paystub as an alleged "prime example" of Defendants' supposed practice of paying an incorrect overtime rate to employees who work both tipped and non-tipped jobs during a workweek. But the face of the paystub shows no violation. [18] The paystub shows a standard tipped minimum wage rate and an overtime rate, establishing McKeel worked only in a tipped position during that workweek. CMC, Ex. A. As a simple review of the paystubs attached to the CMC shows that neither Caperna's nor McKeel's paystub support Plaintiffs' theory, Plaintiffs' FLSA overtime claim fails as a matter of law and must be dismissed.

### 3.    There are no factual allegations of an FLSA overtime violation.

---

[18] Plaintiffs do not contest the accuracy of the overtime calculation for McKeel's paystub as a tipped employee.

"It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint." *Zimmerman*, 836 F.2d at 181. Plaintiffs plead no factual allegation sufficient to survive Defendants' Motion. CMC ¶¶212-218. While Plaintiffs vaguely contend there are "other examples" of overtime violations, they plead nothing in support. *Id.* Plaintiffs' FLSA overtime claim is brought by ***only two of the fifteen Named Plaintiffs — neither of whom have sufficiently pled an overtime violation***. The CMC pleads no facts showing Caperna, McKeel, or any of the other 13 Named Plaintiffs were underpaid for overtime in a particular workweek. *See Attanasio v. Cmty. Health Sys.*, No. 3:11-CV-583, 2011 U.S. Dist. LEXIS 121764, at *22 (M.D. Pa. Oct. 20, 2011) (dismissing plaintiffs' FLSA overtime claim because "[a] FLSA pleading requires some coherent approximation of the time owed").

Plaintiffs fail to distinguish *Davis v. Abington Mem. Hosp.*, 765 F.3d 236 (3d Cir. 2014). The court dismissed the plaintiffs' overtime claim because they failed to allege "a single workweek in which [they] worked at least forty hours and also worked uncompensated time in excess of forty hours." *Id*. at 243. Likewise, Plaintiffs here plead globalized assertions as to the general loss allegedly suffered, but the facts alleged make no attempt to offer an individualized amount. Therefore, Plaintiffs' overtime claim is facially deficient and must be dismissed.

**B.      Plaintiff's Ohio (Count VI) and Illinois (Count XVI) overtime claims fail.**

Plaintiffs failed to adequately plead Ohio and Illinois overtime claims because the CMC only recites basic elements of the law followed by a single, conclusory allegation for each Plaintiff. *See* ECF 139, pp. 47-48; CMC ¶¶302, 376. These allegations fail to provide sufficient notice as to how the overtime laws were violated, and Plaintiffs fail to point to any supporting allegations. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).

Plaintiffs now argue their state overtime claims are derivative of their state tip credit

claims. *See* ECF 148, pp. 38-39. This was not asserted in the CMC and may not now be asserted in responding to a motion to dismiss. *Penn. ex. rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Further, disregarding McKeel's overtime claim that relies on an exhibit, it would defy logic to assert state overtime claims completely tied to the success of state tip credit claims in only two of the remaining four states for which the state tip credit claims were made. Regardless, these claims fail for the same reasons the related state tip credit claims fail.

## V.     STATE WAGE PAYMENT CLAIMS (Counts VIII and X)

The Pennsylvania WPCL claim (Count VIII) fails because it does not identify a contractual obligation to pay the wages it seeks to recover. Instead, Plaintiffs claim Defendants' obligation arose out of the PMWA and rely on *Lugo v. Farmers Pride, Inc.,* 967 A.2d 963 (Sup. Ct. Pa. 2009). ECF 148, pp. 42-43. But that court has more recently held a contractual obligation is necessary. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Sup. Ct. Pa. 2011). Federal courts have rejected *Lugo*. *Vasil v. Dunham's Athleisure Corp.*, No. 2:14-cv-690, 2015 U.S. Dist. LEXIS 36894 (W.D. Pa. Mar. 23, 2015); *Drummond v. Herr Foods Inc.*, No. 13-5991, 2014 U.S. Dist. LEXIS 2409 (E.D. Pa. Jan. 9, 2014). Plaintiffs' WPCL claim must therefore be dismissed.

Plaintiffs waived opposition to dismissing their West Virginia WPCL claim (Count X) by failing to address the claim. *Acosta v. Holland Acquisitions, Inc.*, No. 2:15-cv-1094, 2018 U.S. Dist. LEXIS 202118, at *10-11 (W.D. Pa. Nov. 29, 2018); *Lawson v. Barger*, No. 17-cv-97, 2018 U.S. Dist. LEXIS 176857, at *7 n.2 (W.D. Pa. Oct. 12, 2018).

## VI.    CONCLUSION

For these additional reasons, the Counts addressed in Defendants' Motion and above should be dismissed.

Date: February 27, 2020          Respectfully submitted,

/s/ Adam J. Rocco
Adam J. Rocco (Ohio Bar No. 0083807)
Michael C. Griffaton (Ohio Bar No. 0062027), *pro hac vice*
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6286
Facsimile: (614) 719-4804
E-mail: ajrocco@vorys.com
E-mail: mcgriffaton@vorys.com

*Attorneys for Defendant Bob Evans Restaurants, LLC*

/s/ Michael J. Shoenfelt
Jonathan R. Vaughn (Ohio Bar No. 0022897)
Michael J. Shoenfelt (Ohio Bar No. 0091154)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-5672
Facsimile: (614) 719-5010
jrvaughn@vorys.com
mjshoenfelt@vorys.com

*Attorneys for Defendant Bob Evans Farms, Inc. and Bob Evans Farms, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of February, 2020, a copy of the foregoing was transmitted electronically to the CM/ECF filing system for filing and transmittal along with copies transmitted to all counsel of record in the CM/ECF system.

/s/ Michael J. Shoenfelt
Michael J. Shoenfelt

2/27/2020 35554737 V.8