IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIFFANY WILLIAMS ET AL.,           )
                                   )
              Plaintiffs,          )
                                   )       2:18-cv-01353
              v.                   )
                                   )
BOB EVANS RESTAURANTS, LLC ET      )
AL.,                               )
                                   )
              Defendants.

## OPINION

**Mark R. Hornak, Chief United States District Judge**

In this consolidated action, the Plaintiffs, fifteen (15) "tipped employees" who worked at Bob Evans-branded restaurants, on behalf of themselves and several proposed classes, allege twenty (20) wage and hour claims against the Defendants under federal and state law. Now before the Court are the Defendants' Motions to Dismiss for Failure to State a Claim.

## I.   BACKGROUND

This action was comprised of three (3) now-consolidated lawsuits brought by various Plaintiffs against three (3) corporate Defendants associated in one way or another with the Bob Evans restaurant chain. (*See* ECF No. 128.) After the Court's most recent Order consolidating the cases, the Plaintiffs filed a Second Amended Consolidated Master Complaint ("SACMC"), asserting twenty (20) causes of action under federal and state law. (ECF No. 130.) Those causes of action embrace minimum wage, tip credit notification, and overtime violations under: (1) the Fair Labor Standards Act ("FLSA") (Counts I, II, III, and IV); (2) Ohio law (Counts V and VI); (3) Pennsylvania law (Counts VII, VIII, and IX); (4) West Virginia law (Counts X and XI); (5) Maryland law (Counts XII and XIII); (6) Michigan law (Count XIV); (7) Illinois law (Counts XV,

1

XVI, and XVII); and (8) New York Law (Counts XVIII, XIX, and XX). (*Id.*) The Plaintiffs also filed a Motion for Conditional Certification, Approval of Proposed Notice Procedure and Equitable Tolling. (ECF No. 141.)

The Defendants have filed two (2) Motions to Dismiss under Rule 12(b)(6). The first Motion was filed solely by Defendant Bob Evans Farms, Inc. ("BEF Inc.") and seeks dismissal of all claims as to it. (ECF No. 138.) The second Motion was filed by BEF Inc., Bob Evans Farms LLC ("BEF LLC"), and Bob Evans Restaurants LLC ("BER") (collectively "the Defendants"). (ECF No. 139.) The latter Motion is a partial Motion to Dismiss the majority of the Plaintiffs claims, namely dismissal of Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XII (partially), XIV, XV, and XVI. (*Id.* at 1.)

## II.   **LEGAL STANDARD**

### a.   **Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When determining whether dismissal is appropriate, the Court must: "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017). "A Rule

12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012). Further, the Court will disregard legal conclusions and bare recitals of the elements of a cause of action that are supported by mere conclusory statements. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).

> **b.  Case Management**

Before the Court are the aforementioned Motions to Dismiss as well as the Plaintiffs' Motion for Conditional Certification. Accordingly, the Court must also determine in what order to address these Motions. The Defendants, in their Response to the Plaintiffs' Motion for Conditional Certification, argue that the Court should address their dispositive Motions prior to the Plaintiffs' Motion. (ECF No. 145, at 11.) The Plaintiffs did not address this question in their Motion for Certification or their Reply to the Defendants.

The Court agrees with the Defendants, and with other courts from this Circuit, that it should resolve the Motions to Dismiss first, as those decisions will affect the scope of any conditional class certification that might otherwise be appropriate. *See, e.g.*, *Babcock v. Butler Cnty.*, No. 12CV394, 2014 WL 688122, at *3 (W.D. Pa. Feb. 21, 2014), *aff'd*, 806 F.3d 153 (3d Cir. 2015) ("this Court finds that deciding the Motion to Dismiss prior to the Motion for Conditional Class Certification is both judicially fair and efficient."); *Morrow v. Cnty. of Montgomery, Pa.*, No. CIV.A. 13-1032, 2014 WL 348625, at *6 (E.D. Pa. Jan. 31, 2014) (granting defendant's motion to dismiss as to one count prior to ruling on plaintiffs motion for conditional class certification); *Reilly v. Ne. Revenue Servs., LLC*, No. 3:12-CV-02312, 2013 WL 3974181, at *1 (M.D. Pa. Aug. 1, 2013) ("based on the alleged facts, it is appropriate, fair, and judicially efficient to address the material issue raised by the motion to dismiss (whether the refuse fee is a debt under the FDCPA)

prior to addressing class certification"). *See also McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012) ("a motion to dismiss for failure to state a claim tests the sufficiency of the complaint, and although a Rule 12(b)(6) dismissal operates as a final decision on the merits if leave to replead is not granted, it is sometimes appropriate to decide a Rule 12(b)(6) motion ahead of class certification."). The Court will therefore resolve the Defendants' Motions to Dismiss, and will, with one exception, grant the Plaintiffs leave to file a Third Amended Consolidated Master Complaint as to any dismissed claims, all on the terms set out in this Opinion.

## III.   DISCUSSION

The Court will begin by addressing the Motion to Dismiss at ECF No. 138, which is brought solely by Defendant BEF Inc. ("BEF Inc. Motion"). The Court will then address the Motion to Dismiss at ECF No. 139 ("All Defendants Motion").

### a.   BEF Inc. Motion

The FLSA requires that the Defendants be the Plaintiffs' "employer" in order to be subject to the law's restrictions, and a court's inquiry often begins with that threshold question. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014). The BEF Inc. Motion seeks the dismissal of all counts as to Defendant BEF Inc because it alleges that it was not the Plaintiffs' employer in any sense relevant under the FLSA, and importantly at this stage, was not sufficiently alleged to be so. (ECF No. 138, at 9–10.) Therefore, it argues it is not liable under the FLSA and similar state law causes of action.

#### i.   The Parties' Arguments

BEF Inc. concedes that at all relevant times it has been the parent corporation of BEF LLC, but notes that BEF LLC managed and operated the restaurants that employed the Plaintiffs. (*Id.* at 11.) Such was the case, they argue, until BER, a wholly owned subsidiary of a separate private

equity firm, acquired all of the restaurant business on April 28, 2017. (*Id.*) BEF Inc. and BEF LLC are now allegedly in the exclusive business of selling refrigerated food products. (*Id.*) BEF Inc. notes that the SACMC solely alleges that the Plaintiffs either worked for "Bob Evans" or "Defendants," not that they were specifically employed by BEF Inc. (*Id.* at 12.) It further notes that three (3) named Plaintiffs worked at Bob Evans restaurants entirely and only after the April 2017 sale of the restaurant business to BER, which they argue means those Plaintiffs could have only been employees of BER. (*Id.* at 12–13.)

BEF Inc. also says it is not a "single enterprise" or "joint employer" with BEF LLC or BER such that liability under the FLSA would attach, as the Plaintiffs claim. (*Id.* at 15.) They argue that the Plaintiffs' characterization of all three Defendants is "monolithic" and ignores that they are three distinct corporate entities. (ECF No. 152, at 5.) BEF Inc. also takes issue with the fact that the Plaintiffs refer to the Defendants collectively throughout the SACMC, and go on to say that this failure to differentiate is reason enough to dismiss the claims as to BEF Inc. (*Id.* at 6.)

Plaintiffs respond that BEF Inc.'s Motion is essentially making pre-discovery, fact-based arguments, and that Plaintiffs nonetheless have sufficiently alleged that BEF Inc. was their employer and/or joint employer. (ECF No. 147, at 1.) For purposes of the FLSA standard for "employer" under the Third Circuit's *Enterprise* test, the Plaintiffs go on to cite several portions of their SACMC where they allege that the Defendants (cumulatively and thus inclusive of BEF Inc.) had the power to hire/fire the Plaintiffs, controlled the conditions of employment, determined the rate and method of pay, and maintained employment records. (*Id.* at 4–7.) Therefore, the Plaintiffs argue that they are entitled to discovery on these issues. On the "joint employer" standard, the Plaintiffs again point to several paragraphs of the SACMC that, they argue, sufficiently plead the elements for a joint employer under the *Enterprise* test. (*Id.* at 9.)

### ii. Analysis

The Plaintiffs pleaded that the Defendants collectively are a "single enterprise" and/or a "single and joint employer" under the FLSA. (SACMC, ECF No. 130, ¶ 124–26.). Defendants argue that the test for "single enterprise" and "single employer" theories are the same. (ECF No. 138, at 9 (citing *Katz v. DNC Servs. Corp.*, No. 16-5800, 2019 U.S. Dist. LEXIS 167647, at *19-20 (E.D. Pa. Sep. 27, 2019).) In their Response in Opposition to the BEF Inc. Motion, the Plaintiffs do not rebut this argument and contend instead that they sufficiently pleaded that BEF Inc. is an "employer," "single employer," and "joint employer" under the FLSA. (ECF No. 147, at 1, 4.) However, it is unclear whether the Plaintiffs conflate "employer" and "single employer," as that term is used in the FLSA context. (*See id.* at 4 (discussing the test for an *employer* and then stating straightaway that the "Plaintiffs have clearly alleged in multiple places that each Defendant, including BEF, was a *single employer* of each Plaintiff." (emphasis added))); *Katz*, No. CV 16-5800, 2018 WL 692164, at *3 (discussing the difference between single and joint employer status). In any case, the Court concludes that the SACMC on its face fails to sufficiently plead in a non-conclusory manner that BEF Inc. was any form of "employer" under the FLSA.

#### ***Employer***

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Additionally, an "employee" is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" means "to suffer or permit to work," *id.* § 203(g). In determining whether someone is an employee under the FLSA, the "economic reality rather than technical concepts is to be the test of employment." *In re Enterprise Rent-A-Car*, 683 F.3d 462, 467 (3d Cir. 2012) (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). Therefore, the FLSA defines employer "expansively" and

"with striking breadth." *Id.* (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). The Third Circuit has also referred to this direct employer-employee relationship as a "theory of primary liability." *Thompson*, 748 F.3d at 148.

### *Joint Employer*

Two or more distinct entities can exert significant control over the same employee such that they are "joint employers." *Enterprise*, 683 F.3d at 468. Analyzing whether an entity is a "joint employer" for purposes of the FLSA requires looking to several, non-exclusive factors in relation to the alleged employer's:

1) authority to hire and fire the relevant employees;
2) authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;
3) involvement in day-to-day employee supervision, including employee discipline; and
4) actual control of employee records, such as payroll, insurance, or taxes.

*Id.* at 469. The Court may also consider the totality of the circumstances, economic realities, and other information suggesting "significant control," which can be persuasive in conjunction with the enumerated elements of the test. *Id.* at 470.

### *Single Employer*

The "single enterprise" or "single employer" construct is distinct from a joint-employer under the FLSA. "[A] finding that companies are 'joint employers' assumes in the first instance that companies are 'what they appear to be'—independent legal entities that have merely 'historically chosen to handle jointly . . . important aspects of their employer-employee relationship.'" *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 564 n.44 (E.D. Pa. 2011) (citing *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)).

On the other hand, the single employer/enterprise theory examines whether "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." *Id.* (citing *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 401 (1960)). The analysis here also has four elements: (1) the interrelation of operations between the corporations; (2) whether the corporations share common management; (3) whether there was centralized control of labor relations; and (4) whether there existed common ownership or financial control. *Katz*, No. CV 16-5800, 2018 WL 692164, at *3 (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).

The Plaintiffs' factual allegations in the SACMC speak of the Defendants collectively, rather than alleging facts specific to BEF Inc. that would permit a determination of its particular form of alleged liability, or lack thereof. The Plaintiffs have instead pleaded that *all* Defendants, inclusive of BEF Inc., owned/operated/managed the restaurants that employed the Plaintiffs. (ECF No. 130, ¶ 1.) They pleaded that "Defendants" are allegedly responsible for all of the illegal employment practices alleged in the SACMC. (*Id.* ¶ 2.) They pleaded that the Defendants "are/were a single and joint employer with a high degree of interrelated and unified operations, sharing common management between restaurant locations, sharing common employees between locations, as well as sharing common human resources and payroll services." (*Id.* ¶ 126.) Separately, the Plaintiffs allege the Defendants have operated as a "single enterprise," with unified operations and a common business purpose. (*Id.* ¶ 124.) The Plaintiffs argue that by pleading that the Defendants (collectively) employed the Plaintiffs, they have sufficiently pleaded that *each* Defendant, including BEF Inc., had the power to hire and fire, control conditions of employment, determine pay, and maintain employee records. (*See* ECF No. 147, at 5–7 (citing the SACMC).)

The Plaintiffs' insistence on referring to the Defendants collectively and failing to plead individual facts as to each Defendant is fatal to the validity of the claim that BEF Inc. was their single or joint employer. The *Davis* Court held that both a "single enterprise" and "joint employer" theory require the Plaintiffs to plead which of the Defendants is the Plaintiffs' "nominal employer," i.e. what is the "primary employment-employer relationship." 817 F. Supp. 2d at 564–65. The plaintiffs in *Davis* sued 86 entities, but failed to allege that one or several were their primary employers. *Id.* at 564. Instead they contended that all 86 defendants benefitted from their labors and were thus "economically dependent" on each other. *Id.* at 563–64. However, the complaint lacked any factual support to allow the court to determine whether the defendants were joint-employers or part of a single enterprise. The court wrote that while those 86 entities *could* be acting jointly to control the terms of plaintiffs' employment, "the Court cannot assess whether a joint-employer relationship exists without facts alleging the basic terms of the primary employment-employer relationship." *Id.* at 564. Similarly, the same pleading deficiencies prevented the court from determining whether any defendants were "primary violators" or subject to "derivative liability" under a single or joint employer theory.[1] *Id.* at 565.

By referring to all three Defendants collectively in this case, the Plaintiffs similarly fail to "differentiate" between them and identify which of the three was their "primary, direct employer," and when. *See Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1129 (N.D. Ill. 2017). *Ivery*, like the case here, dealt with three defendants, where two conceded they were direct employers, but disputed that the third was a joint employer. *Id.* at 1128. The *Ivery* Court stated that the

---

[1] The Defendants proffer cases from three other courts that have ruled similarly, which the Court finds persuasive. *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 10 (1st Cir. 2012) ("some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible"); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (noting in dicta that plaintiff's "actual and direct employer is an essential element of notice pleading" involving related defendants); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017) (discussed above).

plaintiffs' failure to allege a primary employer relationship "alone is enough to sink" the joint employer claim. *Id.* at 1129. *Ivery* is additionally persuasive here because the pleadings in that case were similarly conclusory. The *Ivery* complaint stated, *inter alia*:

1. "Defendants share control over the terms and conditions of [assistant managers'] employment";
2. "Each Defendant, directly or indirectly and jointly or severally, directed the terms of employment and compensation of Plaintiff"; and
3. "Each Defendant had the power to control the terms and conditions of employment of Plaintiff."

*Id.* Here, the two of the key paragraphs of the SACMC are similar:

1. During the statutory period covered by this Complaint, Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated the Bob Evans restaurants throughout the country under common control for a common business purpose. (ECF No. 130, ¶ 124.)
2. Defendants are/were a single and joint employer with a high degree of interrelated and unified operations, sharing common management between restaurant locations, sharing common employees between locations, as well as sharing common human resources and payroll services. All of Defendants' locations share the common labor policies and practices complained of herein. (*Id.* ¶ 126.)

This comparably conclusory language consists of bare legal conclusions not entitled to credit at the motion to dismiss stage. *Ivery*, 280 F. Supp. 3d at 1129 ("These sorts of conclusory allegations are not entitled to a presumption of truth."). Further, they prevent the Court from assessing the exact nature of the employer-employee relationship that is being asserted.

Some courts have been rather forgiving of such FLSA pleadings. In *Thompson v. Real Estate Mortg. Network*, the Third Circuit reversed a 12(b)(6) dismissal of an FLSA claim. 748 F.3d at 148–49. The *Thompson* Court held that the plaintiff sufficiently pleaded that two (2) corporate defendants were liable under the FLSA under both primary and joint employer liability.[2] The court noted that the bar at this early stage is low, especially for low-level employees who "had no opportunity for discovery as to payroll and taxation documents, disciplinary records, internal

---

[2] The plaintiff in *Thompson* named two individual defendants in their personal capacities as well.

corporate communications, or leadership and ownership structures." *Id.* at 149. The court further stated that there were various facts pleaded that put the defendants on notice that the alleged violations occurred during the plaintiff's employment with both corporate defendants, as well as facts supporting that the defendants were the plaintiff's direct or joint employers. *Id.* But an examination of the facts in *Thompson* demonstrate that its inclination towards pleading leniency does not apply to what has been alleged here.

First, the complaint in *Thompson* differentiated between the defendants and provided at least some detail supporting the plaintiff's joint employer theory. For instance, the complaint stated that an employee of one defendant conducted the plaintiff's training after she was hired by the other defendant, suggesting the authority to "promulgate work rules and assignments." *Id.* The complaint also stated that an employee of one defendant described the other defendant as their "sister company," suggesting "some broader degree of corporate intermingling". *Id.* Lastly, the complaint discussed how former employees of one defendant were "abruptly and seamlessly integrated" into the operations of the other defendant, some of whom continued to be paid by the former employer, which evidenced shared authority over hiring and firing practices. *Id.*

The SACMC here, viewed under a similarly lenient light at this early stage, does make seemingly fact-based allegations that suggest that discovery could bear their claims. The Plaintiffs allege that they are employees "who work or have worked at restaurants operating under the trade name Bob Evans that are/were owned and operated and/or managed by Defendants Bob Evans Farms, Inc., Bob Evans Farms, LLC, and Bob Evans Restaurants LLC, (collectively, 'Defendants' or 'Bob Evans'), and have been subject to the unlawful practices detailed herein." (ECF No. 130, ¶ 1.) They further allege that the Defendants (cumulatively) are responsible for the restaurants' labor policies, had the power to hire and fire employees, control various conditions of employment,

maintain records, and share common management, common employees, and common human resources and payroll services. (*See* ECF No. 147, at 4–7 (citing the SACMC).) However, the cases already discussed, and others, counsel that the Plaintiffs must make some more than *de minimis* factual allegations with respect to *each* defendant's role in the employer-employee relationship in order to support a single or joint employer theory. *See, e.g.*, *Mackereth v. Kooma, Inc.*, No. CIV.A. 14-04824, 2015 WL 2337273, at *6 (E.D. Pa. May 14, 2015) (joint employer case); *DiFlavis v. Choice Hotels Int'l, Inc.*, No. CV 18-3914, 2019 WL 1505860, at *2–5 (E.D. Pa. Apr. 5, 2019) (same); *Bedolla v. Brandolini*, No. CV 18-146, 2018 WL 2291117, at *5 (E.D. Pa. May 18, 2018) (same). This lack of critical differentiation is further accentuated by the Plaintiffs' allegations couched in competing temporal terms, e.g. "are/were," or in competing relationship terms, e.g. "owned and operated and/or managed." (ECF No. 130 at ¶1).

The second key difference between *Thompson* and this case is that there were two (2) rather than three (3) corporate defendants in *Thompson*. And as such, the Third Circuit had no issue concluding that the plaintiff had properly pleaded that both defendants were her direct employer. *Id.* at 148. That is, the court concluded the plaintiff's complaint properly pleaded that the defendants were both ordinary, direct "employers" *and* "joint employers" under the FLSA. The court wrote, "[t]he pleadings here put the corporate defendants on fair notice that the alleged violations began during [plaintiff's] employment with [one corporate defendant] and persisted throughout her relatively brief tenure with the two companies." *Id.* The defendants tried to argue that the plaintiff failed to plead a direct employer theory because her "allegations improperly group all defendants—individual and corporate—together and fail to differentiate between them as to alleged wrongful conduct," an argument not far removed from that of BEF Inc. here. *Id.*

(quotations and alterations omitted). The court rejected that argument and vacated the district court's dismissal of the plaintiff's claims under a theory of primary liability.

Here, the Plaintiffs do not allege they worked for one defendant followed by another, thus yielding primary liability as to each in turn. With three corporate defendants, two of whom necessarily overlap given that the Parties agree that BEF Inc. is the parent corporation of BEF LLC, the Court cannot readily say that the Plaintiffs have properly pleaded a theory of primary liability as to BEF Inc. Perhaps at some point BEF Inc. was the direct and primary employer of Bob Evans restaurant servers like the Plaintiffs, and that role was then handed off to BEF LLC, its subsidiary, after a corporate restructuring or change in management philosophy. Or perhaps it went in reverse order. Nonetheless, it is apparent that by the Plaintiffs naming *both* BEF Inc. and BEF LLC as Defendants here, with full knowledge that the former is the parent corporation of the latter, (*see* ECF No. 130, ¶ 116), one of at least two things would have to be true for FLSA liability to attach. Either (1) both were separately the Plaintiffs' direct employers, (2) there is some form of single or joint employer liability by which both entities are concurrently liable under the FLSA, or perhaps there is a third option, such that at varying times both could be true. However, the SACMC does not say. By pleading in some version of an "all of the above" fashion without basic differentiation, the Court cannot determine how BEF Inc. could be liable, "either as a primary violator[], or through any derivative liability theory," *Davis*, 817 F. Supp. 2d at 565, and more importantly, it does not give fair notice of the nature of the claims actually being asserted.

Thus, the SACMC fails to plead sufficient facts upon which the Court could conclude that BEF Inc. is the Plaintiffs' direct employer, a joint employer, or that some combination of the Defendants is a single employer/enterprise. And by also lumping all Defendants into one, the sufficiency of the allegations relative to economic realities and other key factors cannot be assessed

within and from the allegations as written. For these reasons, Defendant BEF Inc.'s Motion to Dismiss at ECF No. 138 will be granted and all claims against it shall be dismissed without prejudice.[3] Because the Court cannot conclude that any further effort at amendment would be futile, that form of dismissal will come with one more opportunity for the Plaintiffs to amend, but it also comes with a significant notice from the Court.

This will be the *third* amended complaint, which means that it is actually the *fourth* complaint document.[4] At some point, even under the very liberal amendment standards our Court of Appeals has mandated, a court should properly say "enough is enough." This Court may soon be arriving at the point where any further amendment beyond that authorized here will be pointless, as the pleader will have been unable to make its case notwithstanding many tries. The fundamental pleading shortcoming here is one that was avoidable. As in every civil action, the Plaintiffs were required to set out what they believe each specific Defendant did to violate the law, and how it was that each such specific Defendant was a potentially culpable party under the involved statute. Simply referring generally to "the Defendants" or pleading only legal conclusions does not cut it.

To the extent the applicable principle in federal civil litigation ever was "where there is smoke, there must be fire," since the *Iqbal* line of cases, that is no longer the case. Some specific "showing" must be made in the pleadings to the Court to back up an asserted claim and as to alleged liability as to one or more of the Defendants. If the Plaintiffs have a case to be made against

---

[3] The Plaintiffs' state law claims against BEF Inc. are also dismissed as the Plaintiffs failed to respond to the Defendants' assertion, (ECF No. 138, at 9), that the failure to adequately plead BEF Inc.'s "employer" status under the FLSA is likewise fatal to their state law claims. Thus, it is deemed unopposed. *See Acosta v. Holland Acquisitions, Inc.*, No. 2:15-CV-1094, 2018 WL 6242231, at *3 (W.D. Pa. Nov. 29, 2018).

[4] So far, at this docket number, there has been a Complaint, (ECF No. 1), a First Amended Complaint, (ECF No. 10), an Amended Complaint, (ECF No. 60), and a Second Amended Complaint, "Consolidated Master," (ECF No. 130). That actually makes four (4) prior such filings, but the Court will apply a "discount" for ECF No. 130, as it facilitated the consolidation of three cases—this case, 18-cv-01353, along with 19-cv-00082 and 19-cv-00921.

one or more Defendants, now is the time to plead it, with the necessary detail to make the showing required by the law as to each specific Defendant.

### b.  All Defendants Motion

The Defendants also seek dismissal of a majority of the Plaintiffs' claims, including all claims for relief under the FLSA. In all, the Defendants identify fourteen (14) Counts to dismiss either in whole or in part. The Counts fit generally into four (4) groups: (1) "dual jobs" claims under the FLSA and state law; (2) tip credit notification claims under the FLSA and state law; (3) overtime claims under the FLSA and state law; and (4) claims under various state wage payment collection laws. In addressing each Count, the Court will proceed in the same order as they are laid out in the Defendants' Motion to Dismiss.

### i.  Counts II and III (FLSA Dual Jobs Claims)

The Plaintiffs bring Count II for minimum wage violations under the FLSA for unpaid wages for non-tipped duties that were *unrelated* to the Plaintiffs tipped occupation. The alleged unrelated duties include responsibilities like sweeping, mopping, preparing dessert, and baking bread. (ECF No. 130, ¶¶ 10, 230.) Count III is for FLSA minimum wage violations for allegedly requiring the Plaintiffs to spend more than 20% of their work-week performing non-tipped duties that were *related* to their tipped occupation. Such related duties include setting and bussing tables, brewing coffee, and rolling silverware. (*Id.* ¶¶ 10, 231.)

Both of these claims stem from the so-called "Dual Jobs Regulation" under 29 C.F.R. § 531.56(e). That regulation prevents employers from paying sub-minimum wage to an employee with "dual jobs," where one job receives tips in addition to salary and the other does not. Under the regulation, employers can only take a tip credit (i.e., pay sub-minimum wage as long as tips make up the difference) for the hours that the employee works in the tipped occupation. The

regulation provides the example of a hotel employee who is both a maintenance man and a waiter. *Id.* In that instance, the employer can only take a tip credit for the hours the employee worked as a waiter. *Id.* The employer must pay the employee full minimum wage for hours he worked as a maintenance man, because that job is completely unrelated to his other job waiting tables. *Id.* The other example in the regulation is of a "waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses." *Id.* (emphasis added). That employee could be paid sub-minimum wage (supplemented by tips) for all hours worked, in spite of the fact that she is performing some duties for which she receives no tips, like making coffee, as long as those duties are only occasional and are related to her tipped occupation of being a waitress.

As discussed in depth below, the line becomes blurred where non-tipped duties that are "related" to the tipped occupation, like the occasional washing of dishes, take up an inordinate amount of time. The Plaintiffs argue that the upper limit that an employee can perform non-tipped duties related to their tipped occupation is twenty (20) percent of their overall hours—the so-called "20% rule." The line is also blurrier where an employee performs work that is so unrelated to their job that they are essentially a "dual jobs" employee, like the maintenance man and waiter. The Plaintiffs allege that certain of their non-tipped duties were so unrelated to their jobs as Bob Evans servers that, for purposes of the FLSA, they were dual-jobs employees, meaning the Defendants violated the FLSA by taking a tip credit for *all* of the hours they worked. The Department of Labor ("DOL") has issued opinions and guidance to address the vagueness in the Dual Jobs Regulation, and it is the Parties' dispute over that guidance which animates much of the argument over Claims II and III.

### Count III (20% Rule)

The question presented as to Count III is whether a 20% threshold is the correct interpretation of the Dual Jobs Regulation. The Plaintiffs argue that the Court should look to the DOL's former Field Operations Handbook ("FOH"), which stated that the Dual Jobs Regulation should be interpreted to mean that non-tipped, related duties cannot make up more than 20% of a non-tipped employee's hours. Before 2018, the FOH stated, "where the facts indicate that tipped employees spend a substantial amount of time (i.e., *in excess of 20 percent of the hours worked in the tipped occupation in the workweek*) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance." *Reynolds v. Chesapeake & Delaware Brewing Holdings, LLC*, No. CV 19-2184, 2020 WL 2404904, at *5 (E.D. Pa. May 12, 2020) (emphasis added) (quoting U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(1)–(4) (rev. Dec. 15, 2016)).

Defendants argue that the prior FOH was never the benchmark for analyzing how many hours tipped employees can perform non-tipped, but related duties. The Defendants say that the DOL never formally adopted a 20% rule or, up until recently, defined was constitutes a "related duty," and that there is otherwise no indication that the FLSA contemplates this limitation. Thus, they argue the Dual Jobs Regulation was never enforceable, citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) ("[a]n enforcement action must instead rely on a legislative rule"). (ECF No. 139, at 17.)

The Defendants assert that a 2009 Eighth Circuit case erroneously giving deference to the 20% rule in the former FOH was the genesis of wide-spread 20%-rule claims. (*Id.* (citing *Fast v. Applebee's, Intl., Inc.*, No. 06-4146, 2009 U.S. Dist. LEXIS 67564 (W.D. Mo. Aug. 4, 2009), *aff'd*, 638 F.3d 872 (8th Cir. 2011)). The Defendants say that the *status quo* such as it was had come to

a screeching halt in 2018, when the DOL in an Opinion Letter: (1) made clear that there is no 20% rule and (2) enumerated a list of "related duties" for various occupations. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018–27 (Nov. 8, 2018), 2018 WL 5921455. The FOH was revised to remove the 20% limitation not long after. *Reynolds*, 2020 WL 2404904, at \*5. The Defendants say that the result of all these changes is that Count III must be dismissed either because there never was a 20% rule or the DOL effectively rescinded the 20% rule, meaning Count III necessarily fails to state a claim under the FLSA.[5]

In support of their counterargument, the Plaintiffs say that the 2018 Opinion Letter and associated changes in DOL guidance are not entitled to any form of deference. (ECF No. 148, at 19.) The Plaintiffs point out that courts nationwide have referred to the 20% rule in interpreting the Dual Jobs Regulation for decades. (*Id.* at 18–19.) Further, they argue that this interpretation is consistent with several significant qualifiers in the text of the Dual Jobs Regulation, which show that non-tipped, related duties are supposed to be infrequent. Namely, employers can take a tip credit and pay less than minimum wage only if employees spend ***"part of [their] time"*** performing or ***"occasionally"*** perform related duties. 29 C.F.R. § 531.56(e) (emphasis added). So, Plaintiffs say that there is clearly a temporal limitation on the amount of related, non-tipped work a tipped employee can do. And they say the 20% rule is the proper way to interpret that limitation.

While the parties agree that the Dual Jobs Regulation is ambiguous, the rub here is that they disagree as to whether the DOL's latest guidance is entitled to either of *Auer* or *Skidmore* deference.[6] For the Court to grant *Auer* deference to an agency's interpretation of an ambiguous

---

[5] However, in an apparently important footnote, the Defendants state they are not seeking dismissal of these claims to the extent that they are based on allegations (consistent with the 2018 Opinion Letter) that the Plaintiffs' non-tipped duties were not "performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties" (ECF No. 139, at 18 n.6.)

[6] The Parties do not appear to contend that 29 C.F.R. § 531.56(e) is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)

regulation, there are generally four requirements: (1) the agency's interpretation must be based on a permissible construction of the regulation; (2) the agency's interpretation must reflect fair and considered judgment and cannot create an unfair surprise to regulated parties; (3) the regulatory interpretation must be one actually made by the agency and must be the agency's authoritative or official position, rather than a more ad hoc statement not reflecting the agency's views; and (4) the agency's interpretation must in some way implicate its substantive expertise. *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 531–32 (E.D. Pa. 2019) (citing *Kisor*, 139 S. Ct. at 2416-18). At least three courts in this Circuit have declined to grant *Auer* deference to the 2018 Opinion Letter, primarily because it is unreasonable or does not reflect a fair and considered judgment by the DOL. *Reynolds*, 2020 WL 2404904, at *5; *Sicklesmith v. Hershey Entm't & Resorts Co.*, 440 F. Supp. 3d 391, 402 (M.D. Pa. 2020); *Belt*, 401 F. Supp. 3d at 531–32. The Court concurs with the reasoning of those cases.

In *Belt*, the court held that the DOL's current interpretation that does away with the 20% rule is unreasonable for deference purposes for two reasons. First, the court noted internal inconsistencies in the latest DOL guidance, which could be understood as saying there is *no limit* on non-tipped, related duties. 401 F. Supp. 3d at 533. That would be plainly inconsistent with the text of 29 C.F.R. § 531.56(e), which contains the temporal qualifiers discussed above (e.g. "part of [their] time" and "occasionally"). *Id.* Second, if the DOL's latest interpretation is that non-tipped, related duties are allowed only when those duties are performed "contemporaneously" to the tipped duties or "for a reasonable amount of time immediately before or after performing the tipped duties," that too would be inconsistent with the regulation. *Id.* (citing U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-27 at *3 (Nov. 8, 2018), 2018 WL 5921455; U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(3)(a) (rev. Feb. 15, 2019); U.S. Dep't of

Labor, Wage & Hour Div., Field Assistance Bulletin No. 2019-2 at 3 (Feb. 15, 2019)). To the extent that the qualifier "contemporaneously" provides some limitation, such would lead to absurd results. *Belt*, 401 F. Supp. 3d at 533. This interpretation would envision servers doing tipped work, like taking orders from patrons, while simultaneously doing non-tipped work like filling salt shakers. *Id.* The court held that the other qualifier—"for a reasonable amount of time immediately before or after"—is also a contradictory interpretation because the language in 29 C.F.R. § 531.56(e) clearly contemplates *infrequent* non-tipped, related duties, not a "reasonable amount." *Id.* Thus, the current DOL guidance is not a "permissible construction of the regulation." *Id.* at 532; *see also Reynolds*, 2020 WL 2404904, at *5 (finding DOL's guidance unreasonable);

*Belt* also declined to defer to the DOL guidance because the court held it does not reflect a "fair and considered judgment" by the agency. *Belt*, 401 F. Supp. 3d at 534. Other courts agree. For example, the *Sicklesmith* Court side-stepped the "reasonableness" inquiry all together and held that because the latest DOL guidance was an abrupt regulatory about-face from the long-standing 20% rule, the DOL inflicted an "unfair surprise" on regulated parties. *Sicklesmith*, 440 F. Supp. 3d at 402. Specifically, the new DOL guidance facially expressly overrules thirty (30) years of enforcement of the 20% rule. The Supreme Court has held that such a dramatic shift in agency interpretation requires a compelling justification in order to grant *Auer* deference. *Id.* at 403 (citing *Kisor*, 139 S. Ct. at 2417) Finding no such justification, the court declined to defer to the DOL under *Auer*. For similar reasons, the *Reynolds*, *Sicklesmith*, and *Belt* courts all declined to extend *Skidmore* deference to the latest DOL guidance regarding the 20% rule.[7] *Reynolds*, 2020 WL

---

[7] *Skidmore* deference is applied where an agency interpretation has the "power to persuade" and requires "a sliding-scale test in which the level of weight afforded to an interpretation varies depending on [the] analysis of the enumerated factors," including "whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy." *Sicklesmith*, 440 F. Supp. 3d at 404 (citing *Sec'y United States Dep't of Labor v. Am. Future Sys. Inc.*, 873 F.3d 420 (3d Cir. 2017)). The conclusions above with respect to *Auer* deference preclude *Skidmore* deference, especially given the lack of consistency with other

2404904, at *5; *Sicklesmith*, 440 F. Supp. 3d at 404; *Belt*, 401 F. Supp. 3d at 535. The Court, for the same reasons, declines to grant deference in this case.

So, the Court must "turn to the traditional tools of interpretation to determine the meaning of the Dual Jobs Regulation." *Sicklesmith*, 440 F. Supp. 3d at 404 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 161 (2012)). In analyzing the temporal language in the Dual Jobs Regulation and noting that the DOL uses a 20% threshold in other similar FLSA contexts, the Court concludes, in concurrence with its sister courts, that an employee who spends more than twenty percent of their hours performing non-tipped, related work, can be found to have ceased to be a tipped employee and become a dual-jobs employee such that they must be paid full minimum wage for hours spent performing those duties. *See Reynolds*, 2020 WL 2404904, at *6; *Sicklesmith*, 440 F. Supp. 3d at 405; *Belt*, 401 F. Supp. 3d at 536–38.

Accordingly, the Plaintiffs state a claim under the Dual Jobs Regulation in accordance with the long-standing 20% rule and Count III will not be dismissed. In the alternative, even assuming that the Defendants' argument is correct, the Plaintiffs have still stated a claim and would be entitled to discovery on whether their non-tipped, related duties were *not* "contemporaneous" or took up an *un*reasonable "amount of time before or after" their tipped duties. Defendants concede as much in a footnote to their Motion. (ECF No. 139, at 18 n.6.) The motion to dismiss Count III is therefore denied without prejudice.

### *Count II (Unrelated Duties)*

The Plaintiffs' claim in Count II covers *unrelated* duties under the Dual Jobs Regulation. That is, they allege that certain duties they were required to perform as part of their employment were unrelated to their tipped occupation and they should have been paid full minimum wage for

---

agency pronouncements, the unreasonableness of the interpretation, and the conflict with longstanding policy. *See Belt*, 401 F. Supp. 3d at 535.

the hours spent on those duties. As mentioned above, the DOL's 2018 Opinion Letter also incorporated by reference an enumerated list of "related duties," which employers are to consult under the Dual Jobs Regulation. *Callaway v. DenOne LLC*, No. 1:18-CV-1981, 2019 WL 1090346, at *6 (N.D. Ohio Mar. 8, 2019). Those enumerated related duties are available online at the DOL-sponsored Occupational Information Network ("O*NET") website.[8] *Id.* The Defendants argue that the agency's incorporation of the list of related duties on O*NET is reasonable and should be awarded deference. (ECF No. 139, at 25–31.) They then argue that O*NET specifically lists every allegedly unrelated duty that the Plaintiffs have pleaded. (*Id.*, App'x C.)

The Plaintiffs respond that deference to the list on O*NET is unreasonable because the data on O*NET is compiled by "randomly" sampling businesses and workers. (ECF No. 148, at 23.) Thus, they argue that the list could change from time to time and become inconsistent with prior Opinion Letters. For instance, O*NET presently says that preparing salads is related work, which the Plaintiffs say directly conflicts with other DOL Opinion Letters from 1979 and 1985. (*Id.*)

Without having to determine whether the Court must defer to the O*NET list, the Court concludes that the Plaintiffs have made out a claim here as well. Despite the Defendants' argument to the contrary, not all of the "unrelated" tasks that the Plaintiffs allege are listed on O*NET, such as scrubbing sinks, scrubbing trays and bins, and operating the dish tank. *See Callaway*, 2019 WL 1090346, at *7 (declining to dismiss an unrelated-duties claim where the plaintiffs alleged one work duty that was not listed on O*NET). While O*NET includes "cleaning duties," those duties do not appear to cover cleaning duties that occur in the kitchen area (often referred to as the "back of the house," as opposed to the "front of the house," where employees interact with patrons). Fairly read, the listed examples all take place in the "front of the house." *See* Dep't of Labor, *35-*

---

[8] The related duties, or "tasks," for waiters and waitresses are available at https://www.onetonline.org/link/summary/35-3031.00.

*3031.00 - Summary Report for Waiters and Waitresses*, O*NET Online, https://www.onetonline.org/link/summary/35-3031.00 ("sweeping and mopping floors, vacuuming carpet, tidying up server station, taking out trash, or checking and cleaning bathroom"). This interpretation is reinforced elsewhere because O*NET lists another task as: "[r]emove dishes and glasses from tables or counters and take them to kitchen for cleaning," cleaning presumably performed by kitchen staff, not servers. This interpretation also makes logical sense in that, given the expansive list of related duties on O*NET, it is hard to imagine servers accomplishing the main part of their jobs (serving restaurant goers) if they also have to hunker down in the kitchen for cleaning duties.[9] Accordingly, Count II will not be dismissed.[10]

### ii. Counts V and VII (Ohio and Pennsylvania State Law Non-Tipped Duties Claims)

The Defendants also move to dismiss the Ohio and Pennsylvania non-tipped duties claims, arguing that neither state restricts the types of duties that a tipped employee may perform, nor have those states incorporated the FLSA's dual jobs regulation into state law.

#### Count V (Ohio Non-Tipped Duties Claims)

Count V is brought by Plaintiff Bailey on behalf of the "Ohio Class" for (1) failure to satisfy the tip credit notification requirements and (2) failure to pay the full minimum wage for time spent performing non-tip generating work. (ECF No. 130, ¶¶ 295, 296.) The tip credit

---

[9] The Dual Jobs Regulations itself mentions "occasionally washing dishes or glasses." 29 C.F.R. § 531.56(e). Hence, the O*NET list is somewhat incongruous with the Dual Jobs Regulation itself in that the O*NET list does not include one of the few duties mentioned by way of example in the regulation. This could be a strike against the reasonableness of the DOL's latest guidance incorporating O*NET as a source for "related duties." In any case, even assuming that the Dual Jobs Regulation would permit servers to was dishes as a *related* duty, the Plaintiffs have pleaded other kitchen cleaning duties that are not specified in the Dual Jobs Regulation or, as discussed above, on the O*NET task list. So, Count II will not be dismissed for this reason either.

[10] The Court observes that there is also authority for the proposition that the latest DOL guidelines are not entitled to deference insofar as its elimination of the 20% rule *and* the O*NET task list. *See, e.g.*, *See Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 553 (W.D. Va. 2019).

notification claim is discussed in the following subsection of this Opinion. *See infra* Part II.b.iii. On the second claim, the Defendants argue that Count V does not cite to any provision of Ohio law similar to the FLSA's dual jobs regulation that would support a claim for non-tip generating work. (ECF No. 139, at 43.) The Plaintiffs argue that Ohio law permits claims for an employer's failure to pay full minimum wage for time spent performing non-tip generating work because the Ohio courts "have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." (ECF No. 148, at 55.)

The parties primarily dispute the import of the Ohio Supreme Court's decision in *Haight v. Minchak*, 146 Ohio St. 3d 481 (2016). The Plaintiffs say that *Haight* stands for the proposition that Ohio's Fair Minimum Wage Amendment ("FMWA") fully incorporates the FLSA. (*Id.*) The Defendants retort that *Haight* is limited to incorporating the FLSA's definition of "employee" into the FMWA, not incorporating the FLSA's regulations into Ohio law. (ECF No. 153, at 22.)

The Defendants appear to be correct that the conclusion in *Haight* is limited. The Ohio Supreme Court stated at the close of its opinion, "[t]o be entitled to minimum wage, an individual must be an 'employee.' [The FMWA] provides that 'employee' shall have the same 'meanings' as in the FLSA. This provision is without further limitation. Therefore, both the FLSA exclusions and exemptions are to be considered when determining whether an individual is an employee." *Haight*, 146 Ohio St. 3d at 487. However, the Court also held in reaching its conclusion that, "[t]he Fair Minimum Wage Amendment incorporates the FLSA without any limitation." *Id.* at 485.

Several other courts have cited that portion of *Haight* to hold that the FMWA and its implementing statutes under the Ohio Minimum Fair Wage Standards Act ("MFWSA") incorporate the minimum wage and overtime provisions of the FLSA. For instance, in a case from the Southern District of Ohio, the court stated that it would not engage in a separate analysis for

the plaintiff's non-tipped duties claims under the MFWSA because the "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to [the] same standards." *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 WL 3406032, at *3 (S.D. Ohio June 21, 2016) (citing *Haight*; *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). The Sixth Circuit has noted the parallels as well. In *Wood v. Mid-America Management Corp.*, the court noted parenthetically that the MFWSA incorporates "the minimum-wage and overtime-compensation provisions of the FLSA." 192 F. App'x 378, 379 (6th Cir. 2006). And in *Douglas v. Argo-Tech Corp.*, the court stated that Ohio law for overtime pay claims "parallels the FLSA." 113 F.3d 67, 69 n.2 (6th Cir. 1997).

For these same reasons, the Court concludes that Ohio minimum wage law parallels the FLSA for non-tipped duties claims. Accordingly, the Plaintiffs' non-tipped duty claims under Ohio law will not be dismissed.

### *Count VII (Pennsylvania Non-Tipped Duties Claims)*

Count VII is similar to the Ohio claims under Count V in that there are two claims. The first claim is that Defendants violated Pennsylvania law by failing to provide tip credit notification to employees, (ECF No. 130, ¶ 309), which, like the Ohio claims, is discussed below, *see infra* Part II.b.iii. The second claim is that the Defendants violated Pennsylvania law by paying the Plaintiffs tipped minimum wage for non-tip generating work. (*Id.* ¶ 310.) The Defendants argue that the non-tipped duties claim fails as a matter of law because (1) Pennsylvania law does not require employers to pay employees differently based on the type of duties they are performing; (2) the Pennsylvania code section Plaintiffs cite provides no private right of action; and (3) Plaintiffs cannot "rely on the FLSA in support of their claims." (ECF No. 139, at 45.) The Plaintiffs

respond that the Pennsylvania Minimum Wage Act ("PMWA") parallels the FLSA and that courts have found that a cause of action exists under the PMWA for non-tipped work claims.

The cases that the Plaintiffs cite in support of their argument that the PMWA parallels the FLSA are not persuasive.[11] However, other caselaw nonetheless demonstrates that the Plaintiffs' argument is well supported. *See Razak v. Uber Techs., Inc.*, No. CV 16-573, 2016 WL 5874822, at *7 (E.D. Pa. Oct. 7, 2016) ("Because the PMWA 'substantially parallels' the FLSA, . . . federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA."); *Sicklesmith*, No. 19-CV-1675, 2020 WL 902544, at *1 n.1 (citing *Razak* and holding the same with respect to plaintiffs non-tipped duties claim under the PMWA); *Belt*, 401 F. Supp. 3d at 519 n.1 (same); *Rui Tong v. Henderson Kitchen Inc.*, No. CV 17-1073, 2018 WL 4961622, at *3 (E.D. Pa. Oct. 12, 2018) (same); *Reynolds*, No. CV 19-2184, 2020 WL 2404904, at *8, *8 n.15 (same, and noting the relevant provisions of the FLSA and PMWA are "nearly identical"). In light of this authority, the Plaintiffs Pennsylvania non-tipped duty claims are cognizable and will not be dismissed.

### iii.   *Counts I, V, VII, XII, XIV, and XV (FLSA and State Tip Credit Notification Claims)*

Next, the Defendants seek dismissal of the Plaintiffs' tip credit notification claims under the FLSA (Count I) and the state laws of Ohio (Count V), Pennsylvania (Count VII), Maryland (Count XII), Michigan (Count XIV), and Illinois (Count XV).

---

[11] Plaintiffs cited *Zellagui v. MCD Pizza, Inc*., 59 F. Supp. 3d 712 (E.D. Pa. 2014) and *Wright v. Ristorante La Buca Inc.*, No. CV 18-2207, 2018 WL 5259469 (E.D. Pa. Oct. 22, 2018). *Wright* cites to *Zellagui*, without any analysis, for the proposition that when employees perform both tipped and non-tipped duties, the PMWA requires employers to pay the full minimum wage for all hours that their employees perform non-tipped duties. However, *Zellagui*'s sole citation for its interpretation of Pennsylvania law is a "*see, e.g.*" citation to a case from the Northern District of Illinois that construed Illinois' Minimum Wage Law parallel to the FLSA. Thus, these cases are not persuasive in construing Pennsylvania law here.

### *Count I (FLSA Tip Credit Notification)*

In order to take a "tip credit" under the FLSA, an employer must notify its employees of its intent to do so. *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994); 29 U.S.C. § 203(m). If employers do not so notify their employees, they must pay full minimum wage for all hours that those employees worked. The Defendants argue that the Plaintiffs' mere recitals of the elements of a tip credit notification claim and their threadbare assertion that the Plaintiffs do not "recall" receiving notice are insufficient to state a claim. (ECF No. 139, at 49–50.) The Defendants also note that they have been able to find signed acknowledgements of receipt of tip credit notification for nine (9) of the fifteen (15) Plaintiffs. (*Id.* at 50.) So, they argue that at least these claims as to those nine Plaintiffs should be dismissed. (*Id.*) The Defendants also say that the Plaintiffs have failed to plead that they were in fact paid less than minimum wage under the tip credit scheme. (*Id.* at 53–54.) The Plaintiffs respond that they have properly pleaded sufficient facts for their claims to move forward and that the extrinsic evidence presented by the Defendants is inappropriate for consideration at this juncture. (ECF No. 148, at 37–41.)

The allegations in Count I encompass the Defendants' alleged failure (1) to notify Plaintiffs of the tip credit as required by the FLSA and (2) to make up the difference between their tip-credit wages and minimum wage. However, the factual allegations in those regards are minimal. The Plaintiffs' SACMC alleges that (1) the Defendants claimed the maximum tip credit no matter how many tips the employees actually received, effectively paying them subminimum wage when the Defendants were required to make up the difference (ECF No. 130, ¶¶ 147, 169); (2) the Plaintiffs recall earning little to no tips and yet their hourly wages did not change; nor do they specifically recall the Defendants adjusting the hourly rate upwards (*Id.* ¶¶ 223–24 (citing the recollections of only Plaintiff McKeel)); (3) the Plaintiffs do not "recall" receiving tip credit notification (*Id.* ¶

222); (4) the Defendants had a willful policy and practice of failing to satisfy tip credit notification requirements (*Id.* ¶ 295); and (5) the Defendants were aware that tipped employees on occasion earned little to no tips (*Id.* ¶ 225 (citing again to only Plaintiff McKeel's recollections of being told by a manager to claim tips in the computer system that she did not receive)).[12]

The Court concludes that, for the purposes of inquiry at the motion to dismiss stage, the Plaintiffs have satisfactorily pleaded their claims, but only just. The SACMC pleads: (1) the Plaintiffs' cannot recall receiving notification;[13] (2) factual allegations relating to a willful practice of non-notification; and (3) the limited examples of alleged failures to pay full wages, which include one example of a manager specifically telling a Plaintiff to enter false information into the teller system. These allegations inch across the finish line for stating a claim. *See Perez v. Prime Steak House Rest. Corp.*, 939 F. Supp. 2d 132, 138–39 (D.P.R. 2013) (stating there was a reasonable inference the defendant failed to provide notice where, "[t]he complaint explicitly states that defendant . . . failed to inform them of the provisions of section 203(m)").

The Court will not consider the signed acknowledgements of receipt the Defendants have proffered with their Motion. The Court *may* "consider an undisputedly authentic document that a

---

[12] That alleged violation occurred where a manager allegedly instructed Plaintiff McKeel "to claim 10% of her sales in tips when entering said information into the POS system at the end of her shift [because] the manager did not like entering overrides in the computer system, which was required every time an employee declared less than 10% of their sales in tips." (ECF No. 130, ¶ 225.)

[13] The Defendants claim this allegation is specious because a lack of memory does not state a claim and the facts alleged otherwise are formulaic recitals of the elements of a claim, which the Court should not consider. (ECF No. 139, at 49.) The Plaintiffs retort that there is no other way to plead that the notification they were supposed to receive did not happen. (ECF Nos. 148, at 38) That, in other words, it is difficult to plead a negative. The Defendants reply, "Plaintiffs needed only to plead they did not receive notice of the tip credit." (ECF No. 153, at 26.) However, the Defendant's proposed solution of pleading "we did not receive it" appears to be just as "formulaic" as "we do not remember receiving it." Semantics aside, the Court will take the "failure to recall" allegation into account and conclude that the Plaintiffs have stated a claim here, but only in conjunction with the other allegations mentioned above. But, come discovery, the Plaintiffs will be obligated to back it up. And while the Plaintiffs are correct that at this stage of the proceedings the Court should not consider the signed acknowledgments of nine of the Plaintiffs that the Defendants proffer, in the context of the overall litigation, those are not nothing.

defendant attaches as an exhibit to a motion to dismiss . . . if that document is *integral to or explicitly relied upon* in the complaint." *Kortyna v. Lafayette Coll.*, 726 F. App'x 934, 937 (3d Cir. 2018) (emphasis in original) (citing

    *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Those tip credit notification acknowledgements are arguably "integral to" the Plaintiffs claims of not receiving tip credit notification. However, given that certain factual matters might call into question the sufficiency or validity of the acknowledgements[14], the Court declines to dismiss these claims on the basis of these currently extrinsic documents.

    All of the foregoing regarding Count I comes with a note to the Plaintiffs. The Court will be paying very close attention to what the Plaintiffs have to back up these claims and they should swiftly make their case as to this claim or drop it. That is, whatever cards the Plaintiffs say they are holding, they must be prepared to show them.

### *Counts VII, XII, and XIV (Pennsylvania, Maryland, and Michigan)*

    The Defendants say that the state claims under Pennsylvania law (Count VII), Maryland law (Count XII), and Michigan law (Count XIV) should also be dismissed for the same reasons as Count I. (ECF No. 139, at 54.) The Defendants note that tip credit notification obligations in those states "are in accord with or similar to the FLSA." (*Id.*) The Plaintiffs agree. (ECF No. 148, at 43.) Having concluded that Count I should not be dismissed, the Court will not dismiss these Counts either.

---

[14] Plaintiffs allude to such matters in their Brief in Opposition. (ECF No. 148, at 40–41.)

### *Count V (Ohio Tip Credit Notification)*

As discussed previously, Count V pertains to claims under Ohio law for both tip credit notification and non-tipped duties claims. The Court concluded that the Plaintiffs non-tipped duties claims under Ohio law should not be dismissed because Ohio law parallels the FLSA with respect to minimum wage and overtime compensation. *See supra* Part II.b.ii. The Plaintiffs argue that the notification claim in Count V should not be dismissed because Ohio minimum wage law also parallels the FLSA's tip credit notification requirements. (ECF No. 148, at 42.) The Defendants say there is no such requirement under Ohio law. (ECF No. 139, at 56.) The Plaintiffs point to a particular code section of the Ohio MFWSA which they say parallels tip credit notification under 29 U.S.C. § 203(m) such that they state a claim under Ohio law—section 4111.09 of the Ohio Code. The Defendants respond that section 4111.09 only requires posting a "summary" of Ohio wage law and that the statute does not require any type of notification that is "parallel" to the FLSA notice requirements.

Section 4111.09 states that employers subject to the MFWSA "shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." Ohio Rev. Code Ann. § 4111.09. By its terms, section 4111.09 only requires posting a summary approved by the Ohio Director of Commerce. *Id.* There is no basis to conclude that Ohio employers need to do anything more than that, and the Plaintiffs do not allege that the Defendants did not post that summary. The SACMC instead alleges that the Defendants cannot comply with Ohio notification requirements by complying with FLSA notification requirements, given that Ohio has a higher tip credit minimum wage. (ECF No. 130, ¶¶ 176, 177.) However, Ohio's "posting requirement" does not appear to

parallel the FLSA's tip credit notification requirement, and the Court cannot uncover any caselaw that says it does either. Rather, section 4111.09 more closely aligns with the FLSA's "Posting of notices" requirement. *See* 29 C.F.R. § 516.4. Because the Plaintiffs have not alleged that the Defendants failed to comply with the plain language of section 4111.09 and because Ohio law does not parallel the FLSA with respect to tip credit notification, this part of Count V is dismissed without prejudice to the necessarily more complete factual pleading as noted above, if the Plaintiffs can make those allegations in good faith.

### Count XV (Illinois Tip Credit Notice)

The Defendants argue that the Plaintiffs' claim that they failed to satisfy notification requirements under the Illinois Minimum Wage Law (IMWL) fails as a matter of law, because, like Ohio, all the law requires is posting a summary of the IMWL in a conspicuous location. The Defendants say that the Plaintiffs did not allege that the Defendants failed to comply with this requirement and that the Plaintiffs cannot bootstrap their Illinois claim to the FLSA. (ECF No. 139, at 57.)

The SACMC alleges, "Defendants violated the IMWL when they: (i) failed to provide proper tip credit notification." (ECF No. 130, ¶ 18.) Apart from this, the Plaintiffs do not cite any other allegations of the SACMC that they say make up the facts of this claim. Thus, the claim rests on that single conclusory allegation, and perhaps on their allegations that make up their FLSA notification claim. However, because IMWL notification claims are analyzed separately from the FLSA, and the sole allegation is a bare recital of the elements of a claim, the Plaintiffs fail to state a claim. *See Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 327 n.4 (N.D. Ill. 2010) ("The Court finds that Plaintiff's arguments based on notice violations of the FLSA are not relevant to the IMWL class certification inquiry."); *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 800

(N.D. Ill. 2013) ("Here, the IMWL expressly directs what the employer is required to post: the summary approved by the IDOL. The court cannot add a requirement to comply with the greater obligation under FLSA § 203(m)."). The portion of Count XV directed at tip credit notification claims under the IMWL is dismissed with prejudice, as it appears that it fails as a matter of law and cannot be repaired by pleading more or different facts.

### iv. Counts IV, VI, IX, and XVI (FLSA and State Overtime Claims)

The Defendants seek dismissal of the Plaintiffs' overtime claims under the FLSA (Count IV) and Ohio (Count VI), Pennsylvania (Count IX), and Illinois (Count XVI) law.

#### Count IV (FLSA Overtime)

Two named Plaintiffs (McKeel and Caperna) on behalf of the "Collective [Overtime] Class" claim that the Defendants violated 29 U.S.C. §§ 206 and 207 by failing to pay proper overtime compensation. The Defendants argue that these claims are conclusory and that the exhibited paystubs attached to the SACMC demonstrate that McKeel was paid correctly and Caperna was actually overpaid, which they attribute to a payroll system glitch. (ECF No. 139, at 61 n.33.) In support of their argument, the Defendants also attach two Declarations to their Motion, in which the declarants analyzed the paystubs the Plaintiffs submitted with the SACMC and which apparently found no overtime violations.

In the SACMC, the Plaintiffs offer a computation of overtime that is counter to that which the Defendants proffered in their Motion. (ECF No. 130, at 40 n.14.) Further, the Plaintiffs pleaded other factual allegations relating to the attached paystubs. For instance, they allege that the Defendants paid Plaintiff McKeel overtime using only the "tipped job code" alone, even when they performed tipped and non-tipped work. (*Id.* ¶ 213.) They also allege that the Defendants accorded no weight to the "Regular" time Plaintiff McKeel worked during the period of time in the attached paystub. (*Id.* ¶ 214.) With respect Plaintiff Caperna, they pleaded that the Defendants

used the wrong overtime rate ($5.2696 rather than $5.76). (*Id.* ¶ 217.) These allegations are sufficient to state a claim for overtime violations under the FLSA.

At the motion to dismiss stage, the Court must accept all well-pleaded factual allegations as true. *See, e.g.*, *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 342 (D.N.J. 2006) ("All of the defendants' arguments in support of their motion attack the sufficiency or the factual accuracy of [the] allegations in the amended complaint. These are improper arguments to support a motion to dismiss under Rule 12(b)(6). First, the defendants cannot contest the factual accuracy of [plaintiff's] allegations because, for the purposes of this motion, the Court must accept as true all of [those] factual allegations.") The Court cannot engage in attempting to resolve the parties' factual argument at this stage. So, the Court concludes that the Plaintiffs state a claim, and the motion to dismiss this claim is denied without prejudice.

### *VI, IX, and XVI (Ohio, Pennsylvania, and Illinois)*

The Defendants concede that Pennsylvania overtime claims parallel the FLSA and argue that it should fail based on their arguments for dismissing the FLSA claim. (ECF No. 139, at 51.) Because the FLSA overtime claim is sufficiently pleaded, the Pennsylvania overtime claim at Count IX will not be dismissed.

With respect to the Ohio and Illinois claims, the Defendants argue that the Plaintiffs merely recited the elements of a state law claim and that such conclusory statements are insufficient under *Twombly/Iqbal*. (ECF No. 139, at 61.) The factual allegations with respect to Ohio law include, "Defendants violated the MFWSA by failing to pay Plaintiff Bailey and the members of the OH OT Class the legally mandated hourly overtime premium for hours worked over forty in a workweek." (ECF No. 130, ¶ 302.) Under Illinois law, they allege, "Defendants violated the IMWL by failing to pay Plaintiff Woodworth and the members of the IL OT Class the legally

mandated hourly overtime premium for hours worked over forty in a workweek." (*Id.* ¶ 376.) These allegations are mere conclusory recitals of the elements of a claim, which the Court disregards.[15] *See Davis*, 824 F.3d at 341.

Unlike the Plaintiffs' FLSA overtime claims that are supported by paystubs and other factual allegations, the Plaintiffs here do not allege that Plaintiff Baily or Woodworth, who are not asserting FLSA overtime claims, specifically did not receive overtime pay for any particular period of time. This is fatal to their claims. *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014). *Davis* held, "we do not hold that a plaintiff must identify the exact dates and times that she worked overtime. For instance, a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice. But no such allegation is present in this case." The court applied this reasoning to the FLSA in *Davis*. However, both Ohio (MFWSA) and Illinois (IMWL) overtime claims are parallel to and guided by interpretations of the FLSA. *See Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-CV-347, 2007 WL 2908817, at *5 (S.D. Ohio Oct. 4, 2007) (citing *Briscoe v. Columbus Metropolitan Area Comm. Action Org.*, No. 81AP-887 (10th Dist.), 1982 WL 4028 at *3 (Ohio App. Mar. 9, 1982) ("By virtue of R.C. 4111.03(A), Ohio defers to federal regulations and case law for the determination of eligibility for overtime compensation.")); *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 703 (N.D. Ill. 2016) ("The IMWL parallels the FLSA, and the same analysis has generally been applied to both statutes."). For these reasons, Counts XI and XVI will be dismissed

---

[15] The Court concludes that the other paragraphs of the SACMC that the Plaintiffs cite in their Brief in Opposition do not go to supporting an overtime claim as contemplated in *Davis v. Abington Mem'l Hosp*. (*See* ECF No. 148, at 49–51.)

without prejudice to the Plaintiffs attempting to bolster their currently conclusory statements with the requisite factual showing.

### v. *Counts VIII and X (Pennsylvania and West Virginia Wage Payment Claims)*

Defendants also seek to dismiss the Plaintiffs' minimum wage claims under Pennsylvania law (Count VIII) and West Virginia law (Count X).

### *VIII (Pennsylvania Minimum Wage Claim)*

Count VIII is brought under the Pennsylvania Wage Payment and Collection Law (WPCL). The Defendants argue that this claim fails because it does not allege "an independent contractual obligation to pay wages." *See Sleiman v. DHL Express,* No. 09-0414, 2009 WL 1152187, at *6 (E.D. Pa. Apr. 27, 2009). Because the WPCL provides a remedy when the employer breaches a contractual obligation to pay earned wages, rather than creating a "right to compensation," *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003), the failure to allege "a contractually based entitlement to the disputed wages is fatal to [a] WPCL claim." *Vasil v. Dunham's Athleisure Corp.*, No. 2:14CV690, 2015 WL 1296063, at *5 (W.D. Pa. Mar. 23, 2015). The Defendants argue that the Plaintiffs' claim fails because they do not allege the "three indispensable elements of contract formation"—offer, acceptance, and consideration or mutual meeting of the minds. (ECF No. 139, at 63.)

The Defendants' argument misses the mark. The Plaintiffs do not need to plead the existence of a formal contract by spelling out the textbook elements. Rather, "they need only plead the existence of some contractual agreement to pay wages that defendant now owes to the plaintiff." *Euceda v. Millwood, Inc.*, No. CIV.A. 3:12-0895, 2013 WL 4520468, at *4 (M.D. Pa. Aug. 26, 2013). Such an agreement may be implied from an individual performing work for the benefit of another with an expectation that they would be compensated for their services. "In the

context of an employment relationship, a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *Id.* (citing *De Asencio*, 342 F.3d at 309; quoting *McGough v. Broadwing Commc'ns, Inc.*, 177 F. Supp. 2d 289, 297 (D.N.J. 2001)). Here, the Plaintiffs have alleged that they were "employed" by the Defendants and numerous other facts throughout the SACMC evidencing a promise to pay the reasonable value of the services performed by Plaintiffs for Defendants. Count VIII will not be dismissed.

### X (West Virginia Minimum Wage Claim)

The Defendants argue that Count X is unclear because it is uncertain whether Plaintiffs are claiming they were properly paid throughout their employment but did not receive their final payment in a timely fashion *or* instead that they were underpaid throughout their employment in violation of applicable minimum wage laws. (ECF No. 139, at 63.)

In Count X, the Plaintiffs cite W. Va. Code § 21-5-4(b) for Defendants' failure "to timely pay" Plaintiffs Williams and Ratcliff (and members of the WV Class). (ECF No. 130, ¶¶ 330–31.) That provision provides that an employer must pay a former employee for wages due up until the separation of employment on or before the next regular payday. W. Va. Code § 21-5-4(b). There are no factual allegations that a violation of this provision occurred. The SACMC states, "Defendants violated the WVWPCA by failing to timely pay Plaintiffs L. Williams and Ratcliff and the members of the WSV [sic] Class all wages owed to them within the time periods mandated by the WVWPCA for employees pursuant to W. Va. Code § 21-5-4(b)." (ECF No. 130, ¶ 331.)[16] The Court disregards these allegations as conclusory and bare recitals of the elements of a claim.

---

[16] *See also* ECF No. 130, ¶¶ 15 ("Defendants violated the WVWPCA by failing to pay Plaintiffs Jensen and Rash and other Tipped Employees all wages due and owing within the time periods mandated at the conclusion of their

Regarding whether Count X includes a claim that Plaintiffs were underpaid during their employment, the WV Supreme Court held that § 21-5-4 is "a statutory vehicle for employees to recover agreed-upon, earned wages from an employer." *Grim v. E. Elec., LLC*, 234 W. Va. 557, 571 (2014). That is, the statute is for wages owed under contract that are wrongly withheld and it is not a vehicle to address to minimum wage violations. *Id.* at 572. Entitlement to "prevailing wages" under West Virginia law is afforded by the Prevailing Wage Act ("PWA"). *Id.*

No matter how Count X is sliced, it will be dismissed without prejudice given that (1) the SACMC on its face does not state a claim for minimum wage violations under the PWA and (2) the Plaintiffs fail to allege facts supporting the underlying "failure to timely pay" claim. The Plaintiffs will be given one more chance to sufficiently make the showing necessary to assert such claims.

### vi. Count XV (Illinois Non-Tipped Labor Claims)

The Defendants' Motion only sought to dismiss Count XV insofar as it claimed a violation of tip credit notification requirements under Illinois law. (ECF No. 139, at 57.) However, in the Plaintiffs' Brief in Opposition, they argue that their non-tipped duties claims under Illinois law in Count XV should not be dismissed. (ECF No. 148, at 53–55.) Thus, it appears that the Plaintiffs are arguing that Count XV incorporates two kinds of Illinois state wage law claims—tip-credit notification <u>and</u> non-tipped duties claims. The Plaintiffs' basis for claiming that Count XV includes non-tipped duties violations under Illinois law is that Plaintiff Woodworth "realleges and incorporates by reference the paragraphs above as if they were set forth again herein." (ECF No. 130, ¶ 366.) So, the Plaintiffs say that Count XV incorporates paragraphs 18 and 114 of the

---

employment with Defendants."); 44 ("Plaintiffs Jensen and Rash allege on behalf of the WV Class that Defendants violated the WV State Law by failing to pay all timely wages due and owing at the end of Plaintiff and members of the WV Class's employment with Defendants."). Once again, these are nothing more than generic and conclusory assertions. If the Plaintiffs are going to pursue these claims, the applicable case law says that they have to do more.

SACMC, which allege, *inter alia*, that the Defendants made Woodworth do non-tipped work. (*Id.* ¶¶ 18, 114.)

The Defendants replied that the Plaintiffs failed to state such a claim because they failed to add a simple paragraph to the SACMC for an Illinois non-tipped duties claim. (ECF No. 153, at 25.) They note that for the non-tipped duties claims under Ohio, Pennsylvania, and Maryland law, the Plaintiffs included a paragraph stating "Defendants had a willful policy and practice of failing to pay the full minimum wage for time spent . . . performing non-tip generating work," but that they did not do so with Illinois law. (*Cf.* ECF No. 130, ¶¶ 296 (OH); 310 (PA); 348 (MD).) Accordingly, the Defendants argue they cannot add another claim at this late stage.

Sloppy drafting of a complaint, although frustrating, is not grounds for dismissal.[17] *Falk v. City of Glendale*, No. 12-CV-00925-JLK, 2012 WL 2390556, at *2 (D. Colo. June 25, 2012). The incorporation-by-reference language in Count XV incorporates Paragraph 18, which specifically alleges that Defendants "violated the IMWL" by requiring Plaintiffs to "to perform numerous job duties when there was no possibility for that employee to generate tips." This suffices to indicate that the Plaintiffs intended to bring this claim. The case that the Defendants cite to argue that the Plaintiffs cannot assert a "new claim" at this late stage does not merit dismissal of Count XV.[18]

However, the question remains whether the claim is sufficiently pleaded. As noted above, not every aspect of Illinois wage law parallels the FLSA. While overtime wage claims do parallel

---

[17] But that does not mean that the Court thinks that it is a good idea. The Parties have told the Court that this is a big case for all concerned, and it certainly seems like it. If so, then the Court implores counsel to state the claims and defenses with clarity rather than circuitous "incorporation by reference."

[18] In *Daugherty v. Adams*, the plaintiff *completely failed* to allege certain damages that would have conferred him standing under federal and state RICO laws. Thus, those claims failed. No. CV 17-368, 2019 WL 7987859, at *15 (W.D. Pa. Nov. 15, 2019), *R. & R. adopted sub nom. Daugherty v. Tiversa Holding Corp.*, No. CV 17-368, 2020 WL 467828 (W.D. Pa. Jan. 29, 2020). The Plaintiffs here, by virtue of Paragraph 18 of the SACMC, have not completely failed to allege their claim. So, it is not a "new" claim *per se*.

the FLSA, tip credit notification claims do not. In *Driver v. AppleIllinois*[19], the court analyzed the IMWL and FLSA concurrently and held that, "[a]n employer may take a tip credit 'only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee.' Under either the FLSA or the IMWL, that means an occupation in which tips are customarily and regularly paid." *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1011 (N.D. Ill. 2012) (citations omitted). The court went on to discuss the several parallels between the FLSA and IMWL, and granted the plaintiffs summary judgment on their "dual jobs" claims under *both* statutes. *Id.* at 1033; *see also Soto v. Wings 'R US Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444, at *2 (N.D. Ill. Sept. 8, 2016) ("The IMWL also has a tip-credit provision that is substantially similar to the FLSA provision, but requires employers to pay a slightly larger percentage of the minimum wage to tipped employees.").[20] Given the similarities between the IMWL and FLSA's tip credit provisions, the Plaintiffs non-tipped duties claim under the IMWL in Count XV will not be dismissed because the facts which go to their FLSA claims also undergird their IMWL claim here.

## IV.   **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss brought by BEF Inc. at ECF No. 138 will be granted. BEF Inc. will be dismissed as a Defendant to this action, subject to the Plaintiffs filing one more amended complaint, if the Plaintiffs choose to replead at all, or as to that Defendant. The Motion to Dismiss brought by all Defendants at ECF No. 139 will be granted in part and denied in part. The Defendants' Motion will be granted as to the Ohio tip credit notification claim at Count

---

[19] A later opinion in the same case is discussed previously, where the court held that the IMWL does *not* incorporate the FLSA's tip credit notification requirements. *See Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 800 (N.D. Ill. 2013).

[20] The *Soto* Court also rejected the defendants' attempt to dismiss an IMWL non-tipped duties claim. The defendants similarly claimed that the IMWL does not parallel the FLSA. The court said that both the IMWL and the FLSA do not discuss the "dual-jobs scenario" and that the IMWL gives the Illinois Dept. of Labor discretion to refer to federal regulations when interpreting the IMWL. Therefore, the court can look to the federal dual job regulation in analyzing the IMWL non-tipped duties claim. *Soto*, 2016 WL 4701444, at *5.

V, the Ohio overtime claim at Count VI, the West Virginia WPCA claim at Count X, the Illinois

tip credit notification claim at Count XV, and the Illinois overtime claim at Count XVI. Those

claims will all be dismissed without prejudice, except as to Count XV, which will be dismissed

with prejudice as laid out above. In all other respects, the Defendants' Motion at ECF No. 139 will

be denied.

      The Court will grant leave for the Plaintiffs to replead and file a Third Amended

Consolidated Master Complaint within twenty-one (21) days of the date of the Court's Order. The

Plaintiffs' Motion for Conditional Certification, Approval of Proposed Notice Procedure and

Equitable Tolling at ECF No. 141 will be dismissed without prejudice as premature in light of this

Opinion and related Order.

      An appropriate Order will follow.

  s/ Mark R. Hornak           
Mark R. Hornak
Chief United States District Judge

Dated: August 13, 2020
Cc:    All counsel of record